**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| K.C. HOPPS, LTD., | Case No. _____ |
| Plaintiff, | COMPLAINT |
| v. | |
| THE CINCINNATI INSURANCE COMPANY, INC., | DEMAND FOR JURY TRIAL |
| Defendant. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff K.C. Hopps, Ltd. ("Plaintiff"), for its Complaint against Defendant The Cincinnati Insurance Company, Inc. ("Defendant"), states and alleges as follows:

## NATURE OF ACTION

1.       According to information published by the Insurance Information Institute, the U.S. insurance industry collected net premiums of $1.22 trillion in 2018. Premiums recorded by property/casualty insurers accounted for 51% of that amount. Between 2014 and 2018, these insurers wrote net premiums each year of between $497 billion to $612.6 billion but only incurred losses of between $277.7 billion and $360.9 billion.

2.       Plaintiff owns in whole or in part, or is the managing member of, several entities that operate bars, restaurants, catering services, and event spaces in the Kanas City metropolitan area, including among others: O'Dowd's Gastrobar; Blue Moose Bar & Grill; Barley's Brewhaus; and Stroud's Overland Park, all of which have been forced to close or greatly reduce their operations as a result of COVID-19 and Stay at Home Orders (as defined below).

3.       Plaintiff purchased an all-risk commercial property insurance policy from Defendant to protect it in the event of property loss and business interruption. COVID-19 and the resulting response by state and local governments have caused physical loss of Plaintiff's property

and have interrupted Plaintiff's business. Yet, Defendant has refused to honor its promise to provide the protection that Plaintiff purchased.

4.     Plaintiff is not unique. The insurance industry appears to be taking a uniform approach to the current pandemic: deny coverage even when the policy they drafted and offered to insureds, and the policy paid for by the insureds, does not contain an exclusion for pandemic or virus-related losses. Plaintiff's policy with Defendant is one such policy and exemplifies the broken promises of insurance companies across the country.

5.     Plaintiff's claims are for breach of contract and declaratory judgment arising from Defendant's refusal to pay insurance claims related to COVID-19 as required by the property insurance agreement it sold to Plaintiff.

6.     The novel coronavirus – "severe acute respiratory syndrome coronavirus 2" or "SARS-CoV2" – has spread widely and rapidly across the United States. The illness related to SARS-CoV-2 is "novel coronavirus disease 2019," commonly abbreviated to "COVID-19." Although the virus and related illness are distinct, for purposes of this Complaint, Plaintiff refers to both interchangeably as "COVID-19."

7.     Over 90,000 Americans have died of COVID-19 as of the date of this filing, according to the CDC.[1]

8.     A growing body of evidence suggests that the virus transmits both through droplets, when someone sneezes and coughs, and aerosols, which are produced by normal breathing.

9.     Aerosols are particularly concerning because unlike droplets, which may be suspended for only a few seconds, aerosols can remain suspended in air for hours, until gravity ultimately forces their descent out of the air and onto a surface.

---

[1] *See* https://www.cdc.gov/nchs/nvss/vsrr/COVID19/index.htm

10. Consequently, aerosols can spread widely through air flow and even settle on surfaces hundreds of feet away from any infected individual. Thus, someone not even in the vicinity of an infected person can unknowingly become infected, including through contact with an infected surface.

11. In an effort to combat the virus and slow the spread of COVID-19, state and local governments across the country imposed directives requiring residents to remain in their homes except to perform certain "essential" activities, like shopping for food, going to see a doctor, or getting fresh air. According to the New York Times, 95% of the United States population was under one or more state or local directives to stay at home.

12. The state and local directives have typically required businesses deemed "non-essential" to close and in-person work to cease. But even businesses classified as "essential" have been severely impacted by the pandemic. For example, "essential" businesses have had to increase the frequency of cleaning, reduce hours, install new protective barriers between employee and customer, establish new procedures to ensure the protection of their workforce and consumers, and provide personal protective equipment to its workforce and consumers. Nevertheless, many such business have had great difficulty retaining employees who fear becoming infected at work.

13. Plaintiff is a Missouri corporation that owns in whole or in part, or is the managing member of, several entities that operate bars, restaurants, catering services, and event spaces in the Kanas City metropolitan area, including Jackson County, Missouri, and Johnson County, Kansas.

14. The State of Missouri, State of Kansas, City of Kansas City, Jackson County, Missouri, and Johnson County, Kansas, all issued stay at home orders that caused the suspension of non-essential and essential businesses (hereafter, the "Stay at Home Orders").

15.     The State of Missouri issued its Stay at Home Order on April 6, 2020. On April 27, 2020, the State of Missouri issued the Show Me Strong Recovery Order ("Recovery Order"), which extended many of the restrictions imposed by the April 6th Stay at Home Order through May 31, 2020. The Stay at Home Order and the Recovery Order (collectively, the "Missouri Orders") caused the suspension of both non-essential and essential businesses.

16.     The State of Kansas issued its Stay at Home Order on March 28, 2020. The Kansas Order directed all Kansas to stay in their homes to slow the spread of COVID-19.[2] On April 16, 2020, the Kansas Order was extended to May 3, 2020 (collectively, the "Kansas Orders").[3]

17.     The City of Kansas City, Johnson County, Kansas, and Jackson County, Missouri, issued Stay at Home Orders on March 24, 2020.

18.     Plaintiff's businesses were, and are, subject to these Stay at Home Orders.

19.     At least 42 states and countless local governments and public health departments have issued substantially similar directives. The purpose of these orders is to mitigate and slow the spread of COVID-19.

20.     The Stay at Home Orders and the transmission of COVID-19 have had a devastating effect on Plaintiff's business. Plaintiff's business was projected to exceed $17 million in sales in 2020; however, because of the Stay at Home Orders and the transmission of COVID-19, Plaintiff ceased all in person operations. This resulted in the complete suspension of some of Plaintiff's businesses, and substantial reduction in others, which prevented Plaintiff from meeting its sales targets.

---

[2]     https://www.coronavirus.kdheks.gov/DocumentCenter/View/873/Essential-Activities-and-Essential-Functions-PDF---4-15-20

[3]     https://www.coronavirus.kdheks.gov/DocumentCenter/View/132/Executive-Order-20-24-Statewide-Stay-Home-Order-PDF---4-16-20

21.     Plaintiff has suffered direct physical loss to the property. Ingress and egress to the property currently has been limited due to the Stay at Home Orders and transmission concerns. And, according to the World Health Organization ("WHO"), the incubation period for COVID-19 can last up to 14 days. During this period (also known as the "pre-symptomatic" period), infected persons can be contagious, and disease transmission can occur before the infected person shows any symptoms or has any reason to believe they are infected.

22.     Not only is COVID-19 spread by human-to-human transfer, but the WHO has confirmed COVID-19 can exist on contaminated objects or surfaces.[4] According to a study documented in The New England Journal of Medicine, COVID-19 was detectable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard, and up to three days on plastic and stainless steel surfaces[5] – all of which are materials used by Plaintiff throughout its facilities and operations. Moreover, the study's results suggest that individuals could become infected with COVID-19 through indirect contact with surfaces or objects used by an infected person, whether they were symptomatic or not.[6]

23.     Current evidence shows that the first death from COVID-19 occurred as early as February 6, 2020. This suggests the virus has circulated in the United States far longer than first reported and previously assumed. It is likely customers, employees, and/or other visitors to the

---

[4]     *See*     https://www.who.int/news-room/commentaries/detail/modes-of-transmission-of-virus-causing-covid-19-implications-for-ipc-precaution-recommendations ("[T]ransmission of the COVID-19 virus can occur by direct contact with infected people and indirect contact with surfaces in the immediate environment or with objects used on the infected person").

[5]     *See*     https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces;     see     also https://www.who.int/news-room/commentaries/detail/modes-of-transmission-of-viruscausing-covid-19-implications-for-ipc-precaution-recommendations.

[6] *Id.*

insured property were infected with the coronavirus and thereby caused physical loss and damage to the property.

24. The transmission of COVID-19 and Stay at Home Orders have otherwise affected Plaintiff's businesses. For example, customers either cannot access Plaintiff's property due to the Stay at Home Orders or will not access Plaintiff's property for fear of being infected with or spreading COVID-19. The pandemic, and the Stay at Home and similar orders, have similarly restricted Plaintiff's suppliers.

25. Still, like countless other businesses throughout the United States, Plaintiff prepared for an unexpected event like the COVID-19 pandemic. Specifically, Plaintiff purchased property insurance from Defendant that did not exclude pandemic-related losses from coverage. A true and accurate copy of the Policy purchased by Plaintiff is attached hereto as Exhibit A.

26. The Policy is composed of a number of forms and endorsements that define the scope of coverage.

27. The Policy is an all-risk policy, meaning it covers all direct "loss" to Covered Property unless specifically excluded or limited. Exhibit A at 13. "Loss" is defined as "accidental physical loss or accidental physical damage." *Id.* at 47.

28. As set forth below, the Policy also provides coverage for:

    a. losses sustained due to the necessary suspension of operations ("Business Income" coverage) (*id.* at 27);

    b. interruption of business caused by an order from a civil authority ("Civil Authority" coverage) (*id.* at 28);

    c. expenses incurred to minimize suspension of business ("Extra Expense" coverage) (*id.* at 28);

    d. losses caused by the prevention of existing ingress or egress at the premises ("Ingress or Egress" coverage) (*id.* at 93); and

e.    expenses necessary to protect Covered Property from further damage in the event of a loss ("Sue and Labor" coverage) (*id.* at 39).

29.    The Policy defines "suspension" to include the "slowdown or cessation of your business activities[.]" Exhibit A at 49.

30.    In addition, the Policy requires Plaintiff to "[t]o take all reasonable steps to protect the Covered Property from further damage" when a loss occurs, which in this instance required Plaintiff to suspend operations to reduce the spread of COVID-19 and to prevent further losses occasioned by its spread on Plaintiff's premises. Exhibit A at 39.

31.    On or about March 24, 2020, Plaintiff sought coverage related to COVID-19 and notified Defendant of loss covered by the Policy. On or about May 15, 2020, in response to Plaintiff's notice of claim, Defendant denied coverage and refused to cover Plaintiff's COVID-19 losses.

32.    Defendant has caused material harm to Plaintiff by refusing coverage under the Policy.

33.    Plaintiff seeks to recover compensatory damages for breach of contract, as well as declaratory and injunctive relief.

## **PARTIES**

34.    Plaintiff K.C. Hopps. Ltd., is a Missouri corporation with its principal place of business located in Overland Park, Kansas

35.    Defendant The Cincinnati Insurance Company, Inc., is an Ohio corporation, with its principal place of business in Cincinnati, Ohio.

## JURISDICTION AND VENUE

36.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1) in that this is an action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and Plaintiff and Defendant are citizens of different States.

37.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's causes of action occurred in this judicial district and division. The Policy at issue covers Plaintiff's facilities located in the State of Missouri.

## FACTUAL BACKGROUND

38.     COVID-19 and the Stay at Home Orders have forced Plaintiff to suspend its operations. Plaintiff's facilities are located in Jackson County, Missouri, and Johnson County, Kansas. The departments of health for Kansas and Missouri have reported more than 20,000 combined cases of COVID-19 as of the date of this filing, several thousand of which have been in the Kansas City metropolitan area.

39.     On April 3, 2020, the State of Missouri issued a Stay at Home Order "to protect public health and prevent the further spread of COVID-19."[7] The Stay at Home Order required individuals residing in Missouri to avoid leaving their homes except as necessary to perform limited activities and to practice social distancing at all times. Starting May 3, 2020, Missouri lifted the restrictions placed on leaving home, but left in place other substantial restrictions, including requirements for social distancing and limitation on the number of people permitted in an establishment to just 25% of capacity.

---

[7]     *See* https://governor.mo.gov/priorities/stay-home-order.

40.     On April 27, 2020, Missouri issued the Recovery Order.[8] Although the Recovery Order lifted the restriction placed on leaving home for non-essential activities, it still imposed substantial restrictions on all Missourians. For example, it continued to require residents to practice social distancing at all times. The Recovery Order imposed upon individuals performing job duties that require contact with other people closer than six feet to "take enhanced precautionary measures to mitigate the risks of contracting or spreading COVID-19." The order further directed Plaintiff, among other businesses, to pay special care to "[s]anitation, including disinfection of common and high-traffic areas" and to "follow" any guidance provided by the [CDC]."[9]

41.     On March 22, 2020, the City of Kansas City, Missouri issued a Stay at Home Order prohibiting individuals from leaving their residences except to perform "Essential Activities," as defined therein. The order also required "non-essential" businesses to cease in-person operations. As defined in the order, "Essential Businesses," included things like healthcare operations, essential infrastructure, and grocery stores. On April 16, 2020, Kansas City extended the order through May 15.

42.     On March 24, 2020, Jackson County, Missouri issued a Stay at Home Order similarly requiring individuals in the county to avoid leaving their homes except as necessary to perform limited activities and to practice social distancing at all times. On May 1, 2020, Jackson County extended the order through May 11, 2020.

43.     Effective March 24, 2020, Johnson County, Kansas issued a Stay at Home Order to mitigate the spread of COVID-19 in Johnson County, Kansas on the basis of a confirmed outbreak and person-to-person spread of COVID-19 in the United States, Kansas, and Johnson

---

[8]     *See* https://governor.mo.gov/sites/gov/files/media/pdf/2020/04/Economic-Reopening-Phase-1.pdf.

[9]     *See* https://governor.mo.gov/show-me-strong-recovery-plan-guidance-and-frequently-asked-questions.

County.[10] The Johnson County order specifically recognized that COVID-19 spreads easily from person to person and may result in serious illness or death. It further identified COVID-19 as a public disaster affecting life, health, property, and the public peace. The Johnson County issued the order to mitigate and slow the spread of COVID-19 in the community.

44.     Effective March 28, 2020, the Kansas Governor issued an executive order establishing a statewide "stay-home" order in conjunction with the Kansas Essential Function Framework for COVID-19 response efforts, superseding the Johnson County Order. The Kansas order directed all Kansas to stay in their homes to slow the spread of COVID-19.[11] The purpose of the Kansas order was to "mitigate the spread of COVID-19 throughout Kansas" as it recognized the confirmed presence of positive cases among 31 counties.[12] On April 16, 2020, the Kansas extended the order to May 3, 2020.[13]

45.     As of April 17, 2020, at least 42 states and countless local governments had issued substantially similar orders and directives, the purpose of which was to mitigate and slow the spread of COVID-19.

46.     According to the Center for Disease Control ("CDC"), everyone is at risk of getting COVID-19. The virus can spread by respiratory droplets when an infected person coughs, sneezes, or talks. A person can become infected from respiratory droplets, or even by touching a surface or

---

[10]     *See*              https://www.jocogov.org/sites/default/files/documents/CMO/JoCo%20Public%20Health%20Officer%20Stay%20at%20Home%20Order%203-22-20.pdf.

[11]     *See*    https://www.coronavirus.kdheks.gov/DocumentCenter/View/873/Essential-Activities-and-Essential-Functions-PDF---4-15-20.

[12]     *See* https://governor.kansas.gov/wp-content/uploads/2020/03/EO20-16.pdf.

[13]     *See*    https://www.coronavirus.kdheks.gov/DocumentCenter/View/132/Executive-Order-20-24-Statewide-Stay-Home-Order-PDF---4-16-20.

object that has the virus on it and then touching the mouth, nose, or eyes.[14] The virus can live on surfaces for several days if not longer.[15]

47. In addition, a number of scientific publications have reported finding COVID-19 in the air. The New England Journal of Medicine reported its finding that experimentally produced aerosols containing the virus remained infectious in tissue-culture assays, with only a slight reduction in infectivity during a 3-hour period of observations. "Aerosols from infected persons may therefore pose an inhalation threat even at considerable distances and in enclosed spaces…."[16]

48. A consensus appears to be emerging that COVID-19 can also travel through the air via aerosols. For example, aerosol scientist Lidia Morawska of the Queensland University of Technology in Brisbane, Australia told *Nature* that, "In the minds of scientists working on this, there's absolutely no doubt that the virus spreads in the air. This is a no-brainer."[17]

49. An April 2020 study published in the journal *Emerging Infectious Diseases* found a wide distribution of COVID-19 on surfaces and in the air about 13 feet from patients in two hospital wards in Wuhan, China, leading the authors to conclude that the virus spreads in aerosols in addition to large respiratory droplets. The investigators found evidence of the virus in swabs of floors, computer mice, trash bins, bed handrails, patients' face makes, health workers' personal protective equipment, and air vents.[18]

50. The authors also surmised that the high rate of positivity for floor samples in the hospital strongly suggest that droplets fall to the ground and then are spread via patients' shoes.

---

[14] *See* https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf.

[15] *See* https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf.

[16] *See* https://www.nejm.org/doi/full/10.1056/NEJMc2009324.

[17] *See* https://www.nature.com/articles/d41586-020-00974-w.

[18] *See* https://www.cidrap.umn.edu/news-perspective/2020/04/study-finds-evidence-covid-19-air-hospital-surfaces.

For example, every sample tested from the pharmacy floor tested positive for COVID-19 even though no patients were housed there.[19]

51.     Another study conducted in Wuhan indicates that staff movement, floor cleaning, and the removal of personal protective equipment could transmit the virus through the re-suspension of virus-contaminated aerosols.[20]

52.     Kimberly Prather, an aerosol chemist at the University of California, San Diego told *Science* magazine: "I'm relieved to see aerosolization is accepted. This added airborne pathway helps explain why it is spreading so fast."[21]

53.     Aerosol particles are held in the air by physical and chemical forces. The suspended particles remain for hours or more, depending on factors such as heat and humidity. If virus particles can be suspended in air for more than a few seconds, like, for instance, the measles virus can, then anyone passing through could become infected by a pathogenic aerosol cloud. And the virus can travel long distances and land on surfaces, only to be stirred back up into the air later by cleaning or other disturbances.

54.     The SARS virus that caused a 2003 epidemic is a coronavirus and is similar to COVID-19 (technically named SARS-CoV-2). As a result, the behavior of SARS during the 2003 epidemic provided evidence about aerosol risk from COVID-19.

55.     A 2014 analysis of SARS published in the journal *Clinical Infectious Diseases* investigated a seemingly puzzling outbreak in a Hong Kong apartment complex whose residents had not been in close contact with each other.[22] The study found that "airborne spread was the

---

[19]    *See*     https://www.cidrap.umn.edu/news-perspective/2020/04/study-finds-evidence-covid-19-air-hospital-surfaces.

[20]    *See* https://www.biorxiv.org/content/10.1101/2020.03.08.982637v1.

[21]    *See*   https://www.sciencemag.org/news/2020/04/you-may-be-able-spread-coronavirus-just-breathing-new-report-finds#.

[22]    *See* https://academic.oup.com/cid/article/58/5/683/365793.

most likely explanation, and the SARS coronavirus could have spread over a distance of 200 meters," or about 600 feet.[23]

56.     The implications of airborne spread of the virus are extremely serious. Airborne spread means that the virus can travel long distances from any infected person. It can then infect someone who unknowingly walks through a pathogenic cloud. It can also infect someone by settling on a physical surface, which someone touches and later becomes infected. And regardless of the transmission method, the evidence suggests that COVID-19 can be transmitted by shoes even once it reaches the ground.

57.     State and local governments have determined that without stay at home orders, COVID-19 could spread rampant throughout the community.

58.     The Stay at Home Orders in and around Plaintiff's places of business also explicitly acknowledge that COVID-19 causes direct physical damage and loss to property:

   a. the Johnson County, Kansas order stated that COVID-19 "endanger[s] health, safety and welfare of persons and **property** within the border of Johnson County, Kansas" and that it "remains a public disaster affecting life, healthy, **property**, and the public space.[24] (emphasis added);

   b. the City of Kansas City, Missouri, issued Order 20-01 in response to the pandemic, which stated that "the City wishes to employ all means available under the law to protect public life, health, safety and **property** to limit the development, contraction and spread of COVID-19"[25] (emphasis added).

---

[23]     *Id.*

[24]     *See* https://www.jocogov.org/sites/default/files/documents/CMO/JoCo%20Public%20Health%20 Officer%20Stay%20at%20Home%20Order%203-22-20.pdf

[25]     *See* http://mediaassets.kshb.com/NWT/Sam/Mayor%20Lucas%20Stay%20at%20Home%20 Order.pdf?_ga=2.87564241.83785035.1587504680-1549958454.1581544124

59.     In order to protect itself against risks like COVID-19, Plaintiff purchased the Policy from Defendant. The Policy was in effect at the time of the outbreak and remains in effect today. Plaintiff paid all premiums required by the Policy.

60.     Plaintiff is a Named Insured under the Policy and owns in whole or in part, or is the managing member of, the following entities doing business at the following locations, all of which are also named insureds under Plaintiff's Policy (collectively with Plaintiff, the "Named Insureds"), which remains in force:

  a. O'Dowd's, LLC, a Missouri limited liability company, O'Dowd's Gastrobar, 4742 Pennsylvania Avenue, Kansas City, MO 64112;

  b. Briarcliff Events, LLC, a Missouri limited liability company, The View at Briarcliff Event Space, 4000 N Mulberry Drive, Kansas City, MO 64116;

  c. Arena Promotions, LLC, a Missouri limited liability company providing food beverage and catering services at Hy-Vee Arena, 1800 Genessee Street, Kansas City, MO 64102;

  d. Southeast KC Restaurant Co., LLC, a Missouri limited liability company, Blue Moose Bar & Grill, Red Bridge, 11134 Holmes Road, Kansas City, MO 64131;

  e. Blue Moose, LLC, a Kansas limited liability company, d/b/a Blue Moose Bar & Grill, Prairie Village, 4160 W 71st Street, Prairie Village, KS 66208;

  f. Barley's Brewhaus, LLC, a Kansas limited liability company, d/b/a Barley's Brewhaus, 16649 Midland Drive, Shawnee, KS 66217;

  g. Falcon Ridge Restaurant, LLC, a Kansas limited liability company, d/b/a Blue Moose Bar & Grill, Lenexa, 10064 Woodland Road, Lenexa, KS 66220;

  h. Hopps Catering, LLC, a Kansas limited liability company, d/b/a Relish Classic Catering and Moose Truck food truck, 9112 Cody Street, Overland Park, KS 66214;

  i. Pan Fried 2, LLC, a Kansas limited liability company, d/b/a Stroud's Overland Park, 8301 W 135th Street, Overland Park, KS 66223.

61.     Defendant is the effective and liable insurer of the Policy.

62.    Generally, under property insurance policies like those issued by Defendant to Plaintiff, the insuring agreements provide coverage for all risks of physical loss or damage to property, unless specifically excluded.

63.    The Policy is an "all-risk" policy. It covers "direct 'loss' unless the 'loss' is excluded or limited" by the Policy. Exhibit A at 13.

64.    The Policy does not exclude or limit coverage for losses from a virus, like COVID-19, or pandemics.

65.    The risk of a virus like COVID-19 was foreseeable to, if not foreseen by, insurance companies like the Defendant. The Insurance Services Office ("ISO"), an organization that provides policy writing services to insurers, has recognized for years that a virus can constitute physical damage to property. Specifically, in 2006, the ISO announced the submission of an exclusion of loss "due to disease-causing agents such as viruses and bacteria."

66.    In connection with circulating the virus exclusion, the ISO sent the following statement to state insurance regulators:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

67.    Despite the availability of a specific exclusion for viruses, Plaintiff's Policy contains no such exclusion. Nor does Plaintiff's Policy contain an exclusion for "pandemics," "communicable disease," or anything similar.

68. Because damage due to viruses constitutes physical damage and loss under the Policy, and/or the Stay at Home Orders have caused Plaintiff to have lost the use of its premises for their intended purpose, Plaintiff's losses are covered under the Policy.

69. The Policy provides coverage for several different types of losses arising from COVID-19 that are relevant here.

70. Defendant is obligated to pay for actual loss of **"Business Income"** sustained due to the necessary suspension of operations caused by direct physical loss or damage. Exhibit A at 27. "Business Income" means net income (net profit or loss before income taxes) that would have been earned or incurred in the absence of "loss" as well as continuing normal operating expenses, including payroll. *Id.* at 42. Coverage lasts during the "period of restoration" – beginning at the time of the direct loss and running through the earlier of the date the property is repaired or resumed at a new permanent location. *Id.* at 47. A "slowdown or cessation" of business activities constitutes a "suspension" under the Policy. *Id.* at 49. Plaintiff has suffered lost Business Income because it has suspended operations of its business due to COVID-19.

71. Defendant also agreed to provide coverage from an interruption to business caused by an order from a **"Civil Authority."** Exhibit A at 28. Specifically, Defendant agreed to "pay for the actual loss of 'Business Income'" that Plaintiff sustained and "necessary Extra Expense caused by action of civil authority that prohibits access to" the Covered Property due to physical damage to property other than the Covered Property. *Id.* Access has been restricted to the Covered Property due to the presence and threat of COVID-19 in the immediate surrounding areas and related Stay at Home Orders.

72. Defendant also agreed to pay for **"Extra Expense."** Exhibit A at 28. Extra Expenses are expenses to avoid or minimize suspension of business whether or not operations are

able to continue and to repair or replace property. *Id.* Plaintiff has suffered Extra Expenses because it has suspended operations due to COVID-19 to prevent physical damages to the premises by the presence or proliferation of the virus and the physical harm it could cause persons present there.

73. The Policy also provides "**Ingress and Egress**" coverage, which requires the insurer to pay for actual loss of Business Income sustained by the prevention of existing ingress or egress at the premises. Exhibit A at 93. To mitigate the spread of COVID-19, Plaintiff, employees, customers, and others have been unable to enter the premises to perform daily operations.

74. Finally, the Policy also provides **"Sue and Labor"** coverage, which requires the insured to "[t]ake all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim" in the event of a loss or damage. Exhibit A at 39. Plaintiff has taken such steps by, for example, complying with the Stay at Home Orders.

75. Losses caused by COVID-19 and the related state and local Stay at Home Orders triggered these provisions of Defendant's Policy. Specifically, Plaintiff's operations have been suspended, and it has lost revenue and business opportunities as a result.

76. Plaintiff submitted a claim to Defendant for coverage under the Policy, but Defendant has denied Plaintiff's claim.

### COUNT I: DECLARATORY AND INJUNCTIVE RELIEF – BUSINESS INCOME

77. The preceding paragraphs are incorporated by reference as if fully alleged herein.

78. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

79. An actual controversy has arisen and now exists between Plaintiff and Defendant concerning the respective rights and duties of the parties under the Policy. Plaintiff requested

coverage for COVID-19 related losses as specified in the Policy. Defendant responded with a letter denying coverage. Moreover, upon information and belief, Defendant has refused other, similar claims claiming that COVID-19 losses are not covered by the Policy.

80.    Plaintiff contends that Defendant has breached the Policy in the following respects:

      a.    Plaintiff suffered losses covered by the Business Income Coverage in the Policy;

      b.    Defendant is obligated to pay Plaintiff for those losses; and

      c.    Defendant has failed and refused to pay Plaintiff for those losses.

81.    Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policy and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the Policy so that future controversies may be avoided.

82.    Pursuant to a declaration of the parties' respective rights and duties under the Policy, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policy in regards to coverage decisions under the Policy's Business Income Coverage; and (2) ordering Defendant to comply with the terms of the Policy in regards to coverage decisions.

## COUNT II: BREACH OF CONTRACT – BUSINESS INCOME

83.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

84.    Plaintiff purchased a property coverage policy from Defendant.

85.    The Policy is a valid and enforceable contract between the Defendant and Plaintiff.

86.    Plaintiff performed its obligations under the terms of the Policy including giving Defendant notice of Plaintiff's claim. Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

87. Plaintiff has sustained a loss under the Business Income Coverage in the Policy arising from the COVID-19 virus and associated state and local Stay at Home Orders.

88. Defendant has denied Plaintiff's claim for Business Income related to COVID-19, and associated state and local Stay at Home Orders, in breach of the Policy.

89. As a direct and proximate result of Defendant's breach, Plaintiff has sustained damages in an amount to be determined at trial.

## COUNT III: DECLARATORY AND INJUNCTIVE RELIEF – CIVIL AUTHORITY

90. The preceding paragraphs are incorporated by reference as if fully alleged herein.

91. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

92. An actual controversy has arisen and now exists between Plaintiff and Defendant concerning the respective rights and duties of the parties under the Policy. Plaintiff requested coverage for COVID-19 related losses as specified in the Policy. Defendant responded with a letter denying coverage. Moreover, upon information and belief, Defendant has refused other, similar claims claiming that COVID-19 losses are not covered by the Policy.

93. Plaintiff contends that Defendant has breached the Policy in the following respects:

   a. Plaintiff suffered losses covered by the Policy's Civil Authority Coverage;

   b. Defendant is obligated to pay Plaintiff for those losses; and

   c. Defendant has failed to pay Plaintiff for those losses.

94. Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the Policy so that future controversies may be avoided.

95.     Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policy in regards to coverage decisions under the Civil Authority Coverage in the Policy; and (2) ordering Defendant to comply with the terms of the Policy in regards to coverage decisions.

## COUNT IV: BREACH OF CONTRACT – CIVIL AUTHORITY

96.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

97.     Plaintiff and the class purchased a property coverage policy from Defendant.

98.     The Policy is a valid and enforceable contract between the Defendant and Plaintiff.

99.     Plaintiff substantially performed its obligations under the terms of the Policy including giving Defendant notice of Plaintiff's claim. Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

100.    Plaintiff has sustained a loss under the Civil Authority Coverage in the Policy arising from the COVID-19 virus and associated state and local Stay at Home Orders.

101.    Defendant has denied Plaintiff's claim for recovery under the Policy's Civil Authority Coverage related to COVID-19, and associated state and local Stay at Home Orders, in breach of the Policy.

102.    As a direct and proximate result of Defendant's breach, Plaintiff has sustained damages in an amount to be determined at trial.

## COUNT V: DECLARATORY AND INJUNCTIVE RELIEF – EXTRA EXPENSE

103.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

104.    The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

105.    An actual controversy has arisen and now exists between Plaintiff and Defendant concerning the respective rights and duties of the parties under the Policy. Plaintiff requested coverage for COVID-19 related losses as specified in the Policy. Defendant responded with a letter denying coverage. Moreover, upon information and belief, Defendant has refused other, similar claims claiming that COVID-19 losses are not covered by the Policy.

106.    Plaintiff contends that Defendant has breached the Policy in the following respects:

a.      Plaintiff suffered losses covered by the Policy's Extra Expense Coverage;

b.      Defendant is obligated to pay Plaintiff for those losses; and

c.      Defendant has failed to pay Plaintiff for those losses.

107.    Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policy and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the Policy so that future controversies may be avoided.

108.    Pursuant to a declaration of the parties' respective rights and duties under the Policy, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policy in regards to coverage decisions under the Extra Expense Coverage in the Policy; and (2) ordering Defendant to comply with the terms of the Policy in regards to coverage decisions.

## COUNT VI: BREACH OF CONTRACT – EXTRA EXPENSE

109.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

110.    Plaintiff purchased a property coverage policy from Defendant.

111.    The Policy is a valid and enforceable contract between the Defendant and Plaintiff.

112.     Plaintiff performed its obligations under the terms of the Policy including giving Defendant notice of Plaintiff's claim. Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

113.     Plaintiff has sustained a loss under the Extra Expense Coverage in the Policy arising from the COVID-19 virus and associated state and local Stay at Home Orders.

114.     Defendant has denied Plaintiff's claim for recovery under the Policy's Extra Expense Coverage related to COVID-19, and associated state and local Stay at Home Orders, in breach of the Policy.

115.     As a direct and proximate result of Defendant's breach, Plaintiff has sustained damages in an amount to be determined at trial.

## COUNT VII: DECLARATORY AND INJUNCTIVE RELIEF – INGRESS AND EGRESS

116.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

117.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

118.     An actual controversy has arisen and now exists between Plaintiff and Defendant concerning the respective rights and duties of the parties under the Policy. Plaintiff requested coverage for COVID-19 related losses as specified in the Policy. Defendant responded with a letter denying coverage. Moreover, upon information and belief, Defendant has refused other, similar claims claiming that COVID-19 losses are not covered by the Policy.

119.     Plaintiff contends that Defendant has breached the Policy in the following respects:

    a.     Plaintiff has suffered losses covered by the Policy's Ingress and Egress Coverage;

    b.     Defendant is obligated to pay Plaintiff for those losses.

    c.     Defendant has failed to pay Plaintiff for those losses.

120.     Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policy and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the Policy so that future controversies may be avoided.

121.     Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policy in regards to coverage decisions under the Ingress and Egress Coverage in the Policy; and (2) ordering Defendant to comply with the terms of the Policy in regards to coverage decisions.

## COUNT VIII: BREACH OF CONTRACT – INGRESS AND EGRESS

122.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

123.     Plaintiff purchased a property coverage policy from Defendant.

124.     The Policy is a valid and enforceable contract between the Defendant and Plaintiff.

125.     Plaintiff substantially performed its obligations under the terms of the Policy including giving Defendant notice of Plaintiff's claim. Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

126.     Plaintiff has sustained a loss under the Ingress and Egress Coverage in the Policy arising from the COVID-19 virus and associated state and local Stay at Home Orders.

127.     Defendant has denied Plaintiff's claim for recovery under the Policy's Ingress and Egress Coverage related to COVID-19, and associated state and local Stay at Home Orders, in breach of the Policy.

128.     As a direct and proximate result of Defendant's breach, Plaintiff has sustained damages in an amount to be determined at trial.

## COUNT IX: DECLARATORY AND INJUNCTIVE RELIEF – SUE AND LABOR

129. The preceding paragraphs are incorporated by reference as if fully alleged herein.

130. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

131. An actual controversy has arisen and now exists between Plaintiff and Defendant concerning the respective rights and duties of the parties under the Policy. Plaintiff requested coverage for COVID-19 related losses as specified in the Policy. Defendant responded with a letter denying coverage. Moreover, upon information and belief, Defendant has refused other, similar claims claiming that COVID-19 losses are not covered by the Policy.

132. Plaintiff contends that Defendant has breached the Policy in the following respects:

    a.    Plaintiff has suffered losses covered by the Policy's Sue and Labor provision;

    b.    Defendant is obligated to pay Plaintiff for those losses; and

    c.    Defendant has failed to pay Plaintiff for those losses.

133. Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policy and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the Policy so that future controversies may be avoided.

134. Pursuant to a declaration of the parties' respective rights and duties under the Policy, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policy in regards to coverage decisions under the Sue and Labor provision in the Policy; and (2) ordering Defendant to comply with the terms of the Policy in regards to coverage decisions.

## COUNT X: BREACH OF CONTRACT – SUE AND LABOR

135. The preceding paragraphs are incorporated by reference as if fully alleged herein.

136. Plaintiff purchased a property coverage policy from Defendant.

137. The Policy is a valid and enforceable contract between the Defendant and Plaintiff.

138. Plaintiff substantially performed its obligations under the terms of the Policy including giving Defendant notice of Plaintiff's claim. Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

139. Plaintiff has sustained a loss covered by the Sue and Labor provision in the Policy arising from the COVID-19 virus and associated state and local Stay at Home Orders.

140. Defendant has denied Plaintiff's claim for recovery under the Policy's Sue and Labor provision related to COVID-19, and associated state and local Stay at Home Orders, in breach of the Policy.

141. As a direct and proximate result of Defendant's breach, Plaintiff has sustained damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests relief and judgment against Defendant as follows:

a.      For a judgment against Defendant for the causes of action alleged against it;

b.      For compensatory damages in an amount to be proven at trial;

c.      For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the Policy;

d.      For appropriate injunctive relief, enjoining Defendant from continuing to engage in conduct related to the breach of the Policy;

e.      For pre-judgment and post-judgment interest at the maximum rate permitted by law;

f.      For Plaintiff's attorney's fees;

g.      For Plaintiff's costs incurred; and

h.      For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.


Date: June 4, 2020                          Respectfully submitted,

**MILLER SCHIRGER LLC**

*s/ Matthew W. Lytle*
John J. Schirger, MO # 60583
Matthew W. Lytle, MO #59145
Joseph M. Feierabend, MO #62563
4520 Main Street, Suite 1570
Kansas City, MO 64111
Telephone:     (816) 561-6500
Facsimile:     (816) 561-6501
Email:         jschirger@millerschirger.com
Email:         mlytle@millerschirger.com
Email:         jfeierabend@millerschirger.com

**STUEVE SIEGEL HANSON LLP**

Patrick J. Stueve, MO #37682
Bradley T. Wilders, MO #60444
Curtis Shank, MO #66221
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:     816-714-7100
Facsimile:     816-714-7101
Email:         stueve@stuevesiegel.com
Email:         wilders@stuevesiegel.com
Email:         shank@stuevesiegel.com

**LANGDON & EMISON LLC**

J. Kent Emison, MO #29721
911 Main Street
PO Box 220
Lexington, Missouri 64067
Telephone: (660) 259-6175
Facsimile: (660) 259-4571
Email: kent@lelaw.com

**SHAFFER LOMBARDO SHURIN, P.C.**

Richard F. Lombardo, MO# 29748
2001 Wyandotte Street
Kansas City, MO 64108
Telephone: 816-931-0500
Facsimile: 816-931-5775
Email: rlombardo@sls-law.com

*Attorneys for Plaintiff*