IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| K.C. HOPPS, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 4:20-CV-437 |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CINCINNATI INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION *IN LIMINE* NO. 1
WITH SUGGESTIONS IN SUPPORT**

COMES NOW Plaintiff, by and through its attorneys of record, and moves this Court to for an order excluding any and all evidence, references to evidence, testimony, and argument concerning Plaintiff's Motion *In Limine* below and directing that no party or witness be questioned, and no reference be made by counsel or witnesses in the presence of the jury, as to Plaintiff's application for, receipt of, and/or use of state and local grants and Small Business Administration Paycheck Protection Program loans ("PPP Loans"), Restaurant Revitalization Fund grants ("RRF Grants"), and Economic Injury Disaster Loan Program Loans ("EIDL Loans"), as well as the forgiveness of any such loans or grants. Plaintiff further moves the Court to instruct Defendant and Defendant's counsel to advise all witnesses accordingly.

Evidence of the grants and loans is not only precluded under the collateral source rule but is immaterial to any issue in this action. It has no tendency to prove or disprove disputed facts relevant to the determination of whether Plaintiff's business interruption claim is covered under the policy of insurance issued by Defendant (the "Policy"). Accordingly, it will consume unnecessary time and create an extreme danger of confusing and misleading the jury. For these reasons, as explained more fully below, such evidence should be excluded from the trial of this matter.

1

## ARGUMENT AND AUTHORITIES

The Court has the inherent authority to control trial proceedings, including ruling on motions *in limine*. *See e.g., Luce v. United States*, 469 U.S. 38, 40, n.2 and 4 (1984). "Typically, a motion in limine is used to determine the admissibility of evidence at trial . . . ." *Aerotronics, Inc. v. Pneumo Abex Corp.*, 62 F.3d 1053, 1066 (8th Cir. 1995). This Court encourages parties to file motions *in limine* relating to key evidentiary issues, in order to ensure efficient use of trial time. Doc. 39.

Federal Rule of Evidence Rule 402 establishes that only relevant evidence is admissible and specifically prohibits admission of irrelevant evidence. Rule 401 states that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action. *Spring/United Mgmt. Co. v. Medelsohn*, 552 U.S. 379, 388 (2008). Further, the Advisory Committee has stated that "relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." Fed. R. Evid. 401. Irrelevant evidence is properly excluded because its admission tends to draw the jury's attention away from the issues it has been called upon to resolve. *State v. Walden*, 490 S.W.2d 391, 393 (Mo. Ct. App. 1973). The burden is on the proponent of the evidence to prove its relevance. *Nolte v. Ford Motor Co.,* 458 S.W.3d 368, 382 (Mo. Ct. App. 2014).

In addition, the Court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of . . . unfair prejudice confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence is considered prejudicial if it is confusing or misleading, lending more to the injection of collateral issues than to material facts. *See Still v. Ahnemann*, 984 S.W.2d 568, 574-75 (Mo. Ct. App. 1999). Further, evidence may be excluded when there is significant danger that the jury might base its decision on emotion, or when non-party events would distract reasonable jurors from the real issues in the case. *Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684, 690 (9th Cir. 2001); *see also Moses.com*

*Sec., Inc. v. Comprehensive Software Sys., Inc.,* 406 F.3d 1052, 1059 (8th Cir. 2005) (upholding district court's decision excluding evidence "that would serve only to distract the jury from the key issues."); *U.S. v. Allerheiligen,* No. 97-40090-01-DES, 1998 WL 918841, *3 (D. Kan. Nov. 19, 1998) (excluding evidence that is "collateral to the issues of this trial and would only serve to confuse and distract the jury").

  1. **Evidence of Plaintiff's state and local grants, RRF Grants, and EIDL and PPP Loans.**

Plaintiff anticipates that Defendant will attempt to introduce into evidence that Plaintiff applied for, received, and/or used monies from state and local grants which did not need to be repaid and loans from the SBA's Paycheck Protection Program, Restaurant Revitalization Fund, and Economic Injury Disaster Loan program as well as the forgiveness of any such loans. Plaintiff applied for two rounds of PPP Loans. Doc. 100, Ex. 2, Nelson Dep. pp. 168:17 – 172:18, Ex. 15, pp. 172:19 – 173:18, Exs. 13-14. Additionally, for certain of its locations, Plaintiff also applied for and/or received RRF Grants and EIDL Loans through the SBA and grants from the States of Missouri and Kansas and from Johnson County, Kansas. Doc. 100, Ex. 4, LyGrisse Dep, pp. 6:8 -7:20, 9:8-24, 21:23-23:1; Doc. 100, Ex. 3, O'Brien Dep., pp. 107:14-22, 194:13-197:3. The Small Business Administration Paycheck Protection Program essentially provided loans to small businesses to be used for payment of certain enumerated expenses, including payroll, rent, and utilities. PPP Loans were eligible for forgiveness to the extent the monies were used to pay certain overhead, including payroll costs, rent, and/or utilities. Doc. 100, Ex. 3, O'Brien Dep. 114:19-24, 115:1, 115:15-116:6, 193:18-194:5. The Restaurant Revitalization Fund Program was established to provide funding to help restaurants and other eligible businesses keep their doors open. RRF Grants are also eligible for forgiveness, as were the state and local government grants. *See* https://www.sba.gov/funding-programs/loans/covid-19-relief-options/restaurant-revitalization-fund; Doc. 100, Ex. 3, O'Brien Dep., pp. 194:13-195:4. EIDL Loans, available for small businesses that lost revenue due to COVID, are not eligible for forgiveness, with

3

the potential exception of certain advances. Doc. 100, Ex. 3, O'Brien Dep. 11:21-12:17, 102:25-103:6. Plaintiff surmises that Cincinnati seeks to introduce such evidence to persuade the jury to reduce any damages awarded against it by the amount of the forgiven loans and grants. Admission of the government benefits Plaintiff received is precluded by the collateral source rule.

The collateral source rule "permits recovery against a wrongdoer for the full amount of damages even though the plaintiff is also compensated from a different source (such as an insurance company) which is 'wholly independent' of the wrongdoer and whose payment is therefore collateral to his." *Overton v. U.S.,* 619 F.2d 1299, 1306 (8th Cir. 1980) (applying Missouri law). Kansas law is similar: "Under the collateral source rule, benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer." *Martinez v. Milburn Enterpr., Inc.,* 233 P.3d 205, 208 (Kan. 2010) (internal quotation marks, emphasis and citations omitted). Two of the rationales for this rule are: (1) "the wrongdoer does not deserve to benefit from the fortuity that the plaintiff has received or will receive compensation from a source wholly independent of the wrongdoer," and (2) "plaintiff deserves any additional compensation he may receive because he has 'contracted' for it . . . (O)ne can justify a double recovery where the original source was supplied by the plaintiff, himself, out of resources that would otherwise have been available to him for other purposes * * *." *Overton v. U.S.,* 619 F.2d at 1306 (internal citation omitted).

To summarize, a plaintiff may invoke the collateral source rule "either when the payment in question came from a source wholly independent of the liable party *or* when the plaintiff may be said to have contracted for the prospect of a 'double recovery.'" *Id.* at 1307 (emphasis added). As *Overton* suggested, typically, the collateral source is an insurance policy purchased by the plaintiff and paid for by his insurance premiums to provide protection against a third-party tortfeasor. In this case, however, the wrongdoer is the insurance company that has refused to provide coverage under the Policy, and the

4

collateral sources are from third parties: benefits provided by the federal government through PPP Loans, EIDL Loans, RRF Grants; and grants provided by state and local governments.

The first circumstance in which the collateral source rule may be invoked is satisfied here. The source of the government aid Plaintiff received and/or applied for – private lenders that provided SBA-backed grants and loans, the federal government, which forgave those loans, and state and local governments that provided grants -- is wholly independent of the liable party, Cincinnati. Indeed, Missouri courts have held that "governmental benefits contingent upon a plaintiff's financial need or special status . . . are independent sources that are subject to the collateral source rule, and thus, a defendant may not inform the jury of such sources." *Porter v. Toys 'R' Us-Delaware, Inc.,* 152 S.W.3d 310, 320 (Mo. Ct. App. 2004).

And the rationales for the rule are served by its application to exclude evidence of Plaintiff's application for, receipt of, and/or forgiveness of the above-described grants and loans. For example, the government provided PPP monies so that employers, like Plaintiff, could keep their staff employed during the pandemic. Cincinnati did not timely honor its contractual obligations under the Policy, and without the government funds, Plaintiff, like many other employers, would not have been able to meet its obligations to its employees. The purpose of the PPP monies was to encourage employment, not to relieve insurers, like Cincinnati, from their contractual obligations.

Cincinnati does not deserve to benefit from fortuity that the government saw fit to provide Plaintiff and other small businesses who were so hard hit by the COVID-19 global pandemic with some relief – the very type of relief that Cincinnati contracted to provide Plaintiff but to this day still refuses to provide. Moreover, Plaintiff deserves the additional compensation. Although it did not contract with the government for the collateral source benefits, in this situation, it did contract with Cincinnati to provide business interruption coverage, which the insurer unreasonably refuses to provide.

In a sense, the second scenario in which the collateral source rule may be invoked -- when the

5

plaintiff may be said to have contracted for the prospect of a double recovery -- is also applicable here. Plaintiff may be said to have contracted with Cincinnati to provide the prospect of a double recovery by paying it premiums for business interruption coverage. Although some of those costs, again, by fortuity, were provided by the government, that does not relieve Cincinnati of its obligation to pay the benefits that Cincinnati contractually promised to provide Plaintiff and for which Plaintiff paid. If Cincinnati's liability under its insurance policy were to be reduced by Plaintiff's PPP Loans and other government-provided loans and grants, Cincinnati would receive a windfall from its receipt of premiums without having to pay the benefits it promised for those premiums. Between the two, if anyone were to receive a windfall, it should be Plaintiff, which suffered losses beyond its control, not Cincinnati which is breaching its contract.[1]

This is consistent with Kansas law, in which the State retains "'the common law principle that collateral source payments should not reduce a damage award if they resulted from the victim's own foresight – both insurance purchased by the victim and also government benefits—presumably because the victim has paid for those benefits through taxes.'" *Martinez,* 233 P.3d at 223 (quoting *Stanley v. Walker,* 906 N.E.2d 852, 855 (Ind. 2009)). *See also Gaworski v. ITT Commercial Fin. Corp.,* 17 F.3d 1104 (8th Cir. 1994). In that case, the court held that the plaintiff's backpay award in an ADEA claim should not be reduced by unemployment benefits. It reasoned that "[b]y virtue of state aid provided 'to carry out a policy of social betterment for the benefit of the entire state' and not 'to discharge any liability or obligation' of the employer, . . . the employer winds up paying less to the employee than it would have had it not illegally terminated him." If an employer receives such a windfall, it would make it "less costly for the employer to wrongfully terminate a protected employee," thus "diluting the

---

[1] If there are any third-party subrogation claims, those are the government's claims to assert, and it is Plaintiff's obligation to respond to any such request. By denying the contracted-for coverage based on the government aid, however, the Court would be precluding the government from even asserting such a claim. Notably, the PPP Loans were not contingent on the absence of an insurance claim nor did the forgiveness letters state that the government expected the borrower to inform it of any insurance proceeds recovered. *See* Doc. 100, Ex. 2, Nelson Dep. Exs. 13, 15.

6

prophylactic purposes of a backpay award." *Id.* at 1113. Similarly, the government aid here was provided to help small businesses such as Plaintiff to keep people employed during the pandemic, not to relieve Cincinnati of its contractual obligation to pay business interruption coverage to Plaintiff. If Cincinnati were allowed to introduce evidence of Plaintiff's PPP Loans and other government-provided loans and grants to reduce its contractual liability, it would make it less costly for insurers to breach their contracts.

Additionally, evidence, questions, testimony, or argument of Plaintiff's PPP Loans and other government-provided loans and grants should be excluded because it is irrelevant and immaterial to any issue in this case. As shown above, such evidence is not admissible on the issue of damages under the collateral source rule. And there is no other issue to which evidence of PPP Loans and other government aid would be relevant. Further, specifically in regard to the EIDL Loans, which are not eligible for forgiveness, evidence of such loans is especially irrelevant to any issue in this case and would serve only to confuse the jury.

Additionally, such evidence should be excluded under Federal Rule of Evidence 403 which provides that even relevant evidence may be excluded if its probative value is substantially outweighed by "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. It would be misleading and confusing to allow the jury to hear evidence of Plaintiff's PPP Loans and other government benefits Plaintiff received or applied for, especially when the collateral source rule prohibits the jury from considering such evidence in determining Plaintiff's damages and such evidence has no other probative value.

Further, separately, evidence of Plaintiff's grants and loans is irrelevant to even the question of Plaintiff's damages under the Policy, as Plaintiff was not required to show a physical loss or damage in order to be eligible for any of the government-provided loans or grants that it received or for which it applied. Consequently, coverage under the Policy and the loans are not mutually exclusive. Moreover,

7

for the first round of Plaintiff's PPP Loans, the amount received was not tied to the amount of Plaintiff's lost income. Instead, in order to be eligible to receive a first-round PPP Loan, the application required the applicant to certify, in pertinent part, that "[c]urrent *economic uncertainty* makes this loan request necessary to support the ongoing operations of the Applicant," and the Applicant must use the funds to "retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments . . . ." *See* Paycheck Protection Program Borrower Application Form Revised June 12, 2020, p. 2, attached hereto as **Ex. 1** (emphasis added). The purpose of the loans was to prevent a collapse of the economy. *See* Doc. 108 at 26. Thus, evidence regarding Plaintiff's application for and/or receipt of any government loans and grants is wholly irrelevant to the Policy damages.

Likewise, although the second round of PPP Loans required showing a 25% reduction in gross receipts, it did not require showing a reduction in *net* business income, which are the damages provided for under the Policy that Plaintiff purchased from Cincinnati. Plaintiff, thus, could have been entitled to both the loans and certain lost income if Cincinnati had timely provided coverage. Furthermore, without the loans, Plaintiff might have taken other measures to reduce costs that necessarily reduced net income, such as laying off employees, but the PPP Loans were intended to discourage that practice to promote employment.

For all of these reasons, the Court should preclude Cincinnati from introducing any evidence, questions, testimony, or argument about the federal, state, and local loans and grants Plaintiff applied for, received, used, and/or was forgiven under Rules 402 and 403.

WHEREFORE, Plaintiff respectfully requests that the Court grant this Motion *In Limine* to preclude evidence, questions, testimony, or argument relating to Plaintiff's application for, receipt of, and/or use of other government loans and grants, as well as the forgiveness of any such loans; to instruct Defendant and Defendant's counsel to advise all witnesses accordingly; and for such other and further relief as the Court deems just and proper.

Respectfully submitted by:

**LANGDON AND EMISON LLC**

*/s/ Patricia L. Campbell*
Brett A. Emison, MO #52072
J. Kent Emison, MO #29721
Patricia L. Campbell, MO #60917
911 Main Street
Lexington, Missouri 64067
Telephone:   660-259-6175
Facsimile:    660-259-4571
Email:  brett@lelaw.com
Email:  kent@lelaw.com
Email:  tricia@lelaw.com


**STUEVE SIEGEL HANSON LLP**

Patrick J. Stueve, MO #13847
Bradley T. Wilders, MO #78301
Curtis Shank, MO #66221
Abby E. McClellan, MO #66069
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:    816-714-7100
Facsimile:     816-714-7101
Email: stueve@stuevesiegel.com
Email: wilders@stuevesiegel.com
Email: shank@stuevesiegel.com
Email: mcclellan@stuevesiegel.com

**MILLER SCHIRGER LLC**

John J. Schirger, MO # 60583
Matthew W. Lytle, MO #59145
Joseph M. Feierabend, MO #62563
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Telephone:    816-561-6500
Facsimile:     816-561-6501
Email: jschirger@millerschirger.com
Email: mlytle@millerschirger.com
Email: jfeierabend@millerschirger.com

9

SHAFFER LOMBARDO SHURIN, P.C.

Richard F. Lombardo, MO #29748
2001 Wyandotte Street
Kansas City, Missouri 64108
Telephone:    816-931-0500
Facsimile:    816-931-5775
Email: rlombardo@sls-law.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that September 13, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to:

Michael L. Brown
Kelvin J. Fisher
Wallace Saunders, P.C.
10111 West 87th Street
Overland Park, KS 66212
mbrown@wallacesaunders.com
kfisher@wallacesaunders.com

Daniel G. Litchfield (admitted *pro hac vice*)
Litchfield Cavo LLP
303 West Madison, Suite 300
Chicago, IL 60606
litchfield@litchfieldcavo.com

Ericka Hammett (admitted *pro hac vice*)
Litchfield Cavo LLP
250 E. Wisconsin Ave., Suite 800
Milwaukee, WI 53202
hammett@litchfieldcavo.com
*Attorneys for Defendant*

/s/ *Patricia L. Campbell*
Patricia L. Campbell