IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| K.C. HOPPS, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 4:20-CV-437 |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CINCINNATI INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTIONS *IN LIMINE* NO. 2 AND 3
WITH SUGGESTIONS IN SUPPORT**

COMES NOW Plaintiff, by and through its attorneys of record, and hereby moves this Court for an order excluding any and all evidence, references to evidence, testimony, and argument concerning Plaintiff's Motions *In Limine* below and directing that no party or witness be questioned, and no reference be made by counsel or witnesses in the presence of the jury as to the following:

- that the Policy requires structural alteration to qualify as physical damage or that the presence of COVID-19, as well as costs incurred to remediate and return the premises to their pre-loss conditions, is not physical loss or physical damage under the Policy; and

- Plaintiff's lawsuit styled *State ex rel. O'Dowd's, LLC, d/b/a O'Dowd's Gastrobar v. Quinton Lucas, in his official capacity as Mayor of Kansas City, Missouri*, Case No. 2116 -CV01880 (the "KCMO Lawsuit").

Plaintiff further moves the Court to instruct Defendant and Defendant's counsel to advise all witnesses accordingly.

Evidence and argument that the Policy requires structural alteration to qualify as physical damage and that COVID-19 is not physical damage have no tendency to prove or disprove disputed facts relevant to the determination of this action and are contrary to the law in this regard. Accordingly,

1

such assertions cannot lead to proper evidentiary inferences, i.e. a deduction of fact logically and reasonably drawn from another established fact. It will consume unnecessary time and create an extreme danger of confusing and misleading the jury about what is physical loss or damage for purposes of establishing coverage under the Policy. So, too, the allegations contained in the KCMO Lawsuit are not only inadmissible hearsay, but also, they and the fact of the Lawsuit are irrelevant to the issues in this action and create an extreme danger of distracting and inflaming the passions of the jury by injecting highly divisive political views about the necessity of COVID-19 safety precautions. For these reasons, as explained more fully below, such evidence should be excluded from the trial of this matter.

## ARGUMENT AND AUTHORITIES

The Court has the inherent authority to control trial proceedings, including ruling on motions *in limine*. *See e.g., Luce v. United States*, 469 U.S. 38, 40, n.2 and 4 (1984). "Typically, a motion in limine is used to determine the admissibility of evidence at trial . . . ." *Aerotronics, Inc. v. Pneumo Abex Corp.*, 62 F.3d 1053, 1066 (8th Cir. 1995). This Court encourages parties to file motions *in limine* relating to key evidentiary issues, in order to ensure efficient use of trial time. Doc. 39.

Federal Rule of Evidence Rule 402 establishes that only relevant evidence is admissible and specifically prohibits admission of irrelevant evidence. Rule 401 states that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action. *Spring/United Mgmt. Co. v. Medelsohn*, 552 U.S. 379, 388 (2008). Further, the Advisory Committee has stated that "relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." Fed. R. Evid. 401. Irrelevant evidence is properly excluded because its admission tends to draw the jury's attention away from the issues it has been called upon to resolve. *State v. Walden*, 490 S.W.2d 391, 393 (Mo. Ct. App. 1973). The burden is on the proponent of the evidence to prove its relevance. *Nolte v. Ford Motor Co.,* 458 S.W.3d 368, 382 (Mo. Ct. App. 2014).

In addition, the Court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of . . . unfair prejudice confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence is considered prejudicial if it is confusing or misleading, lending more to the injection of collateral issues than to material facts. *See Still v. Ahnemann*, 984 S.W.2d 568, 574-75 (Mo. Ct. App. 1999). Further, evidence may be excluded when there is significant danger that the jury might base its decision on emotion, or when non-party events would distract reasonable jurors from the real issues in the case. *Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684, 690 (9th Cir. 2001); *see also Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.,* 406 F.3d 1052, 1059 (8th Cir. 2005) (upholding district court's decision excluding evidence "that would serve only to distract the jury from the key issues."); *U.S. v. Allerheiligen,* No. 97-40090-01-DES, 1998 WL 918841, *3 (D. Kan. Nov. 19, 1998) (excluding evidence that is "collateral to the issues of this trial and would only serve to confuse and distract the jury").

2. **Evidence Relating to Plaintiff's Lawsuit Against KCMO ("KCMO Lawsuit")**

Plaintiff anticipates that Cincinnati will seek to introduce evidence that Plaintiff sought a writ of prohibition against Mayor Quinton Lucas, in his official capacity, arising from his issuance of two executive orders placing such strict restrictions on restaurants due to the COVID-19 pandemic that it caused Plaintiff to close its restaurant. The lawsuit is styled *State ex rel. O'Dowd's, LLC, d/b/a O'Dowd's Gastrobar v. Quinton Lucas, in his official capacity as Mayor of Kansas City, Missouri,* Case No. 2116-CV01880 (the "KCMO Lawsuit"). In particular, Cincinnati cited the following allegations in its Statement of Facts in support of its motion for summary judgment (Doc. 98).

> i. "Relator [O'Dowd's] is well aware that the Covid-19 pandemic is a global pandemic which has ***caused*** death and pain to millions and will continue to do so and has affected many lives in the Greater Kansas City Metropolitan Area, not only from a health perspective of loss of lives and permanent ***physical*** injuries ***to citizens***, but has also created a vast ***economic loss*** of great proportions . . . ***Relator has been forced to close its business due to Respondent's latest orders, because its business cannot***

3

*generate the revenue needed for it to remain open and operating and provide salaries for its employees.*" (Preliminary Statement, p. 2) (emphasis added).

      ii.    "Relator is empathetic to the Respondent in his dilemma in balancing his responsibility *of protecting the health and welfare of Kansas City, Missouri's citizens* and his responsibility to the economic interests of the City and its private businesses." (*Id*. at p. 3) (emphasis added).

      iii.    "*Respondent is not [in] possession of any scientific data to support the Respondent's forced closure of business at 10:00 in Kansas City, Missouri, when Johnson County, Kansas permits closure of bars and restaurants at 11:00 p.m., unless another virus exists in Kansas that differs from the virus in Kansas City, Missouri.* Respondent's order has [led] the citizens of Kansas City, Missouri to travel across the state line into Kansas and Cass County, thus causing the patrons of Relator, and other similarly situated businesses, to lose even more revenue." (*Id*. at p. 4) (emphasis added).

      iv.    "Relator is asking this Court to prohibit Respondent from arbitrarily enforcing his Eleventh Order of November 16, 2020 and subsequently his Twelfth Order of January 13, 2021, unequally, *without any health data from Respondent to indicate Relator's business, or any other bars and restaurants existing within the City of Kansas City, Missouri, has infected members of the community at large, while permitting casinos, liquor stores, and entities such as full service convenience stores exemption from Respondent's orders.* Nor has the Respondent been in possession of any evidence that Relator is responsible for any individual who entered its business has been infected with Covid-19, and as a direct result had to enter an ICU in any hospital in Kansas City." (*Id*.) (emphasis added).

      v.    "[E]ven if Relator should be successful in this Writ of Prohibition . . . . [i]t is more likely the economy will remain in tatters; those already sickened by Covid-19 will continue to suffer irreparable harm, physically, economically, and emotionally; *and Relator and its employees will continue to suffer economically*." (*Id*. at ¶ 26) (emphasis added).

      ii.    "As a result of the lack of authority by Respondent [to issue the Eleventh and Twelfth Orders], Relator will continue to suffer severe loss of revenue by having to close its business, possibly for good." (*Id.* at ¶ 29).

Doc. 98-1 at ¶ (y).

Evidence that Plaintiff filed the KCMO Lawsuit, and the allegations therein, should be excluded: (1) under Rule 801(c) and 802 on the grounds that the allegations are inadmissible hearsay; (2) under Rule 402 on the grounds that such evidence irrelevant, and (3) even if relevant, under Rule 403 on the grounds that it would confuse the issues, mislead the jury, and waste time.

First, the allegations of the KCMO Lawsuit are out-of-court statements offered to prove the truth of the matter asserted, and thus should be excluded as inadmissible hearsay under Federal Rule of Evidence 802. *See Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.,* No. 04-4213 JRT/AJB, 2011 WL 382964, *2 (D. Minn. Feb. 3, 2011) ("Allegations in prior lawsuits are clearly hearsay, and should be excluded if offered to prove the truth of the matter asserted.").

Moreover, the KCMO Lawsuit and its allegations against Mayor Lucas are wholly irrelevant to the key issues in this case: (1) the presence or non-presence of the virus at the subject property or (2) whether coverage exists under the Policy for the business interruption losses Plaintiff has asserted. The allegations of the KCMO Lawsuit relate to an entirely separate issue: whether the Mayor had exceeded his authority, and violated the Due Process clauses of the Missouri and Federal Constitutions, in entering executive orders severely restricting operations of restaurants while other businesses, such as casinos, were allowed to operate without similar restrictions. *See* Petition for Writ of Prohibition, attached hereto as **Ex. 1**.

The allegations of Plaintiff's KCMO Lawsuit are not inconsistent with the allegations in this case. *See Johnstown Feed & Seed, Inc. v. Cont'l W. Ins. Co.,* No. 07-CV-00290-TDL-CBS, 2010 WL 582182, at *1 (D. Colo. Feb. 17, 2010) (excluding allegations in prior pleadings as not inconsistent with current allegations, not probative of the questions at issue, and would likely confuse the issues and mislead the jury). The language that Cincinnati highlighted in its Statement of Facts alleges that the Mayor did not put forth data to support the Mayor's order treating restaurants in Kansas City, Missouri differently than restaurants in Kansas or for treating restaurants in Kansas City, Missouri differently than other public spaces such as casinos. Whether the *Mayor of Kansas City* met *his* burden in establishing the necessary requirements to issue the orders at issue in the KCMO Lawsuit is an entirely different question than that being addressed in this lawsuit. Moreover, Plaintiff's Petition for Writ was *denied*, meaning the Circuit Court of Jackson County, Missouri considered Plaintiff's arguments and rejected

5

them, finding that the Mayor of Kansas City was acting within his authority to prevent the spread of infectious diseases at Plaintiff's locations. *See* Order denying Writ of Prohibition, **Ex. 2**.

Regardless, as found in *Johnstown Feed,* admission of the allegations in Plaintiff's KCMO Lawsuit is highly prejudicial, as it is likely confuse the issues and mislead the jury and would improperly paint Plaintiff as litigious, inject issues that would distract the jury from the key questions at issue here, such as highly divisive political views on the necessity of COVID precautions, and waste the Court's, jury's, and parties' time on matters that are not probative of any issue in this lawsuit. *See id.* ("Even if the court were to find the prior complaints relevant, it would deny admission of these exhibits based on Fed.R.Evid. 403, as they would be more likely to confuse the issues and mislead the jury."). This unfair prejudice would significantly outweigh any limited probative value this evidence may have, especially given that the KCMO Lawsuit was filed prior to Plaintiff's designation of experts in this case which establish the presence of COVID-19 on Plaintiff's premises and that Plaintiff's Petition for Writ was denied. *See* **Ex. 2**.

For all of these reasons, the Court should preclude Cincinnati from introducing any evidence, questions, testimony, or argument about the KCMO Lawsuit and allegations therein under Rules 402 and 403. Because pleadings filed by the parties are generally inadmissible, Plaintiff submits that if a Defendant seeks to admit portions of a pleading in evidence, or intends to refer to a pleading, said Defendant should be required to approach the bench, out of the hearing of the jury, and demonstrate why the pleading is admissible.

> **3. Evidence or argument that the presence of COVID-19 on the premises is not physical loss or damage under the Policy and/or that structural alteration to the property is required for coverage under the Policy.**

Plaintiff anticipates that Cincinnati will argue and attempt to introduce evidence that the presence of COVID-19 on Plaintiff's premises is not physical loss or damage under the Policy and that structural alteration is required, and thus Plaintiff's losses are not covered. These arguments are

6

contrary to the facts of this loss and Missouri and Kansas law. As explained more fully in Plaintiff's response to Defendant's motion for summary judgment, structural alteration is not required under Missouri law to establish physical loss or damage. *See Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 801 (W.D. Mo. 2020); *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 488 F. Supp. 3d 867, 874 (W.D. Mo. 2020); *NeCo, Inc. v. Owners Ins. Co.*, No. 20-CV-04211-SRB, 2021 WL 601501, at *4 (W.D. Mo. Feb. 16, 2021); *K.C. Hopps, Ltd v. The Cincinnati Ins. Co., Inc*, No.20-CV-00437-SRB, 2020 WL 6483108, at *1 (W.D. Mo. Aug. 12, 2020). *See also, e.g.*, *Scott Craven DDS PC v. Cameron Mut. Ins. Co.*, No. 20CY-CV06381, 2021 WL 1115247, at *2 (Mo. Cir. Mar. 9, 2021) (holding that "the inability to use the property due to a physical condition – here, the actual and/or threatened presence of COVID-19 – is physical loss covered under the Policy."). Physical contamination – here the presence of COVID-19 on the premises – is sufficient under Missouri law to state a viable claim for coverage. *See Cincinnati Ins. Co. v. German St. Vincent Orphan Ass'n, Inc.*, 54 S.W.3d 661, 665-68 (Mo. Ct. App. 2001).

Neither the underlying legal principles, nor the conclusions drawn from them in this case, justify reaching a different conclusion under Kansas law. Here, Kansas applies the same legal principles as Missouri, including the key principles cited above that:

- the Policy must be construed as it would be understood by an ordinary person purchasing insurance;[1]

- technical definitions should be eschewed in favor of ordinary dictionary definitions;[2]

- coverage provisions should not be so narrowly construed that they render exclusions meaningless;[3] and,

---

[1] *See Wheeler v. Employer's Mut. Cas. Co.,* 505 P.2d 768, 772 (Kan. 1973) ("While we have a duty to consider the insurance contract as a whole, our duty is to ascertain what the insured, as a reasonable person, understood the policy to mean, not what the insurer actually intended.").
[2] *Id.* ("A contract of insurance should not be construed through the magnifying eye of the technical lawyer but rather from the standpoint of what an ordinary man would believe it to mean.").
[3] *See Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 104 P.3d 997, 1003 (Kan. Ct. App. 2005), *aff'd*, 281 Kan. 844, 137

7

- conflicting judicial interpretations of the same or similar terms is proof an ambiguity.[4]

Thus, the interpretive principles that lead to the result under Missouri law are exactly the same under an application of Kansas law. Accordingly, courts applying Missouri and Kansas law recognize that a direct physical loss includes intrusion or contamination of a property that renders the property uninhabitable or unusable for its intended purpose.

The Policy here—read as a whole—also supports that *contamination* by a substance invisible to the naked eye, but which makes the property unsafe and results in the loss of use for its full intended purpose, is covered. The Court must not read the grant of coverage so narrowly it renders the exclusions meaningless. For example, the Policy contains exclusions for other non-tangible losses similar to contamination, including for losses caused by: "[n]uclear reaction or radiation, or radioactive contamination," "[s]moke, vapor or gas from agricultural smudging or industrial operations," and the "[p]resence, growth, proliferation, spread or any activity of … bacteria." Doc. 99-1 at CIC005117-18. While Cincinnati argues a virus *cannot* cause physical loss because it does not impart a tangible, structural alteration to the property, *see, e.g.*, Doc. 98 at 8, that does not square with a list of exclusions that includes other contaminates like smoke, vapors, gas, radiation or (most similar to virus) bacteria which also cannot cause tangible, structural alteration. *See, e.g.*, *Serendipitous, LLC/Melt v. Cincinnati Ins. Co.*, No. 2:20-CV-00873-MHH, 2021 WL 1816960, at *5 (N.D. Ala. May 6, 2021) ("The policy language indicates that the insurer understands that an insured may suffer physical loss without physical alteration of property because the policy excludes from coverage some expenses incurred because of invisible substances like vapor and fumes.").

Thus, there being no legal basis to require Plaintiff to prove demonstrable structural damage or alteration to Plaintiff's property to establish physical loss or damage, evidence or argument in this regard is inconsistent with the law, does not make any fact of consequence more or less probable, is

---

P.3d 486 (2006).
[4] *See Am. Fam. Mut. Ins. Co. v. Wilkins*, 179 P.3d 1104, 1110 (Kan. 2008).

prejudicial to Plaintiff, and would only serve to confuse the jury. Regardless, matters of policy interpretation will be determined by the Court. *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 488 F. Supp.3d 867, 872 (W.D. Mo. 2020).

Based on the foregoing, Plaintiff respectfully requests that the Court preclude questions, testimony, or argument that the presence of COVID-19 on Plaintiff's premises and costs to remediate its presence do not constitute physical loss or damage and/or that structural alteration is required for coverage under the Policy.

WHEREFORE, Plaintiff respectfully requests that Defendant be precluded from offering statements, comments, evidence, questions, testimony, or argument relating to these Motions *In Limine*; to instruct Defendant and Defendant's counsel to advise all witnesses accordingly; and for such other and further relief as the Court deems just and proper.

Respectfully submitted by:

**LANGDON AND EMISON LLC**

<u>/s/ Patricia L. Campbell</u>
Brett A. Emison, MO #52072
J. Kent Emison, MO #29721
Patricia L. Campbell, MO #60917
911 Main Street
Lexington, Missouri 64067
Telephone: 660-259-6175
Facsimile: 660-259-4571
Email: brett@lelaw.com
Email: kent@lelaw.com
Email: tricia@lelaw.com

9

**STUEVE SIEGEL HANSON LLP**

Patrick J. Stueve, MO #13847
Bradley T. Wilders, MO #78301
Curtis Shank, MO #66221
Abby E. McClellan, MO #66069
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:     816-714-7100
Facsimile:     816-714-7101
Email: stueve@stuevesiegel.com
Email: wilders@stuevesiegel.com
Email: shank@stuevesiegel.com
Email: mcclellan@stuevesiegel.com

**MILLER SCHIRGER LLC**

John J. Schirger, MO # 60583
Matthew W. Lytle, MO #59145
Joseph M. Feierabend, MO #62563
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Telephone:     816-561-6500
Facsimile:     816-561-6501
Email: jschirger@millerschirger.com
Email: mlytle@millerschirger.com
Email: jfeierabend@millerschirger.com


**SHAFFER LOMBARDO SHURIN, P.C.**

Richard F. Lombardo, MO #29748
2001 Wyandotte Street
Kansas City, Missouri 64108
Telephone:     816-931-0500
Facsimile:     816-931-5775
Email: rlombardo@sls-law.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 13, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to:

Michael L. Brown
Kelvin J. Fisher
Wallace Saunders, P.C.
10111 West 87th Street
Overland Park, KS 66212
mbrown@wallacesaunders.com
kfisher@wallacesaunders.com

Daniel G. Litchfield (admitted *pro hac vice*)
Litchfield Cavo LLP
303 West Madison, Suite 300
Chicago, IL 60606
litchfield@litchfieldcavo.com


Ericka Hammett (admitted *pro hac vice*)
Litchfield Cavo LLP
250 E. Wisconsin Ave., Suite 800
Milwaukee, WI 53202
hammett@litchfieldcavo.com
*Attorneys for Defendant*

                                                  /s/ *Patricia L. Campbell*
                                                  Patricia L. Campbell