# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

**K.C. HOPPS, LTD.,**

        Plaintiffs,

v.

**THE CINCINNATI INSURANCE COMPANY,**

        Defendants.

Case No.: 4:20-cv-00437-SRB

# TABLE OF CONTENTS

INTRODUCTION……………………………………………………………..……...1

I.    **The Jury Should be Given the Definition of "Direct Physical Loss or Damage" Prior to Hearing Evidence** ................................................................................................**2**

II.    **The Court Should Disallow Reference to or Reliance Upon the Three Exclusions Decided on Summary Judgment at Trial** ................................................................**2**

III.    **The Pollutants Exclusion Does Not Apply Here………... ...............................................** ..**2**

    A.    **Courts Have Held that Pollution Exclusions Not Including the Term "Virus" Do Not Preclude Coverage for COVID-19 Losses…………………………..………..3**

    B.    **Historically, Courts Have Declined to Apply Pollution and Contamination Exclusions to Losses Not Resulting from Familiar Instances of Pollution……..……………………………………………………………........7**

    C.    **Decisions Applying Missouri and Kansas Law Precluding Coverage Under Contamination or Pollution Exclusions Do Not Require Application of the Exclusions Here……………………………………..…………………………..…10**

    D.    **Decisions Precluding Coverage for COVID-19 Losses Under Contamination or Pollution Exclusions Also Do Not Require Application of the Exclusion Here…………………………………………………………………..…12**

IV.    **Rulings on Motions *in Limine* and for Summary Judgment…………………………..15**

**CONCLUSION………………………………………………………………...…..15**

i

# TABLE OF AUTHORITIES

## Court Rules

Fed. R. of Evid. 401…………….. …………………………………………………………1, 2, 15

Fed. R. of Evid. 403 ……………………………………..…………………………………1, 2, 15

## Cases

*Aetna Cas. & Sur. Co. v. Haas,*
    442 S.W.2d 316 (Mo. 1968) …………………………………………………………...…3

*American Nat'l Prop. & Cas. Co. v. Wyatt,*
    400 S.W.3d 417 (Mo. App. 2013)………………………………...3, 4, 5, 5 n.2, 7, 8, 9, 14 n. 5

*Boulevard Inv. Co. v. Capitol Indem. Corp.,*
    27 S.W.3d 856 (Mo. App. 2000)………………………………………………………….10-11

*Brown's Gym, Inc. v. Cincinnati Ins. Co.,*
    No. 20 CV 3113, 2021 WL 3036545 (Pa. Ct. Com. Pl. Lackawanna Cty, July 13, 2021)….6, 7

*Brumley v. Lee,*
    963 P.2d 1224 (Kan. 1998)……………………………………………………………...…6

*Burns v. Smith*,
    303 S.W.3d 505 (Mo. banc 2010)……………………………………………….……..2, 3, 7

*Buschell v. Continental W. Ins. Co.,*
    Case No. 07-4168-CV-C-NKL, 2008 WL 11337947 (W.D. Mo. July 22, 2008) ..................…6

*Cano v. Travelers Ins. Co.,*
    656 S.W.2d 266 (Mo. banc 1983)…………………………………………………………...…6

*Circus Circus, LV, VP v. AIG Speciality, Ins. Co.,*
    525 F.Supp.3d 1269 (D. Nev. 2021), *appeal filed*, 9th Cir., Mar. 2, 2021……………......12-13

*Gerdes v. Am. Family Mut. Ins. Co.,*
    713 F.Supp.29 1290 (2010)……………………………………………......3, 5 n.2, 8-9, 11 n.4

*Glenn R. Edwards, Inc. v. Travelers Cos.,*
    Case No. 4:20-cv-008877-MTS, 2021 WL 3525168 (E.D. Mo. Aug. 11, 2021), *appeal filed*,
    8th Cir., Sept. 10, 2021. …………………………………………………………………...7-8

*Grinnell Mutual Reinsurance Corp. v. Rambo,*
    2014 WL 11394879 (W.D. Mo. Sept. 30, 2014)……………………………………………..10

*JGB Vegas Retail Lessee, LLC v. Starr Surplus Lines Ins. Co.*,
    No. A-20-816628-B, 2020 WL 7190023 (D. Nev. Nov. 30, 2020).......................................13

*Johnson v. Clarendon Nat'l Ins. Co.*,
    No. G039659, 2009 WL 252619 (Cal. Ct. App. Feb. 4, 2009)..................................................9

*London Bridge Resort LLC v. Ill. Union Ins. Co.*,
    No. CV-20-08109-PCT-GMS, 2021 WL 7123024 (D. Ariz. Dec. 4, 2020)……………...13-14

*Macheca Transp. V. Philadelphia Indemn. Ins. Co.*,
    649 F.3d 661 (8th Cir. 2011) ...............................................................................................14

*Manner v. Schiermeier*,
    393 S.W.3d 58 (Mo. banc 2013)…………………………………………...…………………..3

*Marquis v. State Farm Fire & Cas. Co.*,
    961 P.2d 1213 (Kan. 1998)……………………………………………………...3, 14

*Mellin v. Northern Sec. Ins. Co.*,
    115 A.3d 799 (N.H. 2015)………………………………..….…..…..7, 8, 9 n.3, 14

*Miller v. Westport Ins. Corp.*,
    200 P.3d 419 (Kan. 2009)………………………………….……………………………….3

*Monarch Casino & Resort, Inc. v. Affiliated FM Ins. Co.*,
    No. 20-CV-1470, 2021 WL 4260785 (D. Colo. Sept. 17, 2021) …………………………....13

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Re-Ins. Co.*,
    351 F. Supp. 2d 201 (S.D.N.Y. 2005)…………………………………………………...5

*Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co.*,
    13 A.D.3d 599 (M.Y.S.2d Dec. 27, 2004)………………………………...……….5, 7, 8, 9 n.3

*Seifert v. IMT Ins. Co.*,
    495 F. Supp. 3d 747 (D. Minn. 2020)…………………………………………………6-7

*SWB Yankees, LLC v. CNA Fin. Corp.*,
    No. 20CV2155, 2021 WL 3468995 (Pa. Ct. Com. Pl. Lackawanna Cty, Aug. 4, 2021)...6, 7, 9

*United Fire & Cas. Co. v. Titan Contractor Serv., Inc.*,
    751 F.3d 880 (8th Cir. 2014)………………………………………...………………………10

*Urogynecology Specialists of Fla. LLC v. Sentinel Ins. Co.*,
    489 F. Supp. 34 1297 (M.D. Fla. 2020) …………………………………………………..13

*Vargas v. Ins. Co. of N. Am.*,
    651 F.2d 838 (2d Cir. 1981), *aff'd*, 505 F.2d 989 (2d Cir. 1974)……………………………..8

iii

*Westchester Fire Ins. Co. v. City of Pittsburg, Kan.,*
    794 F. Supp. 353 (D. Kan. 1992), *aff'd sub nom. Pennsylvania Nat. Mut. Cas. Ins. Co. v.*
    *City of Pittsburg, Kan.,* 987 F.29 1516 (10th Cir. 1993) ………………..……4 n.1, 5-6, 7

*Williams v. Employers Mut. Cas. Co.,*
    845 F.3d 891 (8th Cir. 2017)…………………………………………………………11, 11 n.4

*Zebra Technologies Corp. v. Factory Mut. Ins. Co.,*
    No. 20-cv-05147m 2021 WL 4459532 (N.D. Ill. Sept. 29, 2021)………………………… 12

*Zurich Am. Ins. Co. v. Ins. Co. of N.A.,*
    392 F.Supp.3d (E.D. Mo. 2019)……………………………………………………….10, 11

iv

## PLAINTIFF'S TRIAL BRIEF

Plaintiff respectfully submits the following trial brief. The trial brief discusses several main issues. **First**, Plaintiff requests that the Court instruct the jury on the elements of Plaintiff's cause of action—including the definition of "direct physical loss or damage" applied by the Court—prior to opening statements. **Second**, Plaintiff requests that the Court instruct the jury that the three Policy exclusions that the Court found on summary judgment were inapplicable here should be disregarded by the jury. **Third**, this brief provides a legal analysis of Cincinnati's remaining exclusion, the Pollutants exclusion, explaining why it does not exclude coronavirus or COVID-19-related losses. Plaintiff provides this legal analysis because it intends to object to any argument or evidence relating to this policy exclusion; as the exclusion's language makes clear, the Pollutants exclusion is limited to losses arising from traditional industrial- or environmental-like pollution. Had Cincinnati intended to exclude coverage for losses resulting from the natural spread of a deadly communicable virus, it could have included clear language excluding losses resulting from viruses, communicable diseases, or pandemics. At a minimum, whether the exclusion applies here is ambiguous and therefore must be construed in Plaintiff's favor and against Cincinnati. Cincinnati cannot meet its burden to demonstrate that this exclusion should be applied. Consequently, this Court should reject as a matter of law any argument set forth by Cincannati that the Pollutants exclusion should apply to bar coverage for Plaintiff's losses here. And any reference to the exclusion would be irrelevant and unduly prejudicial pursuant to Federal Rules of Evidence 401 and 403. **Finally**, Plaintiff provides for the convenience of the Court and the parties a summary of the issues considered and rulings by this Court regarding the parties' motions *in limine* and Motions for Summary Judgment.

1

## I. The Jury Should be Given the Definition of "Direct Physical Loss or Damage" Prior to Hearing Evidence.

The Court has definitively construed the Policy and granted Plaintiff's motion *in limine* to preclude Cincinnati from presenting argument or evidence "that the presence of COVID-19 on the premises is not physical loss or damage under the Policy and/or that structural alteration to the property is required for coverage under the Policy[.]" Doc. 165 at 1; Doc. 155 at 11. Because the Policy language is likely to be discussed during the testimony of witnesses in this case, it is important that the jury understand, before they hear the evidence, what the Court has decided the language means. Plaintiff, therefore, requests the Court provide its interpretation of the phrase to the jury at the outset of the trial.

## II. The Court Should Disallow Reference to or Reliance Upon the Three Exclusions Decided on Summary Judgment at Trial.

At summary judgment, the Court held that the following Policy exclusions were inapplicable to this case: "Ordinance or Law," "Delay or Loss of Use" and "Acts or Decisions." Doc. 155 at 22-23. Consequently, Plaintiff will object to any reference to these exclusions under Federal Rule of Evidence 401 and 403 because they are irrelevant to the issues in this case and would confuse the jury. Plaintiff will likely seek a directed verdict on these affirmative defenses at the close of evidence. Furthermore, Plaintiff will ask the Court to instruct the jury not to consider these exclusions during their deliberations, given that the Policy will likely be admitted into evidence.

## III. The Pollutants Exclusion Does Not Apply Here.

Insurance policy exclusions such as the Pollutants exclusion at issue must be narrowly and strictly construed against the insurance company. *Burns v. Smith*, 303 S.W.3d 505, 510 (Mo. banc

2010); *see also Marquis v. State Farm Fire & Cas. Co.*, 961 P.2d 1213, 1220 (Kan. 1998). The insurance company also bears the burden of proving that the exclusion clearly and unambiguously applies. *Manner v. Schiermeier*, 393 S.W.3d 58, 62 (Mo. banc 2013); *Miller v. Westport Ins. Corp.*, 200 P.3d 419, 426 (Kan. 2009). Any "ambiguities and uncertainties arising out of the language used in the policy must be resolved in the [insured's] favor." *Aetna Cas. & Sur. Co. v. Haas*, 422 S.W.2d 316, 321 (Mo. 1968) (citations omitted); *Marquis*, 961 P.2d at 1220. The doctrine of reasonable expectations, which looks at the reasonable expectations of the insured, must also be applied. *American Nat'l Prop. & Cas. Co. v. Wyatt*, 400 S.W.3d 417, 426 (Mo. App. 2013); *accord Gerdes v. Am. Family Mut. Ins. Co.*, 713 F.Supp.2d 1290, 1296 (2010) (applying Kansas law) ("The test to be applied in determining the intention of the parties to an insurance policy is not what the insurer intended the policy to mean, but what a reasonable person in the position of the insured would understand it to mean." (citation omitted)). The interpretation of the meaning of an insurance policy is a question of law. *Burns*, 303 S.W.3d at 509; *Marquis*, 961 P.2d at 1219.

### A.  Courts Have Held that Pollution Exclusions Not Including the Term "Virus" Do Not Preclude Coverage For COVID-19 Losses

A review of the plain terms of the Pollutants exclusion in the context of the Policy at issue here shows that it does not apply. The "Pollutants" exclusion included by Cincinnati provides:

(1) We will not pay for "loss" caused directly or indirectly by any of the following, unless otherwise provided. . . .

(l) Pollutants

**Discharge, dispersal, seepage, migration, release, escape or emission of "pollutants"** unless the discharge, dispersal, seepage, migration, release, escape or emission is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss". . .

3

Policy, Doc 99-1 at CIC 005120 (emphasis added); *see also* Policy, Doc 99-1 at CIC 005192

(referring to Building and Personal Property Coverage Form regarding Covered Causes of Loss).

"Pollutants" is defined by the Policy under the Building and Personal Property Coverage Form as

follows:

> 12. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, **including smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals, petroleum, petroleum products and petroleum by-products, and waste**. Waste includes materials to be recycled, reconditions or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:
>
>> a.   You are regularly or otherwise engaged in activities which taint or degrade the environment; or
>>
>> b.   You use, generate or produce the "pollutant".

Policy, Doc 99-1 at CIC 005149 (emphasis added); *see also* Policy, Doc 99-1 at CIC 005199

(definition of "Pollutants" under Business Income (and Extra Expense) coverage form).

Combining these various provisions, the Policy excludes coverage for harm to persons,

property, or the environment resulting from the "discharge, dispersal, seepage, migration, release,

escape or emission" of "any solid, liquid, gaseous or thermal irritant or contaminant, including

smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals, petroleum, petroleum products and

petroleum by-products, and waste." *Cf. Wyatt*, 400 S.W.3d at 420 (citation omitted).

While "[t]he terms 'irritant' and 'contaminant,' when viewed in isolation, are

virtually boundless,"[1] consideration of other Policy provisions exemplifies that the term Pollutants

---

[1] *See also Westchester Fire Ins. Co. v. City of Pittsburg, Kan.*, 794 F. Supp. 353, 355 (D. Kan. 1992), *aff'd sub nom. Pennsylvania Nat'l Mut. Cas. Ins. Co. v. City of Pittsburg, Kan.*, 987 F.2d 1516 (10th Cir. 1993) ("Giving the policy language its plain, ordinary meaning, the definition of "pollutants" does little to clarify the scope of the exclusion. Any substance could conceivably be an "irritant or contaminant" under the right circumstances.").

4

is intended to encompass environmental-type or other "familiar connotations" of pollution. *Wyatt*, 400 S.W.3d at 424-25.[2] For example, the Policy indicates that Cincinnati will pay for "expenses to extract 'pollutants' from land or water[.]" Policy, Doc. 99-1 at CIC005126. In *Pepsico*, the court relied in part on such language in reasoning that the pollution exclusion language was "unmistakably . . . directed to environmental pollution." *Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co.*, 13 A.D.3d 599, 601 (N.Y.S.2d Dec. 27, 2004). Likewise, the terms "discharge, dispersal, release or escape . . . used in conjunction with 'pollutant[]' commonly refer to the sort of conventional environmental pollution at which the pollution exclusion was primarily targeted." *Wyatt*, 400 S.W.3d at 426 (citation omitted). In fact, insurance companies themselves have argued that pollution exclusions are limited to losses arising from traditional environmental pollution. For example, the Southern District of New York previously accepted an argument by National Union Fire Insurance Company that the pollution exclusion in its reinsurers' policy did "not bar coverage of injuries arising from indoor exposure to fumes from routine industrial work." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Re-Ins. Co.*, 351 F. Supp. 2d 201, 210-11 (S.D.N.Y. 2005).

Without such a limitation, "there is virtually no substance or chemical in existence that would not irritate or damage some person or property[,]" qualifying almost any substance as a "pollutant" and rendering the exclusion meaningless. *Wyatt*, 400 S.W.3d at 424–25 (citations and internal quotation marks omitted); *see also City of Pittsburg*, 794 F. Supp. at 355. "Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results." *Wyatt*, 400 S.W.3d at 425 (citation omitted); *see also City of*

---

[2] "Whether an ambiguity exists must be assessed by an examination of the exclusionary clause in the context of the entire policy." *Wyatt*, 400 S.W.3d at 420 (citation omitted); *see also Gerdes*, 713 F.Supp.2d at 1302 (considering the Policy as a whole to conclude "it appears the parties never intended to exclude smoke and soot damages caused by a fire" despite the terms smoke and soot appearing in the definition of pollutant because "it is hard to find that an insured would be willing to pay for a policy that covered damages caused by a fire[] but not the damages caused by the smoke and soot from the fire").

*Pittsburg*, 794 F. Supp. at 355. Indeed, other provisions in the Policy, such as the Fungi, Wet Rot, Dry Rot, and Bacteria exclusion, would be superfluous if Pollutants is given such a broad meaning. *See* Policy, Doc. 99-1 at CIC 005119-20. The policy must be read such that no portion is rendered illusory. *Buschell v. Continental W. Ins. Co.*, Case No. 07-4168-CV-C-NKL, 2008 WL 11337947, at *2 (W.D. Mo. July 22, 2008) (citation omitted); *Cano v. Travelers Ins. Co.*, 656 S.W.2d 266, 271 (Mo. banc 1983); *see also Brumley v. Lee*, 963 P.2d 1224, 1227 (Kan. 1998) ("[A]ll pertinent provisions of an insurance policy must be considered together, other than in isolation, and given effect." (citations omitted)). Considering the language of the exclusion and the Policy as whole, the Pollutants exclusion here does not unambiguously preclude coverage for losses resulting from contamination caused by the natural spread of a virus.

This conclusion is supported by the decisions of other courts holding that pollution exclusions, especially those which do not expressly include the term "virus" in the exclusion or related definitions, do not preclude coverage for losses resulting from COVID-19. *See, e.g.*, *SWB Yankees, LLC v. CNA Fin. Corp.*, No. 20CV2155, 2021 WL 3468995, at *29 (Pa. Ct. Com. Pl. Lackawanna Cty, Aug. 4, 2021) (noting that "[a]bsent express inclusion of the word 'virus' within the exclusion, such exclusions," *i.e.*, "[e]xclusions for contaminants, pollutants, fungi, wet rot, dry rot, and microbes," have been "interpreted as not prohibiting business interruption coverage for losses caused by COVID-19" (citations omitted)); *Brown's Gym, Inc. v. Cincinnati Ins. Co.*, No. 20 CV 3113, 2021 WL 3036545, at *21 (Pa. Ct. Com. Pl. Lackawanna Cty. July 13, 2021) (declining to apply pollution exclusion to policyholder's claim because insurer "had the power to bar business income and extra expense coverage for losses caused by viruses by simply including a virus exclusion among its many exclusions, but it failed to do so"); *Seifert v. IMT Ins. Co.*, 495 F. Supp. 3d 747, 752 n.6 (D. Minn. 2020) (rejecting insurer's "attempt to place the coronavirus in

the same category of pollutants as 'smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste'" for purposes of an exclusion to coverage).

### B.    Historically, Courts Have Declined to Apply Pollution and Contamination Exclusions to Losses Not Resulting from Familiar Instances of Pollution

More generally, courts have historically declined to apply pollution and contamination exclusions to losses not resulting from familiar instances of pollution, such as industrial or environmental pollution. *See, e.g.*, *Wyatt*, 400 S.W.3d at 426 (holding that pollution exclusion did "not exclude coverage for injuries caused by accidental accumulation of carbon monoxide within a building or residence from a source originating therein"); *Pepsico*, 13 A.D.3d at 600 (refusing to apply pollution exclusion to contaminated or faulty ingredients, reasoning that "the general purpose of pollution exclusions . . . is to exclude coverage for environmental pollution"); *Mellin v. Northern Sec. Ins. Co.*, 115 A.3d 799, 806-09 (N.H. 2015) (holding that pollution exclusion was ambiguous as applied to cat urine odor). As previously stated in *Brown's Gym*, Cincinnati is the sole drafter of the policy here and, as in that case, "had the power to bar . . . coverage for losses caused by viruses by simply including a virus exclusion among its many exclusions, but it failed to do so." 2021 WL 3036545, at *21; *SWB Yankees*, No. 20CV2155, 2021 WL 3468995, at *22; *see also City of Pittsburg*, 794 F. Supp. at 355 ("The broad reading of this provision urged . . . is simply inconsistent with the duty incumbent upon the insurer to define limitations in coverage with precision".); *Burns*, 303 S.W.3d at 512 ("[A]s the drafter, the insurer is in the better position to remove ambiguity from the contact.").

Insurance companies, including Cincinnati, have in fact added such virus-specific exclusions, which do not include the environmental terms of art such as dispersal or discharge. *See, e.g.*, *Glenn R. Edwards, Inc. v. Travelers Cos.*, Case No. 4:20-cv-00877-MTS, 2021 WL 3525168 (E.D. Mo. Aug. 11, 2021), *appeal filed*, *Glenn R. Edwards, Inc. v. Travelers Casualty*

7

*Ins.*, 8th Cir., Sept. 10, 2021 (holding that virus exclusion endorsement that superseded any exclusion relating to pollutants barred losses resulting from COVID-19 pandemic). As stated by the Second Circuit:

> Where the risk is well known and there are terms reasonably apt and precise to describe it, the use of substantially less certain phraseology, upon which dictionaries and common understanding may fairly differ, is likely to result in interpretations favoring coverage rather than exclusion.

*Vargas v. Ins. Co. of N. Am.*, 651 F.2d 838, 841 (2d Cir. 1981) (citation omitted), *aff'd*, 505 F.2d 989 (2d Cir. 1974)).

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████ Cincinnati, through its subsidiary, has also specifically included virus exclusions in policies with similar Pollutants exclusions and definitions. *See, e.g.*, Exhibit 3, Cincinnati Policy No. CSU0111794. ████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████

Here, the terms used in the exclusion and definition here such as dispersal, discharge, irritant, and contaminant are clearly terms understood to encompass familiar industrial or environmental pollution and not naturally occurring communicable viruses. *See Wyatt*, 400 S.W.3d at 426; *Pepsico*, 13 A.D.3d at 600; *Mellin*, 115 A.3d at 807. No "ordinary person of average understanding purchasing this insurance" would expect the term "Pollutant" to encompass a naturally-occurring communicable virus. *Wyatt*, 400 S.W.3d at 419-20 ("When interpreting the terms of an insurance policy, this Court applies the meaning that would be understood by an ordinary person of average understanding purchasing insurance." (citation omitted)); *Gerdes*, 713

F.Supp.2d at 1296 (noting that "[t]he test to be applied in determining the intention of the parties to an insurance policy is . . . what a reasonable person in the position of the insured would understand it to mean." (citation omitted)); *see, e.g.*, *SWB Yankees*, No. 20CV2155, 2021 WL 3468995, at *23 (noting that a policyholder could have a reasonable expectation of coverage based upon the totality of the insurance transaction involved where the policy does not include an exclusion for loss caused by a virus (citation and internal quotation marks omitted)); *Johnson v. Clarendon Nat'l Ins. Co.*, No. G039659, 2009 WL 252619, at *13 (Cal. Ct. App. Feb. 4, 2009) ("Does a policyholder pollute the environment by sneezing and passing a virus to their neighbor? A layperson would not reasonably interpret the exclusionary language to apply to the above scenarios.").[3]

> The Missouri Court of Appeals has stated:
>
> [A]n interpretation that ignores the familiar connotations of the word "pollutant" and that would lead to absurd results is not the interpretation that an ordinary person of average understanding would adopt. "It seems far more reasonable that a policyholder would understand the exclusion as being limited to irritants and contaminants commonly thought of as pollution and not as applying to every possible irritant or contaminant imaginable."

*Wyatt*, 400 S.W.3d at 425 (citations omitted).

Cincinnati could have adopted or drafted an exclusion that clearly and unambiguously excluded losses related to viruses but choose not to do so. As in *Wyatt*, the language of the Policy at issue here, if considered ambiguous as to its application to COVID-19 losses, "must be construed applying the interpretation most favorable to the insured" and against Cincinnati. *Id.*

---

[3] *Accord Pepsico I*, 13 A.D.3d at 601 (reasoning that applying "seepage and/or pollution and/or contamination" exclusion to non-environmental losses would "contradict the 'common speech' and 'reasonable expectations of a businessperson'"); *Mellin*, 115 A.3d at 808-09 (reasoning that exclusion of losses due to cat urine odors would not meet the insured's reasonable expectations regarding the pollution exclusion and coverage).

9

**C.     Decisions Applying Missouri and Kansas Law Precluding Coverage Under Contamination or Pollution Exclusions Do Not Require Application of the Exclusion Here**

Decisions applying Missouri and Kansas law to preclude coverage under pollution or contamination exclusions do not require a different result here. For example, in *United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, a claim was brought related to personal injuries sustained due to fumes from TIAH, an acrylic concrete sealant. 751 F.3d 880, 882-83 (8th Cir. 2014). In finding that the pollution exclusion applied to bar coverage, the Eighth Circuit, applying Missouri law, noted that there was "little doubt that TIAH falls within" the definition of an irritant, pointing to the material data safety sheet and promotional materials from the manufacturer that warned that the substance was toxic and could cause irritation. *Id.* at 884. Additionally, one of the substances constituent chemicals was defined by the federal Clean Air Act as a "pollutant." *Id.*

Substances more convincingly envisioned to be encompassed by such exclusions, such as waste and asbestos, were likewise involved in other cases where pollution or contamination exclusions have been held to preclude coverage under Missouri and Kansas law. *See, e.g.*, *Zurich Am. Ins. Co. v. Ins. Co. of N.A.*, 392 F.Supp.3d 992 (E.D. Mo. 2019), *appeal filed Zurich Am. Ins. Co. v. Ins. Co. of N.A.*, 8th Cir. June 26, 2019 (applying pollution exclusion in case alleging personal injury due to asbestos exposure, reasoning in part "that the federal Clean Air Act classifies asbestos as a 'hazardous air pollutant'") (citation omitted)); *Grinnell Mutual Reinsurance Corp. v. Rambo*, No. 13-4047-CV-C-MJW, 2014 WL 11394879, at *7-8 (W.D. Mo. Sept. 30, 2014) (applying pollution exclusion where definition of pollutant included waste and losses were alleged to be due to animal waste and other hazardous material); *Boulevard Inv. Co. v. Capitol Indem.*

*Corp.*, 27 S.W.3d 856, 858 (Mo. App. 2000) (applying pollution exclusion to property resulting from kitchen waste where policy definition of pollutant included the term waste).[4]

Missouri law has indicated that "the term 'contaminant' is ambiguous in some circumstances, and unambiguous in others, depending on the purported pollutant and the circumstances of its dispersal." *Zurich*, 392 F.Supp.3d at 1001 (citation omitted); *Williams v. Employers Mut. Cas. Co.*, 845 F.3d 891, 905 (8th Cir. 2017) (determining that the terms of the pollution exclusion were not "ambiguous as applied to the particular substance in the factual setting at issue" in case involving water contamination due to Radium). Similarly, the District of Kansas, applying Kansas law, has acknowledged that pollution exclusion language may be considered unambiguous in some circumstances and ambiguous in others. *Gerdes*, 713 F. Supp. 2d at 1299, 1300 (applying Kansas law and holding that mercury unambiguously constituted a pollutant under the Policy's definition but "[e]ven if the Court were to be persuaded by Plaintiff's argument [that] . . . the pollution exclusion is ambiguous [as to the exclusion of damages caused by smoke and soot], it would only be with respect to whether the Policy excludes coverage from [the smoke and soot] damages" and not the damages caused by mercury). Notably, decisions applying Missouri and Kansas law and holding that such exclusions have barred coverage have been in contexts akin to the typical environmental- or industrial-like pollution that could be

---

[4] *See also Doe Run Res. Corp. v. Lexington Ins. Co.*, 719 F.3d 868, 874 (8th Cir. 2013) (applying Missouri law and holding that pollution exclusion applied to claims resulting from lead mine toxic emissions); *Doe Run Res. Corp. v. Am. Guar. & Liab. Ins.*, 531 S.W.3d 508, 511 (Mo. banc 2017) (same); *Heringer v. Am. Family Mut. Ins. Co.*, 140 S.W.3d 100, 105 (Mo. App. 2004) (holding that exclusion applied where the policy "specifically and unambiguously defines lead as a pollutant" and distinguishing from case with similar facts where exclusion and definition did not include the term lead); *Williams v. Employers Mut. Cas. Co.*, 845 F.3d 891, 905-06 (applying Missouri law and holding that pollution exclusion barred coverage for personal injuries caused by water contamination due to Radium and coliform bacteria that allegedly exceeded levels set by Missouri's Department of Natural Resources); *Gerdes*, 713 F.Supp.2d at 1299, 1300 (applying Kansas law and holding that mercury, deemed a hazardous substance by the Environmental Protection Agency, unambiguously constituted a pollutant under the Policy's definition, which included any "substance listed as a hazardous substance by any governmental agency" and that policy's pollution exclusion applied).

expected by a reasonable lay person to be encompassed by such an exclusion. Plaintiff is not aware of any Missouri or Kansas court applying such an exclusion to a naturally-occurring, communicable virus or similar factual scenario.

### D. Decisions Precluding Coverage for COVID-19 Losses Under Contamination or Pollution Exclusions Also Do Not Require Application of the Exclusion Here

Decisions finding that contamination exclusions applied to preclude coverage of COVID-19 losses, such as the Northern District of Illinois's in *Zebra Technologies*, also do not require a different result here. *Zebra Technologies Corp. v. Factory Mut. Ins. Co.*, No. 20-cv-05147, 2021 WL 4459532, at \*3-4 (N.D. Ill. Sept. 29, 2021). In *Zebra Technologies*, the court held that a contamination exclusion barred coverage for losses resulting from COVID-19. However, the exclusion used language distinct from the pollution exclusions at issue, excluding:

> contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If contamination due only to the actual not suspected presence of contaminant(s) directly results from other physical damage not excluded by this Policy, then only physical damage caused by such contamination may be insured.

*Id.* at \*3. More significantly, the Policy defined "contamination" as "any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, **virus**, disease causing or illness causing agent, fungus, mold or mildew." *Id.* at \*4 (emphasis added). Notably, the exclusion does not use the terms present in the Pollutants exclusion at issue that are traditionally associated with industrial or environmental pollution.

In *Circus Circus*, the District of Nevada held that a pollution and contamination exclusion precluded coverage for COVID-19 losses, but that exclusion specifically included references to "damage . . . or loss of use of property" and "**virus**". *Circus Circus LV, VP v. AIG Speciality Ins. Co.*, 525 F.Supp.3d 1269, 1273, 1278 (D. Nev. 2021), *appeal filed*, *Circus Circus LV, LP v. AIG*

*Speciality Ins. Co.*, 9th Cir., Mar. 2, 2021; *see also Zwillo V. Corp. v. Lexington Ins. Co.*, 504 F.Supp.3d 1034, 1041-42 (W.D. Mo. 2020) (holding that pollution and contamination exclusion applied "because the exclusion at bar includes 'virus' as a part of its definition"); *Monarch Casino & Resort, Inc. v. Affiliated FM Ins. Co.*, No. 20-CV-1470, 2021 WL 4260785, at *4–5 (D. Colo. Sept. 17, 2021) (holding that contamination exclusion defining contamination "to include 'the actual or suspected presence of any. . . virus" precluded coverage for COVID-19 losses). Accordingly, courts applying such exclusions to bar coverage for COVID-19 losses have faced policy language specifically including the term "virus" in the definition of pollutant. Such decisions should not be followed here due to the important difference in a lack of such language here.

Indeed, even where such exclusions have contained the term virus, other courts have nevertheless held the exclusions to be inapplicable to policyholders' claims based on losses resulting from COVID-19. For example, in *JGB Vegas*, the Nevada District Court held that the pollution contamination exclusion did not apply where the losses were not the result of traditional environmental and industrial pollution and contamination but instead were "alleged to be the result of a naturally-occurring, communicable disease . . . **even though the Exclusion contains the word 'virus.'**" *JGB Vegas Retail Lessee, LLC v. Starr Surplus Lines Ins. Co.*, No. A-20-816628-B, 2020 WL 7190023, at *3 (D. Nev. Nov. 30, 2020) (citation omitted) (emphasis added); *see also Urogynecology Specialists of Fla. LLC v. Sentinel Ins. Co.*, 489 F. Supp. 3d 1297, 1302 (M.D. Fla. 2020) (holding that COVID-19 losses do "not logically align with the grouping of the virus exclusion with other pollutants such that the Policy necessarily anticipated and intended to deny coverage for these kinds of business losses"); *accord London Bridge Resort LLC v. Ill. Union Ins. Co.*, No. CV-20-08109-PCT-GMS, 2020 WL 7123024, at *4 (D. Ariz. Dec. 4, 2020) (holding that

a pollution liability insurance policy did not cover losses caused by the COVID-19 pandemic, noting that "a virus being considered a 'contaminant' or 'pollutant' in certain instances does not render a COVID-19 outbreak 'traditional environmental pollution'").

To the extent that these cases evidence a split among courts regarding similar policy language,[5] an ambiguity exists that must be construed in favor of the policyholder. *Mellin*, 115 A.3d at 808 ("Some courts interpret pollution exclusion clauses . . . to bar coverage for only those injuries allegedly caused by traditional environmental pollution. Other courts interpret pollution exclusions as excluding coverage for all injuries allegedly caused by pollutants, because the exclusions are unambiguous as a matter of law. . . [B]oth interpretations are reasonable and, therefore, because there are two reasonable interpretations of the policy language, we conclude that the pollution cause is ambiguous." (internal citations and quotation marks omitted)); *see also Macheca Transp. v. Philadelphia Indemn. Ins. Co.*, 649 F.3d 661, 668 (8th Cir. 2011) ("The fact that several jurisdictions have reached divergent conclusions about the meaning of [a] term . . . is evidence of the term's ambiguity under Missouri law."); *Marquis*, 961 P.2d at 1220 (noting that an exclusion "must use clear and unambiguous language" or else "will be liberally construed in favor of the insured" (citation omitted)).

***

In sum, courts have declined to apply pollution exclusions in the context of COVID-19 losses, and such decisions are consistent with the historical trend of such exclusions only applying to traditional environmental or industrial pollution losses. For the reasons set forth herein, Plaintiff requests that this Court reject as a matter of law any argument set forth by Cincannati that the Pollutants exclusion should apply to bar coverage for Plaintiff's losses here. Any reference to the

---

[5] *See also Wyatt*, 400 S.W.3d at 423 (noting the nationwide split regarding the application of pollution exclusions).

14

exclusion would be irrelevant and unduly prejudicial pursuant to Federal Rules of Evidence 401 and 403.

**IV.     Rulings on Motions *in Limine* and for Summary Judgment**

The court has previously addressed and decided numerous issues in ruling on motions *in limine* and for summary judgment. For the convenience of the Court and the Parties, Plaintiff has attached for reference as Exhibit 5 a summary and index of the Court's Orders regarding motions *in limine*, and Plaintiff has summarized the Court's rulings on summary judgment in the chart attached as Exhibit 6.

<b>CONCLUSION</b>

Plaintiff requests that the Court (1) instruct the jury on the elements of Plaintiff's cause of action, including the definition of 'direct physical loss or damage,' prior to opening statements; (2) instruct the jury that three of the Policy exclusions have already been found to be inapplicable here and should be disregarded by the jury; and (3) reject as a matter of law and as irrelevant and unduly prejudicial any argument or evidence put forth by Cincinnati that the Pollutants exclusion should apply to bar coverage for Plaintiff's losses here. Plaintiff also refers the Court and parties to the attached summaries and indexes of this Court's prior rulings on the parties' Motions *in Limine* and Motions for Summary Judgment.

15

Date: October 18, 2021

Respectfully submitted,

**LANGDON & EMISON**


*/s/ Brett A. Emsion*
Brett A. Emison, MO #52072
J. Kent Emison, MO #29721
Patricia L. Campbell, MO #60917
911 Main Street
Lexington, Missouri 64067
Telephone: 660-259-6175
Facsimile: 660-259-4571
Email: brett@lelaw.com
Email: kent@lelaw.com
Email: tricia@lelaw.com


**STUEVE SIEGEL HANSON LLP**

Patrick J. Stueve, MO #13847
Bradley T. Wilders, MO #78301
Curtis Shank, MO #66221
Abby E. McClellan, MO #66069
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
Facsimile: 816-714-7101
Email: stueve@stuevesiegel.com
Email: wilders@stuevesiegel.com
Email: shank@stuevesiegel.com
Email: mcclellan@stuevesiegel.com


**MILLER SCHIRGER LLC**

John J. Schirger, MO # 60583
Matthew W. Lytle, MO #59145
Joseph M. Feierabend, MO #62563
4520 Main Street, Suite 1570
Kansas City, Missouri 64111
Telephone:     816-561-6500
Facsimile:     816-561-6501
Email: jschirger@millerschirger.com
Email: mlytle@millerschirger.com

16

Email: jfeierabend@millerschirger.com

**SHAFFER LOMBARDO SHURIN, P.C.**

Richard F. Lombardo, MO #29748
2001 Wyandotte Street
Kansas City, Missouri 64108
Telephone:    816-931-0500
Facsimile:    816-931-5775
Email: rlombardo@sls-law.com
*Attorneys for Plaintiff*

17

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that October 18, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to:

Michael L. Brown
Kelvin J. Fisher
Wallace Saunders, P.C.
10111 West 87th Street
Overland Park, KS 66212
mbrown@wallacesaunders.com
kfisher@wallacesaunders.com

Daniel G. Litchfield (admitted *pro hac vice*)
Litchfield Cavo LLP
303 West Madison, Suite 300
Chicago, IL 60606
litchfield@litchfieldcavo.com

Ericka Hammett (admitted *pro hac vice*)
Litchfield Cavo LLP
250 E. Wisconsin Ave., Suite 800
Milwaukee, WI 53202
hammett@litchfieldcavo.com
*Attorneys for Defendant*

*/s/ Brett A. Emsion*
Brett A. Emison

18