IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **K.C. HOPPS, LTD.,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**THE CINCINNATI INSURANCE COMPANY,**<br><br>        **Defendant.** | **Case No. 4:20-CV-437-SRB** |

## PLAINTIFF'S MOTION FOR ORDER REGARDING POLICY INTERPRETATION RELATED TO THE EXCLUSIONS AND PROPOSED ALTERNATIVE INSTRUCTIONS

Plaintiff K.C. Hopps, Ltd. respectfully requests an order from the Court confirming its interpretation of the Policy exclusions as rendered in its September 21, 2021 Order on the parties' motions for summary judgment ("SJ Order") (Doc. 155). This request is necessary based on: (1) the Court's order denying Plaintiff's motion *in limine* to prohibit Defendant from showing or discussing with the jury the four Policy exclusions; and, (2) the Court's preliminary jury instructions related to the exclusions distributed to the parties on October 22, 2021. Plaintiff submits this emergency memorandum because counsel have been preparing for trial based on the Court's holding in its SJ Order that the exclusions "do not apply to Plaintiff's claims[.]" (*Id.* at 23). The Court reached that holding by correctly concluding, under the plain language of the Policy, that the exclusions applied only if they "'caused' SARS-COV-2 to enter Plaintiff's premises," which the "record does not show" here. (*Id.*) The Court explicitly held that the exclusions "do not apply to Plaintiff's claims." (*Id.*) If the Court now believes there is a genuine issue of material fact and intends to permit evidence related to these exclusions, then Plaintiff

respectfully needs to understand if the Court's interpretation has changed in order to prepare its case.

Most concerning is that the Court's ruling on the motion *in limine* and its proposed jury instructions suggests Defendant may be permitted to argue to the jury that these four exclusions apply even if they did not cause the physical contamination or alteration of Plaintiff's properties. Rather, Defendant had admitted it wants to argue that the exclusions (for example, the "loss of use") caused Plaintiff's loss of Business Income, even though the plain language of the Policy contains no such language.

If this issue is not resolved prior to trial, it will create substantial confusion for the jury. The term "loss" is used throughout the Policy, but it has a different meaning depending on whether it is surrounded by quotation marks or not. When quotation marks are used with the word, as in "We will not pay for any 'loss' caused by … Ordinance or Law …", the loss means "physical loss or damage." (*Id.*) It is in this context that Plaintiff must prove their property was physically contaminated or altered by SARS-CoV-2. When used without quotation marks however (such as where the Policy says "We will pay for the actual loss of 'Business Income'…) the ordinary meaning of the word loss applies. Plaintiff is, thus, entitled to any financial loss of Business Income if its business is suspended due to physical contamination or alteration by SARS-CoV-2. None of the exclusions Defendant seeks to argue to the jury use the word loss *without* quotation marks, and Defendant ignores this controlling distinction. Defendant's attempt to broaden the plain language of its own Policy exclusions strongly conflicts with both the Court's SJ Order and black-letter law that insurance policy exclusions must be construed narrowly.

Therefore, Plaintiff respectfully requests a definitive ruling on this question of Policy interpretation as related to these exclusions prior to the start of trial. Without a ruling on the

meaning of the Policy—which is the Court's, not the jury's, province—Plaintiff cannot prepare its case for the jury. Plaintiff does not even know what material facts are in dispute as it relates to these exclusions, as neither Defendant nor the Court's SJ Order identified any. Nor can Plaintiff predict what will be considered relevant evidence related to these exclusions without the Policy interpretation. Furthermore, Plaintiff believes that permitting the jury to hear about the exclusions at all—given the plain language of the Policy—would be greatly confusing to the jury given that the Policy uses different definitions for the term loss. Such legalistic distinctions are better suited for a ruling by the Court prior to trial.

In addition, Plaintiff did not submit jury instructions related to the exclusions based on the Court's adoption of Plaintiff's interpretation in its SJ Order and its clear statement that the exclusions "do not apply to Plaintiff's claims." (Doc. 155 at 23). The Court's preliminary instructions, however, are based on Defendant's submissions; and, they do not apply the definition of the word "loss" under the Policy applicable to all four exclusions. Mindful of the fact that these instructions are only preliminary and an opportunity to make further objections and suggested changes is forthcoming, Plaintiff highlights certain objections that it believes the Court should resolve prior to opening statements related to these exclusions.[1] Plaintiff's alternative instructions are discussed herein and attached as Exhibit 1.[2]

Plaintiff therefore respectfully asks the Court to reconsider its order denying Plaintiff's motion *in limine* excluding argument or evidence related to the four exclusions under FRE 401, 402, and 403. (Doc. 213). Alternatively, if the Court declines to give such reconsideration, Plaintiff

---

[1] This is offered without prejudice to Plaintiff's right to offer further objections at the jury instruction conference.

[2] Plaintiff is mindful that the Court does not want additional motions practice, except in the case of an emergency. With all due respect to the Court, Plaintiff views this as an emergency because it dramatically alters the triable issues Plaintiff understood to remain in this case on the eve of trial.

3

Case 4:20-cv-00437-SRB   Document 218   Filed 10/23/21   Page 3 of 15

requests that Court construe the Policy exclusions as applicable only if they caused Plaintiff's physical loss or damage due to SARS-CoV-2, to preclude any other argument by Defendant inconsistent with that Policy interpretation, and to identify the material facts it believes represent triable issues. Plaintiff also requests that the proposed jury instructions be modified consistent with Exhibit 1.

**ARGUMENT**

**A. The Court's Summary Judgment Order (Doc. 155)**

The Court's SJ Order construed the Policy according to the Policy's plain text. (Doc. 155). The Court first acknowledged that Defendant had argued it was "entitled to summary judgment because the 'Ordinance or Law,' 'Delay or Loss of Use,' and 'Acts or Decisions' exclusions" in the Policy precluded coverage. (Doc. 155 at 23). The Court found, however, (1) that "loss" under the Policy "is defined as 'accidental physical loss or accidental physical damage,'" (2) that physical loss or physical damage within the meaning of the Policy includes "physical alteration" or "physical contamination," (3) that "Plaintiff's claims arise from the presence of SARS-CoV-2 on its premises," and (4) that "[t]he ***record does not show*** that these ***exclusions 'caused' SARS-CoV-2 to enter Plaintiff's premises***." (Doc. 155 at 11, 23) (emphasis added). For these reasons, the Court concluded that "***these exclusions do not apply to Plaintiff's claims***." (Doc. 155 at 23) (emphasis added).[3] The Court, thus, essentially confirmed the plain reading of the Policy: the

---

[3] Defendant's briefing on the exclusions was intentionally anemic. It devoted less than one page of argument to all three exclusions in its suggestions in support of its motion. (Doc. 98 at 18-19). Plaintiff, however, treated the issue with the significance it deserved and devoted nearly seven pages to their response, including the arguments raised here, which the Court adopted. (Doc. 108 at 26-32). In its reply, Defendant essentially ignored the substance of Plaintiff's argument regarding the Policy interpretation. (Doc. 113 at 20-21). The lack of any meaningful response to Plaintiff's arguments shows the substantial weakness of Defendant's extra-textual interpretation of the Policy. In its trial brief, Defendant offered no legal analysis supporting its argument, and cited a single case, which is inapposite as it does not even address the Policy interpretation issue raised here. *See One Place Condo., LLC v. Travelers Prop. Cas. Co. of Am.*, No. 11 C 2520, 2015 WL 2226202, at *6 (N.D. Ill. Apr. 22, 2015).

exclusions apply when they cause physical loss or damage to the property but they "do not apply" here because Defendant does not argue the exclusions resulted in the presence of SARS-CoV-2 on Plaintiff's properties.

Plaintiff reasonably took the Court's statement that the exclusions "do not apply" to mean that they were inapplicable as a matter of law. This was further confirmed by the Court's statement that the triable fact issues remaining in this case are "whether [Plaintiff] sustained a covered 'loss' caused by the presence of SARS-CoV-2 on its premises," "whether the virus was present on Plaintiff's premises, whether Plaintiff's operations were reduced to remediate that physical loss or physical damage, and the extent of Plaintiff's damages." (Doc. 155 at 23–24). The Court did not state or suggest that there were triable issues of fact related to these exclusions. And, while Defendant's briefing on these issues was cursory, Defendant did not identify any triable issues prior to the SJ Order nor has it since.

### B. The SJ Order Was Correct in that The Policy Exclusions Do Not Apply to the Loss of Business Income Absent Causing Physical Loss or Damage.

The Policy contains two primary coverage forms relevant to this case: (1) the Building and Personal Property Coverage Form (Including Special Causes of Loss) ("Property Form") and (2) the Business Income (and Extra Expense) Coverage Form ("BI Form"). The Property Form instructs that "[o]ther words and phrases *that appear in quotation marks* have special meaning. Refer to **SECTION G. DEFINITIONS.**" Doc. 99-1 at 47 (emphasis added).

The Property Form provides coverage for "direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss." Doc. 99-1 at 47. "Covered Cause of Loss means "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." *Id.* at 49. The term loss appears in quotation marks; thus, under the Policy, as referenced in those instances: "'Loss' means accidental physical loss or accidental physical damage." *Id.* at 82.

5

Relevant to the instant motion, the Property Form states that Defendant will not pay for certain "loss[es]" which are titled Exclusions.

> **b.      Exclusions**
>
> (1)    We will not pay for 'loss' caused directly or indirectly by any of the following, unless otherwise provided. Such 'loss' is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the 'loss'.

*Id.* The Ordinance or Law (*id.*) and Government Seizure exclusions for which Defendant and the Court have proposed jury instructions (*id.* at 50) fall under this subsection. Subsection (b)(2) then provides another set of exclusions:

> (2)    We will not pay for 'loss' caused by or resulting from any of the following:
> . . . .

*Id.* at 52. The Delay or Loss of Use exclusion falls under this subsection. *Id.* at 52-53. Unlike subsection (b)(1), there is no anti-concurrent or anti-efficient causation language in subsection (b)(2). Finally, subsection (b)(3) states:

> (3)    We will not pay for 'loss' caused by or resulting from any of the following in Paragraphs (3)(a) through (3)(c). However, if an excluded cause of loss that is listed in Paragraphs (3)(a) through (3)(c) results in a Covered Cause of Loss, we will pay for that portion of 'loss' caused by that Covered Cause of Loss:

The Acts or Decisions exclusion is listed under this section. *Id.* at 54. It also does not contain any anti-concurrent or anti-efficient causation language.

While each subsection is materially different in some respects (such as, whether it contains an anti-concurrent or anti-efficient causation clause), all four use the *defined* word "loss," which means direct physical loss or physical damage. Thus, the exclusions provide generally: "We will not pay for [accidental physical loss or physical damage] caused by or resulting from … Ordinance or Law, Government Seizures, Delay or Loss of Use, or Acts or Decisions." The exclusions do ***not*** read—as Defendant now seeks to urge the jury—"We will not pay for business income losses

caused by or resulting from… Ordinance or Law, Government Seizures, Delay or Loss of Use, or Acts or Decisions.

This distinction is not only critical here but unavoidable under the Policy language. The BI Form provides coverage for business interruption losses, but the word loss is not surrounded by quotation marks:

> We will pay for the actual loss of 'Business Income' you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'.

*Id.* at 125. Defendant, thus, promised to pay actual loss of Business Income due to the suspension of Plaintiff's business activities, without any corresponding exclusion stating that Defendant will not pay lost Business Income if it the result of an Ordinance or Law, Government Seizures, Delay or Loss of Use, or Acts or Decisions.

The drafting decision not to use the defined word loss in the sentence of the BI form is entirely logical. The defined phrase ("accidental physical loss or physical damage") would be non-sensical here. "We will not pay for the actual [physical loss or physical damage] of Business Income…" does not make sense in any context. In contrast, it makes perfect sense that that the loss referred to here is a financial (not a physical) loss. Reading the exclusions as Defendant would have it (to apply to financial rather than physical losses) would render the entire BI coverage form meaningless. If an insurer could refuse to pay lost business income whenever it was caused by a loss of use or delay, no amount of property damage (whether it be by fire, hurricane, or tornado) would be sufficient to trigger the BI coverage. When a restaurant burns to the ground, all BI losses are, in some ways, caused by the loss of use of the building. (*See* Pl. Sugg. in Opp. to SJ (Doc.108 at 21-23) (citing cases)).

Conversely, the term loss *is* surrounded by quotation marks in the very next sentence in an entirely logical manner:

> The 'suspension' must be caused by direct 'loss' to property at 'premises' which are described in the Declarations and for which a 'Business Income' Limit of Insurance is shown in the Declarations. The 'loss' must be caused by or result from a Covered Cause of Loss.

*Id.* In other words, Defendant has promised to pay for all Business Income losses (that is financial losses) sustained due to the necessary suspension of Plaintiff's operations when the suspension is caused by direct physical loss or physical damage to the covered property. The exclusions are only triggered when they cause physical loss or physical damage to the property, in which case there would be no BI coverage. Nothing in the Policy suggests the exclusions can be used to independently limit BI coverage when there has been a physical loss or damage by an non-excluded act (like the presence of SARS-CoV-2).

### C. The Motion in Limine and Trial Briefs

The Court's SJ Order was entirely in accord with these arguments. After the Court issued it, however, Defendant nonetheless proposed jury instructions related to these exclusions. (Doc. 167 at 16-18). Consequently, in its trial brief, Plaintiff requested that the Court instruct the jury that there were no applicable exclusions. (Doc. 201).

On the eve of trial, Defendant filed its Response to Plaintiff's Trial Brief and Motion to Reconsider (Doc. 207), asking the Court to reconsider its summary judgment ruling as to these exclusions. Importantly, Defendant acknowledged that the Court's interpretation of the Policy—which only followed the Policy's plain meaning—meant the exclusions were inapplicable:

> The Court's Order states the record at summary judgment "did not show that these exclusions 'caused' SARS-CoV-2 to enter Plaintiff's premises." Therefore, because "loss" is defined as "accidental physical loss or accidental physical damage," and Plaintiff's claims arise from the presence of SARS-CoV-2 on its premise, the exclusions do not apply.

(Doc. 207 at 3). Defendant then acknowledged that Plaintiff was not seeking damages for the "repair or replacement value of physical loss or physical damage to their premises" but insisted

8

that the exclusions should nonetheless apply to Plaintiff's "damages for loss of revenue due to business interruption." (*Id.*) (*see also id.* at 4 ("Whether the passing of the various COVID-19 related orders resulted in the *complained-of interruption to Plaintiff's business* should be submitted to the jury") ("Plaintiff's claim for *damages for loss of revenue* stemming from business interruption should [be] excluded under the Policy") (emphases added). Defendant did not, however, explain how the Policy supports that interpretation.

Because Defendant filed this motion the night before the hearing and the Court issued its written ruling during that hearing before receiving any response from the Plaintiff, Plaintiff had no adequate opportunity to respond to Defendant's naked mischaracterization of the Policy. Plaintiff has been preparing for trial for an entire month in the context of the Court's SJ Order and in the absence of any subsequent motion by Defendant or ruling by this Court to the contrary. It is unfair for Defendant only now to insist these exclusions carry an interpretation different than the one set out in the SJ Order. To contend now that the exclusions limited the loss of Business Income is a drastic change in the scope of the trial. On the face of the Policy, the exclusions are part of the Property From and are applicable only when one of them results in *physical* loss or damage, which this Court correctly found is entirely absent on the record here. (Doc. 155 at 23).

### D. **Further Guidance is Needed.**

Plaintiff agrees with the Court that "[t]he record does not show that these exclusions 'caused' SARS-CoV-2 to enter Plaintiff's premises" and that, "[i]n turn, these exclusions do not apply to Plaintiff's claims." (Doc. 155 at 23). Defendant has ***admitted*** that it seeks to improperly argue to the jury that the exclusions should reduce or eliminate Plaintiff's business interruption loss, despite the absence of ***any*** language in the Policy permitting them to do so. Permitting Defendant to make that argument would be tantamount to permitting it to argue the meaning of

9
Case 4:20-cv-00437-SRB    Document 218    Filed 10/23/21    Page 9 of 15

the Policy to the jury. Even if the exclusions were relevant (they are not and should be excluded under FRE 401), there is a substantial danger of undue prejudice and, particularly, confusion warranting exclusion under FRE 403. The fact that the Policy uses the word "loss" both as a defined and an undefined term is confusing enough. But permitting Defendant to conflate those differences at trial can only be designed to confuse the jury, creating a substantial danger that the jury will not only be confused but led to a verdict ungrounded in the written contract.[4]

"It is a fundamental and well-settled rule that when a contract is not ambiguous, the court must simply interpret it as written." *Gosiger, Inc. v. Elliott Aviation, Inc.*, 823 F.3d 497, 501 (8th Cir. 2016). If the Court is going to permit Cincinnati to show these exclusions to the jury, Plaintiff must know how the Court will interpret them; otherwise, Plaintiff cannot evaluate what evidence is relevant and what it can say about these exclusions during opening statements. While the Court indicated it was not revisiting its summary judgment ruling, to the extent the Court's preliminary jury instructions are a guide to its present intentions, those instructions deviate significantly from that ruling because the instructions ***do not incorporate the Policy's definition of the word loss***. While ordinarily Plaintiff would submit objections and proposed revisions at the jury instruction conference, the parties cannot evaluate what evidence is relevant at trial if they disagree on the

---

[4] At the hearing on October 22, 2021, Defendant responded to these arguments by insisting that the Court's interpretation of "physical loss or damage" justified Defendant's expansive reading of the exclusions. That argument is disingenuous. As Defendant knows, in its SJ Order, the Court precluded Plaintiff from proving that it sustained physical loss or damage based on mere loss of use from the Stay-at-Home orders. (Doc. 155 at 11 ("In accordance with Oral Surgeons, the Court finds Plaintiff, to the extent it argues that it sustained "physical loss" or "physical damage" simply because the COVID-19 pandemic resulted in Stay-at-Home orders, may not proceed on that theory of coverage. proving physical loss or damage by mere "loss of use" of the properties."). Plaintiff is being required to prove, at trial, that SARS-CoV-2 physically contaminated or altered their property. Yet, Defendant now wants the jury to give an expansive interpretation of the four exclusions on which it bears the burden of proof, removing the very *physicality* requirement that it insisted was embedded in the definition of the word loss.
    There is no legal basis to expand the exclusions beyond the plain language of the Policy. To the contrary, both Missouri and Kansas law require that exclusions be *narrowly* and *strictly* construed. *Burns v. Smith*, 303 S.W.3d 505, 510 (Mo. banc 2010); *Marquis v. State Farm Fire & Cas. Co.*, 961 P.2d 1213, 1220 (Kan. 1998). Defendant demands the opposite.

meaning of Policy exclusions (as they apparently do). Thus, Plaintiff offers the following objections to the proposed jury instructions in an effort to better present how important these critical issues are:

### Governmental Authority Exclusion

**COURT'S PROPOSED INSTRUCTION:** "Your verdict must be for the defendant if you believe that the loss or damage was caused directly or indirectly by the seizure or destruction of property by order of governmental authority regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

**PLAINTIFF'S OBJECTION:** Plaintiff objects that the instruction is inconsistent with the Policy because it does not use the Policy definition of the term loss. The jury would naturally understand the phrase "loss or damage" to apply to all the financial damages that Plaintiff seeks, even though the Policy exclusion only applies if it causes physical loss or damage. (*See* Doc. 155 at 23).

**PROPOSED REVISION:** "Your verdict must be for the defendant if you believe that the physical loss or physical damage to Plaintiff's properties by SARS-CoV-2[5] was caused directly or indirectly by the seizure or destruction of property by order of governmental authority regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

### Ordinance or Law Exclusion

**COURT'S PROPOSED INSTRUCTION:** "Your verdict must be for the defendant if you believe that the loss or damage was caused directly or indirectly by an Ordinance or Law regulating the use of any building or structure regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

**PLAINTIFF'S OBJECTION:** Plaintiff objects to this instruction because the Court has found that "[t]he record does not show that these exclusions 'caused' SARS-CoV-2 to enter Plaintiff's premises" and that, "[i]n turn, [the Ordinance or Law] exclusion[] do[es] not apply to Plaintiff's claims." (Doc. 155 at 23). In addition, the instruction is inconstant with the Policy because it does not use the Policy definition of the term loss. (Doc. 99-1 at 133). As with the above instruction,

---

[5] This language tracks the Court's proposed instruction for Plaintiff's verdict director. ("Your verdict must be for plaintiff if you believe … such property suffered direct physical loss or physical damage *due to SARS-COV-2*" (emphasis added)). That is appropriate based on the parallel language between the Policy's coverage language and its exclusion language. *Compare* Doc. 99-1 at 47 ("We will pay for direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss") *with id.* at 49 ("We will not pay for 'loss' caused directly or indirectly by any of the following….").

without the revision, the jury will naturally believe this exclusion applies to Plaintiff's financial loss and damages, rather than its physical loss or damage.

**PROPOSED REVISION:** "Your verdict must be for the defendant if you believe that the physical loss or physical damage to Plaintiff's properties by SARS-CoV-2 was caused directly or indirectly by an Ordinance or Law regulating the use of any building or structure regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

## Delay, Loss of Use Exclusion

**INSTRUCTION:** "Your verdict must be for the defendant if you believe that the loss or damage was caused by or resulted from any delay, loss of use or loss of market regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

**PLAINTIFF'S OBJECTION:** Plaintiff objects to this instruction because the Court has found that "[t]he record does not show that these exclusions 'caused' SARS-CoV-2 to enter Plaintiff's premises" and that, "[i]n turn, [the Delay or Loss of Use] exclusion[] do[es] not apply to Plaintiff's claims." (Doc. 155 at 23). In addition, the instruction is inconsistent with the Policy because: (1) it does not use the Policy definition of the term loss. (Doc. 99-1 at 133); and, (2) this exclusion is *not* subject to an anti-concurrent or anti-efficient clause provision (Doc. 99-1 at 52) ("We will not pay for 'loss' caused by or resulting from any of the following…[d]elay, loss of use or loss of market"). As with the above instructions, without the revision, the jury will naturally believe this applies to Plaintiff's financial damages or losses, rather than its physical loss or damage.

**PROPOSED REVISIONS:** "Your verdict must be for the defendant if you believe that the physical loss or physical damage to Plaintiff's property due to SARS-CoV-2 was caused by or resulted from any delay, loss of use or loss of market.

## Acts or Decisions

**INSTRUCTION:** "Your verdict must be for the defendant if you believe that the loss or damage was caused by or resulting from acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

**PLAINTIFF'S OBJECTION:** Plaintiff objects to this instruction because the Court has found that "[t]he record does not show that these exclusions 'caused' SARS-CoV-2 to enter Plaintiff's premises" and that, "[i]n turn, [the Acts or Decisions] exclusion[] do[es] not apply to Plaintiff's claims." (Doc. 155 at 23). In addition, the instruction is inconsistent with the Policy because: (1) it does not use the Policy definition of the term loss (Doc. 99-1 at 133); (2) this exclusion is *not* subject to an anti-concurrent or anti-efficient clause provision (Doc. 99-1 at 54);

and, (3) it does not include the full relevant terms of the Policy provision which provides that Defendant will pay for that portion of any loss caused by a Covered Cause of Loss. (Doc. 99-1 at 54 (We will not pay for "loss" caused by or resulting from any of the following in Paragraphs (3)(a) through (3)(c). ***However, if an excluded cause of loss that is listed in Paragraphs (3)(a) through (3)(c) results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss."***) (emphasis added)). As with the above instruction, without the revision, the jury will naturally believe this exclusion applies to Plaintiff's financial damages or losses.

**PROPOSED REVISIONS:** "Your verdict must be for the defendant if you believe that the physical loss or physical damage to Plaintiff's properties by SARS-CoV-2 was caused by or resulting from acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body regardless of any other cause or event that contributes concurrently or in any sequence to the loss, unless you determine that a portion of the physical loss or physical damage to Plaintiff's properties by SARS-CoV-2 was caused by physical loss or physical damage other than these acts or decisions."

Given that Plaintiff does not understand the Court to be reconsidering or changing its summary judgment rulings, at minimum, these revisions are necessary to ensure the jury applies the exclusions as they are written in the Policy. Plaintiff continues to believe, however, that given there is no evidence these exclusions caused the presence of SARS-CoV-2, the exclusions are irrelevant, unduly prejudicial, and risks a danger of confusion to the jury.

Plaintiff respectfully requests a conference with the Court at its earliest convenience to address the issues raised in these objections. How the Court decides to proceed will dramatically impact how Plaintiff presents its case. In particular, if these exclusions are in play during trial, Plaintiff needs to know what the Court believes are the specific genuine fact disputes regarding the exclusions that the jury must decide.

Dated: October 22, 2021

**STUEVE SIEGEL HANSON LLP**

*s/ Patrick J. Stueve*
Patrick J. Stueve, MO #37682
Bradley T. Wilders, MO #60444
Curtis Shank, MO #66221
Abby E. McClellan, MO Bar # 66069
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
Facsimile: 816-714-7101
Email: stueve@stuevesiegel.com
Email: wilders@stuevesiegel.com
Email: shank@stuevesiegel.com


**MILLER SCHIRGER LLC**

John J. Schirger, MO # 60583
Matthew W. Lytle, MO #59145
Joseph M. Feierabend, MO #62563
4520 Main Street, Suite 1570
Kansas City, MO 64111
Telephone: (816) 561-6500
Facsimile: (816) 561-6501
Email: jschirger@millerschirger.com
Email: mlytle@millerschirger.com
Email: jfeierabend@millerschirger.com

**LANGDON & EMISON LLC**

J. Kent Emison, MO #29721
911 Main Street
PO Box 220
Lexington, Missouri 64067
Telephone: (660) 259-6175
Facsimile: (660) 259-4571
Email: kent@lelaw.com

**SHAFFER LOMBARDO SHURIN, P.C.**
Richard F. Lombardo, MO# 29748
2001 Wyandotte Street
Kansas City, MO 64108
Telephone: 816-931-0500

Facsimile: 816-931-5775
Email: rlombardo@sls-law.com

*Attorneys for Plaintiff*