IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| K.C. HOPPS, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 4:20-CV-437 |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CINCINNATI INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT THE CINCINNATI INSURANCE COMPANY'S
<u>MOTION FOR JUDGMENT AS A MATTER OF LAW</u>**

Daniel G. Litchfield, *PHV*
LITCHFIELD CAVO LLP
303 W. Madison Street, Suite 300
Chicago, Illinois 60606
Phone: (312) 781-6669 (Litchfield)
Email: Litchfield@LitchfieldCavo.com

Ericka C. Hammett, *PHV*
LITCHFIELD CAVO LLP
250 E. Washington Avenue, Suite 800
Milwaukee, Wisconsin 53202
Phone: (414) 488-1835 (Hammett)
Email: Hammett@LitchfieldCavo.com

Michael L. Brown  KS# 21313
WALLACE SAUNDERS
10111 West 87th Street
Overland Park, Kansas 66212
(913) 888-1000 FAX - (913) 888-1065
mbrown@wallacesaunders.com

*Attorneys for The Cincinnati Insurance Company*

## TABLE OF CONTENTS

APPLICABLE LAW ........................................................................................................... 5

STANDARD FOR JUDGMENT AS A MATTER OF LAW ........................................................ 5

ARGUMENT ..................................................................................................................... 7

    I.    PLAINTIFF HAS FAILED TO DEMONSTRATE DIRECT PHYSICAL LOSS OR DAMAGE TO PROPERTY ............................................................................. 7

    II.    THE EVIDENCE SHOWS THAT PLAINTIFF'S ALLEGED LOSS WAS NOT CAUSED BY SARS-COV-2 ................................................................................ 18

    III.    POLICY EXCLUSIONS PRECLUDE COVERAGE FOR ANY ALLEGED LOSS CAUSED BY COMPLIANCE WITH GOVERNMENT ORDERS ........ 18

CONCLUSION ................................................................................................................ 19

CERTIFICATE OF SERVICE .............................................................................................. 21

# DEFENDANT THE CINCINNATI INSURANCE COMPANY'S
# MOTION FOR JUDGMENT AS A MATTER OF LAW

Pursuant to Fed.R.Civ.P. 50(a), Defendant The Cincinnati Insurance Company ("Cincinnati") submits the following Suggestions in Support of its Motion for Judgment as a Matter of Law.

## STANDARD FOR JUDGMENT AS A MATTER OF LAW

The standard for evaluating the sufficiency of the evidence under Fed.R.Civ.P. 50 is the same as the standard for reviewing a motion for summary judgment as well. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986). "Rule 50(a) allows the judge in a jury trial to enter judgment against a party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, when the party has been fully heard on the issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on the issue." *Kinserlow v. CMI Corp.*, 217 F.3d 1021, 1025 (8th Cir. 2000) (quotation omitted); *see also* Fed R. Civ. P. 50(a) (2018).

In ruling on a motion under Rule 50, a court must draw all reasonable inferences in favor of the nonmoving party. *Roberson v. AFC Enterprises, Inc.*, 602 F.3d 931, 933 (8th Cir. 2010); *Canny v. Dr. Pepper/Seven–Up Bottling Group, Inc.*, 439 F.3d 894, 900 (8th Cir. 2006). In drawing all reasonable inferences in favor of the nonmoving party, a court must "not make credibility determinations or weigh the evidence." *Meyers v. Starke*, 420 F.3d 738, 741 (8th Cir. 2005) (quotation omitted). Importantly, "an inference is not reasonable unless it may be drawn without resort to speculation." *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 401 F.3d 901, 909 (8th Cir. 2005); *see also Kinserlow*, 217 F.3d at 1026 ("A reasonable inference is one which may be drawn from the evidence without resort to speculation.") (internal quotations omitted). "When the record contains no proof beyond speculation to support the verdict, judgment as a

matter of law is appropriate." *Kinserlow*, 217 F.3d at 1026 (quotation omitted). "[A] sufficiency inquiry asks whether the collective weight of a litigant's evidence is adequate to present a jury question." *Vogt v. State Farm Life Ins. Co.*, 2018 WL 4937330, at *2 (W.D. Mo. Oct. 11, 2018), *aff'd*, 963 F.3d 753 (8th Cir. 2020), *citing Stevenson v. E.I. DuPont de Nemours & Co.*, 327 F.3d 400, 407 (5th Cir. 2003) (the proper question in reviewing for sufficiency of evidence is "not whether there is some dispute about the validity or force of a given study, but rather, whether it would be unreasonable for a rational jury to rely on that study to find causation by a preponderance of the evidence.")

The Eighth Circuit has stated that judgment as a matter of law is appropriate "when the record contains no proof beyond speculation to support the verdict." *American Bank of St. Paul v. TD Bank, N.A.*, 713 F.3d 455, 462 (8th Cir. 2013), *citing Wilson v. Brinker Int'l, Inc.*, 382 F.3d 765, 770 (8th Cir. 2004). *See also Arabian Agric. Servs. Co. v. Chief Indus., Inc.*, 309 F.3d 479, 482 (8th Cir. 2002) (same). Further, "'[a] mere scintilla of evidence is inadequate to support a verdict' and judgment as a matter of law is appropriate when the record contains no proof beyond speculation to support the verdict." *Clark v. Kansas City Missouri Sch. Dist.*, 375 F.3d 698, 701 (8th Cir. 2004), *quoting Larson v. Miller*, 76 F.3d 1446, 1452 (8th Cir. 1996).

As shown below, Plaintiff has failed to submit sufficient evidence to show a covered claim, as is its burden. *See, e.g.*, *BancInsure, Inc. v. F.D.I.C.*, 796 F.3d 1226, 1233 (10th Cir. 2015) (KS law); *Westchester Surplus Lines Ins. Co. v. Interstate Underground Warehouse & Storage, Inc.*, 946 F.3d 1008, 1010 (8th Cir. 2020), *reh'g denied* (Feb. 6, 2020) (MO law). As such, there is no genuine issue of material fact and Cincinnati is entitled to judgment as a matter of law.

## **ARGUMENT**

This matter has wound its way through motion practice and discovery. Beyond that, Plaintiff's claim has now been presented to the Court, and the jury, at trial. The time for possibilities, potential proofs, and speculation by Plaintiff has passed. Throughout, Plaintiff has been afforded every opportunity to carry its burden to prove that it is entitled to coverage under the commercial *property* policy of insurance it purchased from Cincinnati ("the Policy"). Yet, it has not – and cannot – do so. Indeed, Plaintiff's own testimony, and that of its retained experts demonstrates, unequivocally, that there is no coverage under the plain and unambiguous language of the Policy.

Having heard Plaintiff's case, and having seen Plaintiff's evidence, it is clear that this matter presents no question of fact that must be left to the providence of the jury. Rather, Cincinnati is entitled to judgment as a matter of law for three reasons. First, Plaintiff has failed to prove that SARS-CoV-2, the virus that causes the COVID-19 disease in humans, was present on *any* – let alone *all* -- of its premises. Therefore, it necessarily follows that even if this Court was correct in ruling that viral contamination, in and of itself, is sufficient to show direct physical loss or damage to property, Cincinnati is entitled to judgment as a matter of law.[1]

Second, Plaintiff has failed to prove that SARS-COV-2 (or the COVID-19 virus) was the cause of its alleged loss. Indeed, Plaintiff *outright admits* that its alleged losses were not caused by the presence of the virus, but instead by its compliance with governmental orders restricting its business operations. While governmental orders may have caused Plaintiff to alter its operations, they plainly did not cause physical alteration, physical contamination, or physical destruction of

---

[1] As this Court is aware, Cincinnati respectfully disagrees that the presence of SARS-CoV-2 is sufficient to show direct physical loss or damage to property. However, Plaintiff's own testimony and "evidence" as to the presence of the virus is purely speculative.

5

Plaintiff's property. There can be no dispute: ***Cincinnati's Policy insures Plaintiff's property against physical damage – not Plaintiff's ability to operate free of government restrictions.***

Third, even if the orders could cause a physical alteration, physical contamination, or physical destruction of Plaintiff's property, ***which they do not***, any loss caused by the orders is excluded from coverage under the Policy by one or more exclusions, which remove such orders from consideration as a Covered Cause of Loss. Mr. Nelson's testimony is crystal clear: it was the Orders, *i.e.*, the decisions, laws, and ordinances of the State of Missouri, the State of Kansas, Johnson County, Missouri and Jackson County, Kansas that, albeit prudent, caused Plaintiff, like every other business nationwide, to alter, limit, or suspend its operations.

## I. THE CINCINNATI POLICY.

Cincinnati issued Policy No. EPP 012 40 51 to K C HOPPS LTD for the policy period January 25, 2020 to January 25, 2023. (Stipulated Fact No. 3). Under the Policy's Business Income (and Extra Expense) Coverage Form, Form FA 213 05 16 ("the BI Coverage"),[2] Cincinnati is obligated to pay for the actual loss of business income the insured sustains when it must suspend its business operations due to *physical* loss or damage to its *property*. (Pl. Ex. 234A at ECF p. 125). The BI Coverage does not apply unless, among other things, the *physical* loss or damage to property (if any) is caused by a Covered Cause of Loss. (Pl. Ex. 234A at ECF p. 125). As pertinent to Plaintiff's claim, the Policy's BI Coverage states in pertinent part as follows:

1. **Business Income**

    a. We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance

---

[2] The Policy's main property insurance coverage form, Form FM 101 05 16, also contains materially identical provisions. (Pl. Ex. 234A). For brevity, and because both parties referenced the coverage contained in Form FA 213, the citations in this Brief also refer to the BI Coverage as described in Form FA 213.

is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss.

(Pl. Ex. 234A at ECF p. 125). Covered Cause of Loss is defined as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." (Pl. Ex. 234A at ECF pp. 126, 49). "Loss" is defined as "accidental physical loss or accidental physical damage." (Stipulated Fact No. 6; Pl. Ex. 234A at ECF p. 133). As shown by Cincinnati, the BI Coverage is not a stand-alone "Business Interruption" coverage. Rather, it is adjunct to the *property* insurance coverage provided by Cincinnati's Policy.

An integral aspect of the Policy's BI Coverage is the defined "Period of Restoration." (Pl. Ex. 234A at ECF p. 125). The Period of Restoration marks the beginning and the end of the period of time for which Cincinnati agrees to pay for an insured's business income losses following the suspension of the insured's business that is caused by a Covered Cause of Loss. The "Period of Restoration" is defined, in pertinent part, as follows.

> **8.** "Period of restoration" means the period of time that:
>
> **a.** Begins at the time of direct "loss".
>
> **b.** Ends on the earlier of:
>
> **(1)** The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
>
> **(2)** The date when business is resumed at a new permanent location.

(Stipulated Fact No. 9; Pl. Ex. 234A at ECF p. 133).

For purposes of this trial, this Court has ruled that the following passage from the decision in *Oral Surgeons, P.C. v. The Cincinnati Insurance Company*, 2 F.4th 1141 (8th Cir. 2021) is binding as to the interpretation of the above insuring agreement requirements:

7

> "The policy here clearly requires direct 'physical loss' or 'physical damage' to trigger business interruption and extra expense coverage. Accordingly, there must be some physicality to the loss or damage of property – *e.g.*, a physical alteration, physical contamination, or physical destruction."

(*Oral Surgeons*, 2 F.4th at 1144). Thus, this Court has appropriately held that Plaintiff must show some *physicality* to the loss or damage of property.

Finally, though Cincinnati respectfully disagrees, this Court has also held that the above passage from *Oral Surgeons* means that "proof of physical contamination is sufficient to meet the Policy's requirement for physical loss or damage." (Dkt. No. 155, p. 11).

## II.  PLAINTIFF HAS FAILED TO DEMONSTRATE DIRECT PHYSICAL LOSS OR DAMAGE TO PROPERTY

The Court denied Cincinnati's summary judgment motion based on "the inference that SARS-CoV-2 is physical, contaminated its premises, and made Plaintiff's property unsafe." (Dkt. No. 155, p. 11). Speculation about what Plaintiff *might* be able to show at trial may have been sufficient to avoid dismissal of Plaintiff's complaint under Fed.R.Civ.P. 12(b)(6) or to present an issue of fact precluding an award summary judgment for Cincinnati under Fed.R.Civ.P. 56, but when the record contains no proof beyond speculation to support the verdict it does not pose questions of fact to be presented to the jury and the court may enter judgment as a matter of law.

Here, not only is there no scintilla of evidence supporting Plaintiff's claim, the evidence presented at trial does not merit even an inference of physical contamination. Plaintiff presented *no evidence* to show that SARS-CoV-2 was present on any of its Premises, at any time. Indeed, the undisputed evidence, as presented in Plaintiff's own case in chief shows:

- Plaintiff admits that it never even attempted to ascertain whether SARS-CoV-2 was on its premises. (Tr. Trans., Oct. 26, pp. 159:17-22).

- Plaintiff's retained expert, Dr. Goodman, did not perform any investigation to determine whether SARS-COV-2 was present at any of Plaintiff's Premises at any time. In fact, Dr. Goodman testified that he was not even aware that Plaintiff

8

- operated more than one – let alone 9 – Premises until the day prior to his deposition when he discovered that fact via an internet search. Goodman *admits* it would be necessary to "swab" (i.e., physically test) the premises to determine whether SARS-CoV-2 was in fact present, and that neither he (nor anyone else, to his knowledge) has done so. Goodman *admits* that he knows nothing of the physical layout of Plaintiff's various properties, or the impact the orders had on its operations at these locations. In fact, Goodman testified that *he never even asked* for such information prior to rendering his speculative opinion that it is "highly likely" that SARS-CoV-2 was on *all* of Plaintiff's premises. (Def. Ex. 394, Deposition of Marc Goodman ("Goodman Dep.") 38:18-39:8; 40:1-13).

- Plaintiff's other science expert, Dr. Klibanov, also provided testimony based solely on studies and statistics regarding the general presence of SARS-CoV-2 in the world as opposed to the actual conditions at Plaintiff's premises. Dr. Klibanov readily admits that virus particles can be removed and/or inactivated by cleaning; and, in any event, will exponentially decay, e.g., die on their own. Like Dr. Goodman, Dr. Klibanov failed to perform *any* site specific testing or analysis of *any* of Plaintiff's premises – let alone each individual premises. (Def. Ex. 394, Deposition of Alexander Klibanov ("Klibanov Dep.") 154:2-6)

Both Dr. Goodman and Dr. Klibanov offered opinions and testimony based solely on studies and statistics regarding the general presence of SARS-CoV-2 in the world as opposed to the actual conditions at Plaintiff's premises. Further, Dr. Klibanov readily admits that virus particles can be removed and/or inactivated by cleaning; and, in any event, will exponentially decay, e.g., die on their own. (Klibanov Dep. 93:20-95:23). Thus, neither Plaintiff nor Plaintiff's experts provide sufficient evidence of even "physical contamination" of Plaintiff's premises, much less physical alteration or physical destruction. Plaintiff has failed to prove that SARS-CoV-2 was present at any of its premises at any time while also acknowledging that, even if it had been present, any contamination of surfaces by SARS-CoV-2 end when the surface is cleaned or the virus simply dies of its own accord.

Because Plaintiff has not demonstrated that its alleged loss was caused by "proof of physical contamination," it has failed to meet this Court's statement regarding the proof needed to meet the Policy's requirements. As a result, as Plaintiff has offered no proof beyond speculation

9

to support a verdict in its favor, Cincinnati is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 50(a); *American Bank*, 713 F.3d at 462.

### III. THE EVIDENCE SHOWS THAT ANY SUSPENSION OF PLAINTIFF'S BUSINESS OPERATIONS WAS NOT <u>CAUSED</u> BY ANY PHYSICAL ALTERATION, PHYSICAL CONTAMINATION, OR PHYSICAL DESTRUCTION OF PLAINTIFF'S PROPERTY OR PREMISES, BUT RATHER, THE ORDERS.

Even if Plaintiff's evidence showed physical contamination at any of its properties, which it does not, the evidence introduced by Plaintiff demonstrates that its alleged loss was not caused by any physical loss, physical damage or physical contamination caused by the virus, but was instead caused *solely and completely* by Plaintiff's compliance with governmental orders that impacted its operation of its premises.

The trial testimony of Mr. Ed Nelson, Plaintiff's founder, president and CEO[3] is unequivocal. Plaintiff's "suspended" its business in *direct response* to the state and county orders governing its operations in Kansas and Missouri. Likewise, it operated its business without restriction prior to March 2020 and at all times since the orders were lifted *notwithstanding its actual knowledge of the existence of the virus and corresponding risk of physical contamination at its premises*:

> Q You were aware that there was COVID back in February of 2020, right?
>
> A Yes.
>
> Q And you didn't close or restrict any of your businesses in February of 2020?
>
> A That's correct.
>
> Q And so, in fact, no K.C. Hopps' entity was closed or restricted to customers prior to the March 16, 2020 orders, true?

---

[3] (*See* Tr. Trans., Oct. 26, pp. 54:24 – 55:4, 55:18-20).

A That is true.

Q As the orders became less restrictive, all of the entities in Kansas City, Missouri and Jackson County, Missouri, were following suit and becoming more open; is that fair?

A I'm sorry. Could you say that question again?

Q That's kind of a long one. I'll say it again. As the orders from Jackson County and Kansas City, Missouri became less restrictive, then the entities from K.C. Hopps in Kansas City, Missouri and Jackson County became more open following suit with the orders?

A That's correct, yes.

Q Same is true in Johnson County, that as the orders became less restrictive, K.C. Hopps began opening more?

A That's right.

(Tr. Trans., Oct. 26, pp. 126:3 – 127:1)

Q As Johnson County was opening things back up, your businesses were opening back up like kind?

A Correct.

Q And as the restrictions allowed you to open back up, you were opening back up?

A Correct.

(Tr. Trans., Oct. 26, pp. 134:12 – 17)

Indeed, Nelson admitted to having previously stated "**the orders caused [Plaintiff's] loss, not the SARS-COVID-2**." (Tr. Trans., Oct. 26, p. 164:2-4) (emphasis added).[4]

---

[4] Plaintiff's statement is contained in the Complaint Plaintiff filed in *State of Missouri, ex rel O'Dowd's, LLC d/b/a O'Dowd's Gastrobar v. Quinton Lucas, in his official capacity as Mayor of Kansas City, Missouri*, Case No. 2116-CV01880.

Nelson also testified that Plaintiff did not undertake any repair or replacement of its Property, or rebuild any of its premises as a result of the alleged presence of SARS-CoV-2. (Tr. Trans., Oct. 26, pp. 127:2-6; 163:15-18). This is an essential to show the requisite Period of Restoration. The fact that Plaintiff is attempting to fit a "square peg in a round hole," so to speak, is illustrated by Plaintiff's complete inability to identify a start and end date of the purported period of restoration. Nelson testified:

> Q When did your period of restoration begin at K.C. Hopps?
>
> A The day we filed the claim.
>
> Q You believe that March 24th of 2020 is when the period of restoration began, that that was the time of direct loss?
>
> A I would say yes.
>
> Q Did you include in your loss March 17th through March 24th? Are those in the calculations for the amount of loss?
>
> A I don't recall actually the exact date. We may have started it on the 17th.
>
> Q Do you know when you're claiming the period of restoration began?
>
> A Yeah. I think I was wrong. I think we're claiming from March 17th, the day the virus caused the shutdown and for one year after that. My mistake.
>
> Q And, again, no K.C. Hopps' entity was ever closed to customers prior to March 16th or on March 16th or prior to March 16th of 2020, correct?
>
> A Correct.
>
> Q And as we've talked about earlier, you were following the orders. As the orders became more restrictive, you became more restrictive. As they became less restrictive, K.C. Hopps became less restrictive, correct?
>
> A That's correct.

12

Q K.C. Hopps didn't rebuild any buildings. K.C. Hopps didn't repair any personal property as a result of SARS COVID-19?

A That's correct.

Q All the buildings remained -- you had access to all of your buildings from March 16 forward. Had you wanted to go into any of the K.C. Hopps' buildings, you would have been allowed to do that, correct?

A Yes.

(Tr. Trans., Oct. 26, p. 162:17 – 163:23).

The undisputed evidence, ***provided by Plaintiff itself***, shows that it in fact used its property and premises before, during, and after the effective dates of the Orders, despite the ongoing pandemic.

## III. POLICY EXCLUSIONS PRECLUDE COVERAGE FOR ANY ALLEGED LOSS CAUSED BY COMPLIANCE WITH GOVERNMENT ORDERS

As demonstrated above, to the extent that Plaintiff has suffered a loss, it was caused by compliance with governmental orders that impacted its business operations and not by "a physical alteration, physical contamination, or physical destruction" of Plaintiff's property. Thus, because there is no direct physical loss or damage here, there should be no reason to reach the Policy's exclusions. However, even if one of the governmental orders under consideration could have caused direct physical loss or damage, there would be no coverage under the Policy because one or more of the Policy's exclusions apply.

Form FM 101 identifies various excluded causes of loss. These exclusions are incorporated into Form FA 213 via the latter form's definition "Covered Causes of Loss". (Pl. Ex. 234A, ECF p. 126). As pertinent to Plaintiff's Claim, the Policy states as follows:

    **b.**     **Exclusions**

13

> **(1)** We will not pay for "loss" caused directly or indirectly by any of the following, unless otherwise provided. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".
>
> **(a)** **Ordinance or Law**
>
> Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law,** the enforcement of or compliance with any ordinance or law:
>
> 1) **Regulating the construction,** use or repair of any building or structure; . . .
>
> This exclusion applies whether "loss" results from:
>
> 1) **An ordinance or law that is** enforced even if the building or structure has not been damaged; . . .
>
> **(3)** We will not pay for "loss" caused by or resulting from any of the following in Paragraphs **(3)(a)** through **(3)(c).** However, if an excluded cause of loss that is listed in Paragraphs **(3)(a)** through **(3)(c)** results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss: . . .
>
> **(b)** **Acts or Decisions**
>
> Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

(Pl. Ex. 234A, ECF pp. 49, 54).

Pursuant to the Ordinance or Law exclusion, coverage is excluded when the cause of loss, whether direct or indirect, is an ordinance or law regulating Plaintiff's use of any building or structure. Here, Plaintiff's alleged loss derives from the Orders. As Plaintiff readily acknowledge, the orders were ordinances or laws. (Tr. Trans., Oct. 26, pp. 129:5 – 130:7). Accordingly, the

exclusion applies, there is no loss caused by a covered Cause of Loss and, therefore, there is no coverage.[5]

Pursuant to the Acts or Decisions exclusion, coverage is excluded for acts or decisions of a governmental body. The exclusion precludes coverage "for 'loss' caused by or resulting from . . . Acts or Decisions, including the failure to act or decide, of any person, group, organization or governmental body." (Pl. Ex. 234A at ECF p. 54). The record demonstrates that Plaintiff's alleged loss of use of its premises was caused by or resulted from the Orders. Accordingly, the exclusion applies, there is no loss caused by a covered Cause of Loss and, therefore, there is no coverage.[6]

## CONCLUSION

For the reasons set out above, judgment as a matter of law should be granted to Cincinnati and against Plaintiff.

October 27, 2021.

Respectfully submitted by:

**DEFENDANT, THE CINCINNATI INSURANCE COMPANY**

LITCHFIELD CAVO LLP

BY: */s/ Ericka Hammett*
Daniel Litchfield     *PHV*
Ericka Hammett     *PHV*

---

[5] *See Consolidated Rail Corp. v. Aspen Specialty Insurance Co.* 2019 WL 2425118 (D.N.J. June 10, 2019); *Farmer v. Phila. Elec. Co.*, 329 F.2d 3, 8 (3d Cir. 1964) *Joplin v. Nat'l Live Stock Ins. Ass'n*, 61 Or. 544, 546, 122 P. 897, 897 (1912).

[6] *See e.g. Newchops*, 2020 WL 7395153, at *7; *Worldwide Sorbent Prod., Inc. v. Invensys Sys., Inc*., No. 1:13-CV-252, 2014 WL 12597394, at *10-*11 (E.D. Tex. July 31, 2014), *judgment entered sub nom. Worldwide Sorbent Prod., Inc. v. Travelers Lloyds Ins. Co.*, No. 1:13-CV-252, 2014 WL 12597392 (E.D. Tex. Sept. 10, 2014); *see also Johnson Gallagher Magliery, LLC v. Charter Oak Fire Ins. Co.*, No. 13 CIV. 866 DLC, 2014 WL 1041831, at *7 (S.D.N.Y. Mar. 18, 2014); *Legal Servs. Plan of E. Mich. v. Citizens Ins. Co. of Am.*, No. 278110, 2009 WL 1175514, at *4 (Mich. Ct. App. Apr. 30, 2009).

303 West Madison Street
Suite 300
Chicago, IL 60606
(312) 781-6669 FAX (312) 781-6630
litchfield@litchfieldcavo.com
hammett@litchfieldcavo.com

WALLACE SAUNDERS

Michael L. Brown     KS# 21313
10111 West 87th Street
Overland Park, KS 66212
(913) 888-1000 FAX - (913) 888-1065
mbrown@wallacesaunders.com


ATTORNEYS FOR DEFENDANT THE
CINCINNATI INSURANCE COMPANY

**CERTIFICATE OF SERVICE**

       I hereby certify that on October 27, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to:

John J. Schirger
Matthew W. Lytle
Joseph M. Feierabend
Miller Schirger LLC
4520 Main St., Suite 1570
Kansas City, MO 64111
jschirger@millerschirger.com
mlytle@millerschirger.com
jfeierabend@millerschirger.com

Patrick J. Stueve
Bradley T. Wilders
Curtis Shank
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
stueve@stuevesiegel.com
wilders@stuevesiegel.com
shank@stuevesiegel.com

J. Kent Emison
Patricia L. Campbell
Langdon & Emison LLC
911 Main Street
PO Box 220
Lexington, MO 64067
kent@lelaw.com
tricia@lelaw.com

                              */s/ Ericka Hammett*