IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| K.C. HOPPS, LTD., | |
|     Plaintiff, | |
| v. | Case No. 4:20-CV-437-SRB |
| THE CINCINNATI INSURANCE COMPANY, | |
|     Defendant. | |

## PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Plaintiff, pursuant to Rule 50, moves the Court for Judgment as a Matter of Law for Plaintiff and against Defendant The Cincinnati Insurance Company ("Cincinnati") on its Affirmative Defense No. 4 relating to the "Ordinance or Law" and "Acts or Decision" exclusions (Doc. 63, pp. 16-17) and on its Affirmative Defense No. 11 relating to mitigation of damages. (Doc. 63, p. 18). At trial, Cincinnati has maintained two of six exclusions pleaded as affirmative defenses: "Ordinance or Law" and "Acts and Decisions".

As Cincinnati's counsel told the jury in Opening Statement, "Loss is defined. That's why it's in quotes…." Rough Draft Tr. 10/26/21, at 36:3-4. These exclusions define "loss" using the terms "physical loss" or "physical damage." Ex. 234A, p. 50. Plaintiff is entitled to a directed verdict as to these exclusions because Cincinnati has not presented any evidence showing that any ordinance, law, act, or decision caused physical alteration, physical contamination, or physical destruction of Plaintiff's covered property.

Cincinnati has not attempted to link its exclusions to any physicality of loss. Instead, Cincinnati has asserted only that, "[h]ere, Plaintiff's alleged loss derives from the [shutdown] Orders," (Doc. 230, p. 14), and "Plaintiff's *loss of use* of its premises was caused by or resulted

from the [shutdown] Orders." (Doc. 230, p. 15) (Emphasis supplied). However, the Eighth Circuit has expressly held that suspension of business activity due to shut down orders alone is not sufficient to trigger causation that requires "physical loss" or "physical damage." *Oral Surgeons, P.C. v. Cincinnati, Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021). "The policy cannot reasonably be interpreted to cover mere *loss of use* when the insured's property has suffered no physical damage." *Id.* (Emphasis supplied). As Plaintiff was required to provide evidence of physicality of loss on its claim, so must Cincinnati be required to show similar evidence of physicality of loss to proceed on its affirmative defenses.

Cincinnati has not presented any evidence that the condition of either exclusion (any ordinance, law, act, or decision) caused, directly or indirectly, Plaintiff's property to suffer some physicality to the loss or damage to the property – *e.g.*, a physical alteration, physical contamination, or physical destruction. Without such evidence, no reasonable jury could find that either exclusion applies to Plaintiff's claim. See, *e.g.*, *Warren v. State Farm*, 531 F.3d 693, 699 (8th Cir. 2008) (without any evidence, no reasonable jury could find that the policy exclusion precluded coverage).

## **LEGAL STANDARD**

Judgment as a matter of law directing a verdict as to an issue in the litigation is proper where a party has been fully heard on the issue and the Court finds that a reasonable jury would not have a legally sufficient basis to find for the party on that issue. Rule 50(a)(1). Though a demanding standard, a motion for directed verdict should be granted where "the evidence produced by the party opposing the motion, 'when given the benefit of all reasonable inferences, would not suffice as the basis for a rational conclusion in that party's favor.'" *Warren*, 531 F.3d at 698.

2

Case 4:20-cv-00437-SRB   Document 234   Filed 10/28/21   Page 2 of 16

Any instruction submitted to the jury must be supported by substantial evidence. *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 849-50 (Mo. banc 2018). See also *Ford v. GACS, Inc.*, 265 F.3d 670, 679 (8th Cir. 2001) ("To be charged to the jury, an issue submitted in an instruction must be supported by substantial evidence from which the jury could find such issue."); Mo. Approved Jury Instr. (Civil) General Principles of MAI Jury Instr. (8th ed.).

## ARGUMENT

Judgment as a matter of law in favor of Plaintiff and against defendant Cincinnati is required in this case because Cincinnati had failed to meet its burden of proof in that it failed to adduce any evidence that any ordinance, law, act, or decision caused – as required by *Oral Surgeons* – a physical alteration, physical contamination, or physical destruction to the property at issue.

Even if Cincinnati had attempted to meet this element, the "Ordinance or Law" exclusion fails as a matter of law because Cincinnati has not established any local health order to be an "ordinance or law" under the policy language. Courts have held such emergency orders to be temporary restrictions and not the same as ordinances or laws passed by a legislative body. *See*, *e.g.*, *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 506 F. Supp.3d 360, 379-80 (E.D. Va. 2020). Moreover, the text of Exhibit 52A, the Johnson County Emergency Order, confirmed the order did not cause the contamination of Plaintiff's property, but (quite the opposite) was issued to reduce the spread of COVID-19 and to protect the "health, safety, and welfare of persons and property" in Johnson County, Kansas. Ex. 52A. (Emphasis supplied).

Finally, the "Acts or Decisions" exclusion is unenforceable because it is "overly broad, ambiguous, and irreconcilable with other policy provisions and the very concept of an all-risk

3

insurance policy." *See Mettler v. Safeco Ins. Co. of Am.*, No. 12-5163-RJB, 2013 WL 231111, at *6 (W.D. Wash. Jan. 22, 2013) (citation omitted).

## A. Exclusions Apply *Only* When "Loss" is Caused by Referenced Exclusion

Paraphrasing Cincinnati's counsel's admonition to the venire panel on Monday: The words of the policy matter. Rough Draft Tr. of Voir Dire, at 135:13-14.

### 1. Ordinance or Law Exclusion

The "Ordinance or Law" Exclusion reads:

> 3. Covered Causes of Loss
>
> ***
>
> b. Exclusions
>
> (1) We will not pay for "loss" caused directly or indirectly by any of the following, unless otherwise provided. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."
>
> (a) Ordinance or Law
>
> Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law**, the enforcement of or compliance with any ordinance or law:
>
> (1) Regulating the construction, use or repair of any building or structure; or

4

> (2) Requiring the tearing down of any building or structure, including the cost of removing its debris.
>
> This exclusion applies whether "loss" results from:
>
> 1) An ordinance or law that is enforced even if the building or structure has not been damaged; or
>
> 2) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition, or removal of its debris, following a direct "loss" to that building or structure.

Ex. 234A at 17.

As Cincinnati's counsel told the jury in Opening Statement, "Loss is a defined term. That's why it's in quotes…." Rough Draft Tr. 10/26/21, at 36:3-4. Indeed, the term "loss" appears in quotation marks in the exclusion, meaning that it has been given special meaning by Cincinnati through a definition contained in the policy. "Loss" is defined by Cincinnati as "accidental physical loss or accidental physical damage." Ex. 234A, at 50. "Physical loss" or "physical damage."

The Court has construed the meaning of the term "direct physical loss or physical damage," adopting the Eighth Circuit's construction in *Oral Surgeons* as to the coverage definition of "loss", which also uses the terms "physical loss" or "physical damage." The Court has instructed the jury that the term "direct physical loss or physical damage… means that property has suffered some physicality to the loss or damage to the property – *e.g.*, a physical alteration, physical

5

contamination, or physical destruction." The same requirement of physicality should apply to the terms "physical loss" or "physical damage" in Cincinnati's exclusion.

Applying the Court's construction of the policy language to the defined term "loss" in this policy exclusion, coverage is not precluded by the exclusion *unless* Cincinnati meets its burden of proof by presenting evidence that property has suffered some physicality to the loss or damage to the property – *e.g.*, a physical alteration, physical contamination, or physical destruction *caused directly or indirectly by the enforcement or compliance with any ordinance or law* (1) regulating the construction, use or repair of any building or structure; or (2) requiring the tearing down of any building or structure, including the cost of removing its debris.

## 2. Acts or Decisions Exclusion

The "Acts or Decisions" exclusion reads:

3. Covered Causes of Loss

\*\*\*

b. Exclusions

\*\*\*

(2) We will not pay for "loss" caused by or resulting from any of the following:

\*\*\*

(b) Acts or Decisions

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

Ex. 234A, at 20-22.

The same definition of "loss" – "physical loss" or "physical damage" – as applied to the "Ordinances and Laws" exclusion applies to the "Acts or Decisions" exclusion. Ex. 234A, at 50. Having adopted *Oral Surgeons'* construction of the terms "physical loss" or "physical damage", the same requirement of physicality should apply to the terms "physical loss" or "physical damage" in Cincinnati's exclusion.

Applying the Court's construction of the policy language to the defined term "loss" in this policy exclusion, coverage is not precluded by the exclusion <u>unless</u> Cincinnati meets its burden of proof by presenting evidence that [property that has suffered some kind of physicality to the loss or damage to the property – *e.g.*, a physical alteration, physical contamination, or physical destruction] <u>*caused by or resulting from acts or decisions*</u>, including the failure to act or decide, of any person, group, organization or governmental body.

### B. <u>No Evidence at Trial Supporting Application of Policy Exclusions</u>

"Affirmative defenses are assertions by a defendant raising new facts and arguments that, if true, will defeat a plaintiff's claim, and a defendant therefore bears the burden of proof with respect to its affirmative defenses." *Perrin v. Papa John's Intern., Inc.*, 114 F. Supp.3d 707, 720 (E.D. Mo. 2015); *see also Warren v. State Farm*, 531 F.3d 693, 699 (8th Cir. 2008) (without any evidence, no reasonable jury could find that the policy exclusion precluded coverage). Exclusions are to be narrowly and strictly construed against the drafter, "who also bears the burden of showing the exclusion applies." *Burns v. Smith*, 303 S.W.3d 505, 510 (Mo. banc 2010). A defendant's failure to present evidence establishing an essential element of its defense requires the entry of judgment against it. *Id.*

Under both remaining affirmative defenses, Cincinnati bears the burden to establish evidence that the conditions of exclusion – an ordinance or law or an act or decision – <u>*caused*</u> the

7

physical alteration, physical contamination, or physical destruction of the subject premises. However, there has been no evidence at trial that any condition of exclusion *caused* SARS-CoV-2 to physically alter, physically contaminate, or physically destroy Plaintiff's premises.

In Defendant's Motion for Judgment as a Matter of Law (Doc. 230), Cincinnati set forth its bases for application of the exclusions. Cincinnati's position is that, "[h]ere, Plaintiff's alleged loss derives from the Orders." (Doc. 230, p. 14). Cincinnati reiterated its position, writing "Plaintiff's alleged *loss of use* of its premises was caused by or resulted from the Orders." (Doc. 230, p. 15) (Emphasis supplied). Cincinnati asserts the exclusions apply because Plaintiff's *loss of use* was caused by unidentified shut down orders.

The Eighth Circuit, in *Oral Surgeons, P.C. v. The Cincinnati Insurance Company*, 2 F.4th 1141, 1144 (8th Cir. 2021), expressly rejected Cincinnati's position. In *Oral Surgeons*, the plaintiff sought coverage of its loss of use of its premises due to pandemic-related government-imposed restrictions. *Id.* at 1143. In *Oral Surgeons*, Cincinnati argued that the plaintiff was not entitled to such coverage because plaintiff's loss of use was "loss" as defined by the policy, which required physical loss or physical damage. The Eighth Circuit agreed with Cincinnati in *Oral Surgeons* and held that the "policy cannot reasonably be interpreted to cover mere loss of use when the insured's property has suffered no physical damage." *Id.* at 1144. Rather, the Court found "there must be some physicality to the loss or damage of property – *e.g.*, a physical alteration, physical contamination, or physical destruction." *Id.*

Here, the policy exclusions upon which Cincinnati relies contains a nearly identical definition of "loss", which – like in *Oral Surgeons* – requires physical loss or physical damage. Ex. 234A, p. 50. Cincinnati's use of the terms "physical loss" and "physical damage" in these exclusions means "there must be some physicality to the loss or damage of property" that was

8

caused by the topic of the exclusion. *Id.* As the Eighth Circuit held in *Oral* Surgeons as to the plaintiff but which holds true here, Cincinnati cannot rely on the government orders alone to prove a "loss" simply by calling the various orders "ordinances" or "laws" or government "acts." If Plaintiff cannot prove coverage for "physical loss" or "physical damage" by relying on government-imposed restrictions alone, then Cincinnati must be held to the same standard in the application of its exclusions, which must be construed narrowly and strictly against the drafter. *See Grinnell Mut. Reinsurance Co. v. Villanueva*, 798 F.3d 1146, 1148 (8th Cir. 2015).

Cincinnati has produced expert witnesses in this case. The experts provided written reports in accordance with Rule 26(a)(2)(B), which required each expert to provide a written report containing a complete statement of all opinions and the basis and reasons for them along with the facts and data to be used to summarize or support each opinion. None of Cincinnati's experts provided any opinion that an ordinance, law, act, or decision *caused* any physical alteration, physical contamination, or physical destruction of the subject premises. The stay-at-home orders, on their face and according to all the evidence, were intended to prevent (or reduce) contamination, not cause it. In fact, at times, Cincinnati's experts have provided opinions that there has been no physical alteration[1] or physical destruction of the subject premises.

Cincinnati has not – and cannot – show that any order caused a physical loss on any of Plaintiff's premises and cannot meet the necessary elements to support its affirmative defense. Without such evidence, Cincinnati's exclusions fail as a matter of law.

---

[1] Dr. Thomann agreed that the presence of the virus contaminates and alters the surfaces it lands on but did not testify that the virus was caused by any act, decision, ordinance, or law of a government body.

## C. Eighth Circuit Decision Supports Directed Verdict Here

The facts here are strikingly similar to those in *Warren v. State Farm*, 531 F.3d 693, 699 (8th Cir. 2008). There, Ms. Warren sued State Farm for insurance proceeds following a fire that destroyed her home. *Id.* at 695. State Farm asserted an affirmative defense that Ms. Warren had made material misrepresentations following the loss, which voided her coverage. *Id.* at 695-696. The District Court granted a directed verdict for Ms. Warren on State Farm's affirmative defense of misrepresentation. *Id.* at 696. The Eighth Circuit affirmed. *Id.*

In affirming the District Court's granting a directed verdict, the Eighth Circuit focuses on the lack of evidence supporting State Farm's affirmative defense. Like Cincinnati here, State Farm bore the burden of proving its affirmative defense. *Id.* at 699. To meet its burden, State Farm was required to show that Ms. Warren's statement was an actual misrepresentation that was both intentional and material. *Id.* In considering the issue, the Court repeatedly turned to State Farm's failure to adduce any evidence in support of its affirmative defense:

- "State Farm has failed to offer any evidence suggesting that Warren had any knowledge of the fire's origin, and our review of the trial record yielded none." *Id.*

- "State Farm has presented no evidence that, in making the statement, Warren possessed the requisite intention to mislead." *Id.*

- "State Farm presented no evidence that Warren was served in relation to the 2001 default judgment or that any attempt to enforce the judgment had ever commenced." *Id.*

- "State Farm presented no evidence to show that its resources or the direction of its investigation would have been different had it been apprised of the prior fire loss in Warren's first statement." *Id.* at 700.

- "State Farm has produced no evidence that Warren's knowledge of the status of her mortgage… would have altered the course of its investigation…." *Id.*

Without any evidence supporting State Farm's affirmative defense, no reasonable jury could find that Ms. Warren made any material misrepresentation in conjunction with her insurance claim. *Id.* at 699, 700.

Like in *Warren*, Cincinnati has produced <u>no evidence</u> supporting the elements of its affirmative defense. Rather, the <u>only</u> evidence that Cincinnati offered in this case was that SARS-CoV-2 caused <u>no</u> physical alteration, <u>no</u> physical contamination, and <u>no</u> physical destruction of Plaintiff's covered premises. Like State Farm Insurance in *Warren*, Cincinnati has failed to meet its burden of proof supporting these exclusions and Plaintiff is entitled direct verdict and judgment as a matter of law as to Cincinnati's affirmative defense on these exclusions.

D. **<u>Johnson County Emergency Health Order</u>**

The Emergency Order of Local Health Officer, admitted as Exhibit 52A, does not support Cincinnati's affirmative defense. First, Cincinnati has not established the Emergency Order to be an ordinance or law. There is no showing that the Emergency Order was legislatively considered, debated, or passed by a deliberative legislative body with authority to enact laws or ordinances. Rather, the only evidence is that this an emergency order signed by a single individual, Dr. Joseph LeMaster, as the Local Health Officer of Johnson County, Kansas. Other courts have interpreted similar exclusion language not to be triggered by such orders. One court, for example, found that an executive order applying temporary restrictions that impacted the plaintiff's business were *<u>not</u>* ordinances or laws. *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 506 F. Supp.3d 360, 379-80 (E.D. Va. 2020). Such temporary restriction is not the same as safety regulations or laws

passed by a legislative body regulating the construction, use, repair, removal of debris, or physical aspects of the property. *Id.*

Moreover, the text of the Emergency Order itself confirms that the Order did not cause physical alteration, contamination, or destruction of any of Plaintiff's premises (as required for the affirmative defense exclusions to apply). Exhibit 52A confirmed the purpose of the order was to reduce the spread of COVID-19 due to the outbreak of COVID-19 in Johnson County, Kansas, that "COVID-19 [is] a respiratory disease that spreads easily from person to person and may result in serious illness or death", and endangered "health, safety, and welfare of persons and property within the border of Johnson County, Kansas". Ex. 52A (Emphasis supplied).

### E. Acts or Decisions Exclusions is So Broad as to be "Practically Worthless"

The "Acts or Decisions" exclusion is "overly broad, ambiguous, and irreconcilable with other policy provisions and the very concept of an all-risk insurance policy." *See Mettler v. Safeco Ins. Co. of Am.*, No. 12-5163-RJB, 2013 WL 231111, at *6 (W.D. Wash. Jan. 22, 2013) (citation omitted). Courts interpreting this exclusion have held the exclusion, if it "were to be taken literally,… would exclude coverage from all acts and decisions of any character of all persons, groups, or entities. Such an interpretation would leave the insurance policy practically worthless." *Elegant Massage*, 506 F. Supp.3d at 380. See also *Jussim v. Mass. Bay. Ins. Co.*, 597 N.E.2d 1379, 1382 (Mass. App. 1992) ("acts and decisions" clause cannot be taken literally); *St. Paul Fire & Marine Ins. Co.*, No. CIV.A.98-07370R, 2000 WL 270954 (W.D. Va. March 3, 2020), at * 5 (insurance company's arguments in the case "show the untenable breadth of this provision's coverage" as "any time a human or an organization of humans had any role in a loss, no matter how tangential, the policy would exclude coverage.").

The untenable breadth of the "acts or decisions" exclusions was emphasized by Cincinnati's counsel during opening statement:

> Then there's acts or decisions. This is an exclusion when the loss is caused by the acts or decisions of the government. Again, that's what this case is about. Orders from the government, decisions of the government that affect and regulate their business.
>
> ***And this makes sense. I don't think you can run a business in America without government regulation.*** That's just – I'm not here to make any commentary about that. I'm stating something that I think the evidence will show and that is widely known and understood.

Rough Draft Tr. 10/26/21, p. 48. (Emphasis supplied).

As Cincinnati described in opening statement, there is not any coverage that could not be eliminated by an "Act or Decision." Consider, for example, a "classic" property damage claim involving fire. Even if it is undisputed that the fire is a covered cause of loss, the coverage may be excluded if any person, organization or entity performed an act (or even failed to act) in a manner to prevent the fire or if the building was then condemned after the fire and the claimant ordered to destroy or vacate the premises.

### F. No Evidence at Trial that Plaintiff Failed to Mitigate Damages

Plaintiff is also entitled to a directed verdict on Cincinnati's Affirmative Defense No. 11, failure to mitigate damages, because no evidence has been presented during trial that would permit the jury to find a failure to mitigate damages. "To be charged to the jury, an issue submitted in an instruction must be supported by substantial evidence from which the jury reasonably could find such issue." *Kauzlarich v. Atchison, Topeka, & Santa Fe Ry. Co.*, 910 S.W.2d 254, 258 (Mo. banc

13

1995) (internal quotation and citation omitted). "Because mitigation of damages is an affirmative defense, [defendant] bears the burden of establishing that [plaintiff] could have lessened his damages. *Id.* at 256.

Here, Cincinnati has failed to meet its burden of proof to show that Plaintiff failed to mitigate its damages. To the contrary, the only evidence in this case is that K.C. Hopps resumed partial operations as soon as possible. Ed Nelson testified as to K.C. Hopps "Herculean" efforts to resume all possible operations as soon as permitted. Cincinnati elicited testimony from Mr. Nelson that K.C. Hopps returned its business operations to full capacity as soon as it was determined to be safe to do by relevant health authorities. This testimony is fatal to Cincinnati's claim that Plaintiff failed to mitigate its damages.

## **CONCLUSION**

Cincinnati bears the burden of proving its affirmative defense. The Court must not submit a jury instruction that is not supported by the evidence. Here, Cincinnati offered no evidence supporting the essential elements of the policy exclusions upon which it relied for its affirmative defense. Without such evidence, no reasonable jury could conclude that the exclusions preclude coverage and Judgment as a Matter of Law directing a verdict in favor of Plaintiff and against Defendant is necessary. Additionally, because the jury has heard reference to these exclusions in opening statement and at other points during trial, it is necessary that the Court instruct the jury that it has dismissed Cincinnati's affirmative defense and instruct the jury to disregard any mention of these exclusions. See *Warren v. State Farm*, 531 F.3d 693, 699 (8th Cir. 2008) (affirming instruction to jury advising that court dismissed defendant's affirmative defenses). Further, Cincinnati offered no evidence supporting its affirmative defense of failure to mitigate. Given this

14

absence, no reasonable jury could conclude that Plaintiff failed to mitigate damages and Judgment as a Matter of Law in Plaintiff's favor is necessary.

**WHEREFORE**, Plaintiff respectfully requests the Court **GRANT** Plaintiff's Motion for Judgment as a Matter of Law, enter judgment for Plaintiff as to Cincinnati's Affirmative Defense No. 4 and No. 11, instruct the jury that the Court has dismissed the affirmative defenses discussed herein and that the jury must not consider any exclusion that may have been referenced at trial, and for such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

**LANGDON & EMISON, LLC**

/s/ Brett A. Emison_____
J. Kent Emison, MO #29721
Brett A. Emison, MO #52072
Tricia L. Campbell, MO 60917
911 Main Street
P.O. Box 220
Lexington, Missouri 64067
Telephone: (660) 259-6175
Facsimile: (660) 259-4571
Email: kent@lelaw.com
Email: brett@lelaw.com
Email: tricia@lelaw.com

**STUEVE SIEGAL HANSON LLP**

Patrick J. Stueve, MO #37682
Bradley T. Wilders, MO #60444
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
Facsimile: 816-714-7101
Email: stueve@stuevesiegel.com
Email: wilders@stuevesiegel.com

**MILLER SCHIRGER LLC**

John J. Schirger, MO # 60583
Matthew W. Lytle, MO #59145

15

>Joseph M. Feierabend, MO #62563
>4520 Main Street, Suite 1570
>Kansas City, MO 64111
>Telephone: (816) 561-6500
>Facsimile: (816) 561-6501
>Email: jschirger@millerschirger.com
>Email: mlytle@millerschirger.com
>Email: jfeierabend@millerschirger.com
>
>**SHAFFER LOMBARDO SHURIN, P.C.**
>
>Richard F. Lombardo, MO# 29748
>2001 Wyandotte Street
>Kansas City, MO 64108
>Telephone: 816-931-0500
>Facsimile: 816-931-5775
>Email: rlombardo@sls-law.com
>
>*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

 I hereby certify that on October 28, 2021, I filed the foregoing document via the Court's CM/ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

>/s/ *Brett A. Emison*
>Attorney for Plaintiff