IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| K.C. HOPPS, LTD., <br><br> Plaintiff, <br><br> v. <br><br> THE CINCINNATI INSURANCE COMPANY, <br><br> Defendant. | Case No. 4:20-CV-437-SRB |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR A NEW TRIAL**

At the heart of Plaintiff's motion is the fact that Cincinnati used jury instructions that never should have been given, and opposed the giving of proper instructions, to improperly argue its causation defense. While Cincinnati was within its rights to argue that the partial suspension of Plaintiff's operations was not caused by the presence of SARS-CoV-2 (the physical damage alleged at trial), it was improper for Cincinnati to prop up that defense—as it admits to doing—by relying on the Ordinance or Law exclusion. Under the policy, that exclusion only prohibits recovery for *physical* loss or *physical* damage *caused by* an ordinance or law. But the government orders restricting aspects of Plaintiff's business were the only evidence Cincinnati offered as an alternative cause. Because the loss of use Cincinnati relied upon at trial resulting from those orders cannot cause *physical* loss or *physical* damage under *Oral Surgeons*, there was no basis for the exclusions to have been submitted to the jury.

Cincinnati's causation argument could and should have been limited to the causation requirement under paragraph 3 of the verdict director, which did *not* require that the presence of SARS-CoV-2 (the physical damage) be the *sole* cause of Plaintiff's business activities being

1

suspended. And, because the legal requirement for coverage under Plaintiff' policy and Missouri and Kansas law is *proximate* cause—a principle that Cincinnati fails to refute as a matter of law—the verdict director should have made explicit that SARS-CoV-2's presence on Plaintiff's premises only needed to contribute to the suspension of Plaintiff's operations. But it did not, and this was instructional error that Cincinnati used to its advantage at trial.

Rather than defend the challenged instructions as legally appropriate, Cincinnati instead focuses on whether Plaintiff submitted sufficient evidence at trial for the jury to conclude SARS-CoV-2 was present and caused physical damage to Plaintiff's property. But the Court already concluded this was a submissible question of fact, and there was ample evidence at trial, including expert evidence, that the virus was present and that it physically damaged Plaintiff's property. In fact, if the evidence was as one-sided as Cincinnati insists, it would not have improperly argued that the government orders triggered the Ordinance or Law exclusion to refute causation at trial.

In the end, the question before the Court is this: should Plaintiff have the opportunity for a jury to decide the case based on legally sufficient instructions supported by evidence, rather than assume—as Cincinnati insists—the jury reached the correct verdict despite Cincinnati admittedly distorting the jury instructions and the law to prop up otherwise weak arguments? The answer is yes. A new trial is warranted under these unique circumstances and judgment should be entered against Cincinnati on the two exclusions prior to that trial.

## **LEGAL STANDARD**

Cincinnati accuses Plaintiff of requesting a "second bite at the apple," contending that substantial evidence exists to sustain the verdict. But the standard for a new trial "differ[s] thoroughly from those governing consideration" of a post-verdict motion for judgment as a matter of law. *White v. Pence*, 961 F.3d 776, 779 (8th Cir. 1992). "[T]o sustain a motion for j.n.o.v., all the evidence must point one way and be susceptible of no reasonable inference sustaining the

position of the nonmoving party," but "[t]hese principles have no application to the consideration of a motion for new trial on the ground that the verdict is against the weight of the evidence." *Id*. (citing cases). In weighing "whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence—it can weigh the evidence, disbelieve witnesses, and grant a new trial *even where there is substantial evidence to sustain the verdict*." *Wilson v. Lamp*, 995 F.3d 628, 631 (8th Cir. 2021) (emphasis added) (cleaned up). Instead, the "key question is whether a new trial should [be] granted to avoid a miscarriage of justice." *Williams v. City of Kansas City*, 223 F.3d 749, 755 (8th Cir. 2000). A new trial is appropriate when "the jury could have been easily misled by the incorrect" jury instruction. *McGowne v. Challenge-Cook Bros.*, 672 F.2d 652, 664 (8th Cir. 1982) (reversing and granting new trial based on erroneous instruction). Moreover, even "when individual errors are deemed harmless, their cumulative effect may result in an unfair trial." *Williams*, 223 F.3d at 755.

There is no question Cincinnati misled the jury with the Ordinance or Law exclusion. It pointed to the anti-concurrent causation language in that instruction—which applied only to physical loss or damage—and improperly used it to bolster its defense that the virus did not cause the suspension of Plaintiff's business operations. To make matters worse, the jury should have been affirmatively instructed that the virus only needed to be a contributing cause of the suspension as that is the controlling legal principle under Missouri and Kansas law. Finally, on top of that, the foreperson admitted to likely being biased regarding damages, which was an element of liability under the verdict director. A new trial is thus necessary to ensure that any verdict is a product of a faithful application of the evidence to the correct legal rules by an unbiased jury.

3

## I. A NEW TRIAL IS WARRANTED BASED ON THE JURY INSTRUCTIONS.

### A. The Exclusions Should Not Have Been Submitted to the Jury Because There Was No Evidence Supporting that the Excluded Occurrences Caused <u>Physical</u> Loss or Damage.

Instructions to the jury must be supported by evidence at trial. *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 849-50 (Mo. banc 2018). Though Cincinnati does not dispute that an instruction should not be given absent evidentiary support (*see* Doc 257, at 9) it fails to identify a single piece of evidence that supports giving Instructions 21 (Ordinance or Law) and 22 (Acts or Decisions).

Cincinnati does not dispute that, according to the policy's plain language and defined terms, both exclusions require that that the excluded occurrence—the "ordinance", "law", "act", or "decision"—must cause a "loss" which the policy defines as an "accidental physical loss or accidental physical damage." (Doc. 257-1 at 17, 22). And, because "there must be some physicality to the loss or damage of property—*e.g.,* a physical alteration, physical *contamination*, or physical destruction," the excluded occurrence must cause more than a mere financial loss of business income or a suspension of Plaintiff's business operations. *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021) (emphasis added). *Oral Surgeons* made clear that government orders during the pandemic do *not* cause physical loss or damage. Accordingly, Cincinnati has not, does not now, and cannot point to any evidence that those orders resulted in anything physical under *Oral Surgeons*.

Cincinnati indisputably argued that because the orders contributed to the suspension of Plaintiff's operations the exclusions were triggered. Put simply, that argument cannot be squared with the policy. If it were, *Oral Surgeons* would have permitted the business owner to prove its physical loss or damage requirement based on mere suspension of its business activities. The exclusions therefore should not have been given to the jury.

4

Instead of defending the instructions based on the evidence, Cincinnati accuses Plaintiff of "cherry-pick[ing] a fragment of the Court's Summary Judgment Order," (Doc. 266 at 36), and seeks to relitigate what the Court intended by that order. That calculated misdirection, however, does not compensate for the absence of actual evidence supporting Cincinnati's affirmative defenses. Indeed, the only actual evidence Cincinnati points to is Mr. Nelson's testimony that KC Hopps complied with the government orders, resuming operations at full capacity when permitted. While perhaps relevant to Cincinnati's causation defense under paragraph 3 of the verdict director (Doc. 239 at 32), that evidence says nothing about whether the orders caused *physical* loss or *physical* damage (they cannot under *Oral Surgeons*) as required to trigger the exclusions.

Given Cincinnati's failure to adduce evidence of its affirmative defenses, it is unnecessary to consider Plaintiff's alternative arguments that: (1) the government orders were not "laws or ordinances" because they were issued by health officials, not legislative bodies; or (2) that the acts or decisions exclusion applies only if the applicable act or decision was undertaken by the insured. (Doc. 257 at 14-15). Nonetheless, the instruction on the Acts or Decisions exclusion correctly stated that it "does not apply if the acts or decisions were by any person *other than* the plaintiff or beyond the plaintiff's direction or control." (Doc. 239 at 21).[1] Cincinnati *agreed* to that language. (Trial Tr. at 462:16-24), and there is no dispute that the government orders were acts or decisions

---

[1] In any event, Cincinnati's 25th-hour attempt to impugn the accuracy of the instruction is meritless. The policy specifically states that all coverage parts of the commercial property form are "subject to the following conditions" including that "[a]ny act or neglect of any person other than you beyond your direction or control will not affect this insurance." Ex. 234A at 92 (Doc. 257-1). As Plaintiff argued in submitting this language, courts have specifically found this provision interrelated with the Acts or Decisions exclusion and requiring a narrow interpretation of the latter. *Sentience Studio, LLC v. Travelers Ins. Co.*, 102 F. App'x 77, 81 (9th Cir. 2004) (holding under a similar policy: "Although the exclusion states that the acts of "any person" may qualify, the Policy later provides that "[a]ny act or neglect of any person other than the Insured beyond the direction or control or the Insured will not affect this insurance." Policy, General Conditions, Part G. Thus the "acts or decisions" exclusion may apply only if the act or decision at issue was by "the Insured" or under the Insured's direction or control.").

beyond the Plaintiff's control. Disregarding the language of the instruction as given, Cincinnati's only response is to claim "that is not how the exclusion works" without any supporting evidence at trial or other argument or authority. (Doc. 266 at 49).

In a weak showing, Cincinnati argues there was evidence that Plaintiff's own acts or decisions impacted the suspension of its operations because Mr. Nelson testified that KC Hopps decided the "nature and scope of its operations" and "chose not to offer take out or delivery services" at O'Dowd's. (Doc. 266 at 49). Again, Cincinnati conflates acts that may have impacted the suspension of Plaintiff's operations or its financial losses with the *physical* loss or damage required to trigger the exclusion. (Doc. 239 at CIC005118-20) (Policy: "We will not pay for 'loss' [*i.e.,* accidental physical loss or accidental physical damage] caused by or resulting from any of the following…[a]cts or decisions, including the failure to act or decide, of any person, group, organization, or government body"). Plaintiff's decision to partially restrict certain operations and not offer delivery services certainly did not cause *physical* loss or damage to the insured property.

**B.     The Verdict Director Should Have Included the Contributing Cause Language.**

Much of Cincinnati's opposition attempts to defend its objection to any "contributing cause" language in the verdict director. (Doc. 266 at 38-42). Notably, however, Cincinnati does *not* defend the actual reason given at trial for refusing inclusion of the language in the jury instruction. There, it was argued that the proximate cause standard only applied to personal injury claims, not insurance coverage claims. (*See* Doc. 266 at 257). Plaintiff shows why that was wrong, and Cincinnati does not refute it. (*Id.* at 19-21 & note 7). Instead, Cincinnati offers a host of other arguments—all of which are mere smokescreens intended to obscure the lack of legitimate opposition.

6

*First*, Cincinnati argues the language would have been improper because the Ordinance or Law exclusion contains anti-concurrent causation language. (Doc. 266 at 38). But that argument fails because Plaintiff neither proposed adding contributing cause language to, nor objected to the anti-concurrent cause language in, Instruction 21 (the Ordinance or Law exclusion). Rather, Plaintiff asked the Court to include the contributing cause language in paragraph 3 of the verdict director, which required Plaintiff to show that the physical loss or damage was a direct cause of the suspension of its operations. (Doc. 233 at 3). That is a distinct and separate causation requirement under the policy. Instruction 21 deals with the cause of the physical loss or damage while paragraph 3 of the verdict director deals with the cause of the suspension.

*Second*, Cincinnati attempts to argue the contributing cause language conflicts with the policy, contending that "contrary to Plaintiff's assertion, the Policy's Business Income coverage requires Plaintiff to show a suspension of its operations *caused by* direct physical loss or direct physical damage to property at Plaintiff's insured premises." (Doc. 266 at 39) (emphasis added). But when the policy does not require sole cause a mere "caused by" requirement includes contributing causes under Missouri and Kansas law. (Doc. 257 at 20-23). Thus, Plaintiff was entitled to prevail if physical damage contributed to the suspension of its operations.

Contrary to Cincinnati's protestations, Plaintiff offered evidence at trial to meet this standard. Plaintiff showed by expert testimony that SARS-CoV-2 was present on the insured property by mid-March 2020. (Goodman Tr., Doc. 269-1 at 7-8.). The government orders followed the virus's presence on Plaintiff's premises and in the community generally, and were intended to further protect people and property. *See* Trial Ex. 52A (Doc.257-2); Trial Tr. 87-89, 92-93. Cincinnati relies on Mr. Nelson's testimony but omits his explanation that the orders were issued because "COVID was contagious and present in our [K.C. Hopps's] businesses and all

7

business." Trial Tr. 173:12-18.  Put simply, but for the presence of the virus, there would have been no need for the orders.  The jury should have been instructed then that the presence of the virus—if the jury determined it constituted physical damage—only needed to *contribute* to cause the suspension of Plaintiff's operations.  The intervening government orders (even if part of that causal chain) would not have legally precluded recovery for lost business income as Cincinnati insisted at trial.

*Third,* Cincinnati tries to distinguish the cases Plaintiff cited based on their facts.  But giving the instruction does not turn on whether causation is "undisputed" as Cincinnati contends was the fact in some of the cited cases.  (Doc. 266 at 39).  Ultimately, the cause was a question of fact for the jury to decide, and Cincinnati does not dispute that a contributing cause can, under a policy like the one at issue here, meet that requirement.  Failure to include such language in the verdict director is therefore instructional error on an issue central to Cincinnati's trial defense.

Cincinnati also contends that failing to give the instruction was harmless because the evidence was undisputed that the orders were not caused by the presence of the virus on the insured property.  (Doc. 266 at 42).  As noted, however, that is false.  On their face, the orders showed that they were entered because of "the confirmed outbreak and person-to-person spread of COVID-19 in the United States, Kansas and Johnson County[.]" (*See* Doc. 257-2 at 2).  Mr. Nelson testified that he also understood that the presence of the virus on KC Hopps's properties and elsewhere was the reason for the orders.  *Supra*.  Properly instructed and not misled by Cincinnati, the jury could easily have concluded that but for the presence of the virus, the orders would not have been required and Plaintiff's business activities would not have been suspended.

    **C.**    **As Given and Argued, the Instructions Were Not Harmless.**

Both individually and cumulatively, the instructions, and most importantly the manner in which Cincinnati argued them, prejudiced Plaintiff and produced a miscarriage of justice.  As

8

detailed in Plaintiff's motion, Cincinnati conflated physical damage requirements with the requirement that Plaintiff's financial losses stem from suspension of operations caused by physical damage. Furthermore, it relied on the anti-concurrent causation language in Instruction 21 to prop up its argument that if the government orders even contributed to the business suspension, the jury was required to find in favor of Cincinnati. But the Ordinance or Law exclusion was only triggered if the government orders contributed to a *physical* loss or damage, of which there was none.[2] (*See* Doc. 257 at 25-26). Cincinnati would not have been able to make that improper argument without Instructions 21-22, which should never have been given to the jury because there was no evidence to support them. Furthermore, Cincinnati's successful effort to mislead the jury would have, at minimum, been correctly diminished if the jury had been instructed that physical damage only needed to *contribute* to cause the business suspension as Plaintiff argued at trial. Taken together, these errors necessarily prejudiced Plaintiff's substantial rights to a fair trial.

Cincinnati's harmless error arguments further ignore the plain language of the policy. The exclusions apply to the Property Coverage form of the policy and not directly to the Business Income and Extra Expense Coverage form. When 'loss' is replaced with its definition under the policy, the two exclusions to property coverage state that Cincinnati "will not pay for [accidental physical loss or accidental physical damage] caused by" one of the excluded occurrences. They nowhere state that if the excluded occurrences cause physical loss or damage, Cincinnati will not

---

[2] Cincinnati argues that Plaintiff did not object during Cincinnati's closing arguments, ignoring that Plaintiff explicitly objected on this ground before the arguments started. (Trial Tr. 461:11-17) ("Judge just a clarification. I just want to make sure that defense counsel, in arguing those exceptions, can't go outside the law that the court has determined. So they can't say that the shutdown order is sufficient to meet their burden – that they have to argue that it, in fact, caused the contamination or the … physical loss or damage—"). The Court decisively overruled that objection; thus, there was no need for Plaintiff to object again. (*See* Trial Tr. 461:18-462:6) ("They can argue whatever they want….").

9

pay for the loss of business income caused by the suspension of its operations. Cincinnati therefore asked the Court to read an exclusion into the policy that does not exist under the facts of this case.

Cincinnati attempts to argue around the policy language by calling Plaintiff's interpretation "convoluted." (Doc. 266 at 47). But Cincinnati wrote the policy, the policy must be given its plain and unambiguous meaning, and Plaintiff relies solely on the language Cincinnati used. If an excluded occurrence contributed to *physical* damage, Cincinnati is not obligated to pay for that damage. The policy uses those words: "We will not pay…" But if a non-excluded occurrence causes physical damage, like the presence of SARS-CoV-2, on the property and that damage contributes to cause a suspension of the business's operations, Cincinnati *is* obligated to pay for the business income loss resulting from the suspension.

Cincinnati's argument that if Plaintiff is correct the outcome would have been the same because "the suspension was not caused by direct physical loss or damage to property" but by the orders (Doc. 266 at 48), similarly ignores that the Business Income and Extra Expense form does *not* require that the physical loss or damage be the *sole* cause of the suspension. That the Ordinance or Law exclusion contains anti-concurrent causation language means only that Cincinnati "will not pay" for physical damage (or loss) if an ordinance or law contributes to the physical damage (or loss). But, as noted, there is no evidence that the government orders contributed to anything physical.

In contrast, business income losses are covered if physical damage (or loss) is *a* cause of the suspension. When interpreting insurance policies, cause means only a proximate cause. *Graybar Elec. Co. v. Fed. Ins. Co.,* No. 4:06 CV 1275 DDN, 2007 WL 1365327, at *6 (E.D. Mo. May 9, 2007) ("Given that Missouri courts have a strong history of using the proximate cause analysis to determine if a loss is a 'direct loss' and because many other jurisdictions have used the

10

analysis when interpreting the type of policy at issue here, this court concludes that Missouri courts would apply a proximate cause analysis to the facts of this case. This is supported further by the fact that a Missouri court has held '[d]irect is a synonym of proximate.' *John Drennon & Sons Co.,* 637 S.W.2d at 341"). Thus, it was entirely appropriate for Plaintiff to argue at trial "that the alleged contamination caused the orders, which in turn caused it to suspend its business operations." (Doc. 266 at 48). This is not a concession that the Ordinance or Law exclusion applies as Cincinnati contends (Doc. 266 at 48) because Plaintiff did not admit that the orders contributed, in any way, to the presence of SARS-CoV-2 on their property or to any other *physical* damage.

Indeed, if the policy offered no coverage when a government order was part of a causal chain of the business suspension (as opposed to part of the causal chain of the physical damage) significant coverage parts of the Business Income and Extra Expense form would be illusory. For example, Civil Authority coverage would never apply. Nor would there be business income coverage if a Fire Marshall prevents access to premises after a fire. Cincinnati's position is meritless and also absurd.

Cincinnati's legal argument fails under any plain reading of the policy. Yet the jury was allowed to both hear it and left to sort out that argument under the erroneous instructions, resulting in overwhelming prejudice to Plaintiff. Cincinnati does not dispute that it made these same erroneous arguments to the jury, including insisting that the jury apply Instruction 21 to find that if the orders "were caused by the virus … those orders are still something that in sequence or concurrently caused the loss." (Doc. 257 at 20) (quoting Trial Tr. vol. 3, 629); (*see also* Trial Tr. vol. 3, 627-28 ("this applies regardless of any other cause or event that contributes at the same time or in a sequence to the loss … [these] orders caused the *financial* loss that K.C. Hopps is

11

claiming…") (emphasis added). Cincinnati thus hoodwinked the jury based on a complete misapplication of instructions that should *not* have been submitted, capitalizing on the confusing—or as Cincinnati puts it "convoluted"—language of the policy.

**D.     Cincinnati Fails to Show the Jury Would Have Reached a Verdict in its Favor Without Instructions 21 and 22 and Cincinnati's Improper Argument.**

Most of Cincinnati's opposition is focused on whether Plaintiff submitted enough evidence for the jury to conclude that the virus was present and that it constituted physical damage (or loss) to the insured property. But the record speaks for itself on this front. (*See* Doc. 257 at 28-30). The Court has already held Plaintiff's made a submissible case. And, as Plaintiff pointed out in its opening memorandum, there was overwhelming evidence that the virus was present (Cincinnati offered no rebuttal expert on this point) and that it constituted physical damage, including admissions from Cincinnati's experts. (*Id.*).

**E.     Instruction 20 Should Have Directed the Jury to the Policy Definitions.**

Instruction 20 told the jury to give "all" words their "plain and ordinary meaning." But the policy required certain words to be given a special meaning. Cincinnati cries "no harm, no foul" because both sides used the policy definitions in their arguments. But argument cannot substitute for the Court's instructions of law because the jury was directed to follow those instructions. With the other instructional errors, this only compounded the confusing nature of the jury's task.

**II.    THE COURT SHOULD HAVE PERMITTED EVIDENCE REGARDING THE ISO VIRUS EXCLUSION AND CINCINNATI'S INTERNAL ADMISSIONS.**

Cincinnati argues that Plaintiff's proffered evidence regarding both the ISO virus exclusion and Cincinnati's own understanding of whether SARS-CoV-2 could constitute physical damage was properly excluded as extrinsic evidence and hearsay. Contrary to Cincinnati's first argument, however, not all "documents outside the Policy itself, are, by definition, extrinsic evidence." (Doc. 266 at 57). Rather, extrinsic evidence "is not admissible to vary, add, or contradict terms of an

12

unambiguous and complete written document." *In re Est. of Collins*, 405 S.W.3d 602, 607 (Mo. Ct. App. 2013). Most typically, the rule bars "evidence of prior contemporaneous agreements which varies or contradicts the terms of an unambiguous and complete written instrument[.]" *Brewer v. Devore*, 960 S.W.2d 519, 522 (Mo. Ct. App. 1998) (marks omitted). As the leading Missouri treatise states:

> This does not mean that all extrinsic evidence is inadmissible. The court must have knowledge of the circumstances of the parties and the risk insured and the loss to interpret and apply even an unambiguous contract of insurance. Extrinsic evidence to serve that purpose is admissible but such evidence is not admissible to contradict or change the terms of an unambiguous contract.

Hon. David D. Noce, 30 Mo. Prac., Insurance Law & Practice § 1:35 (2d ed.) (citing cases).

Here, Plaintiff did not seek to introduce the ISO virus exclusion or Cincinnati's emails to vary or alter the terms of the policy. Nor did they seek to use this evidence to interpret the policy. The jury itself was tasked with answering whether SARS-CoV-2 caused physical damage (or loss) to property. And the jury heard extensive evidence, beyond the four corners of the policy, on this point. Yet, it was not permitted to see the ISO virus exclusion or the internal email by Cincinnati, which shows that a virus constitutes physical damage. (Doc. 257 at 31-32); (Doc. 257-3 at 26) ("Once someone who is a carrier is on our premises, then I think, and Tore agreed, that constitutes some type of property damage …."). Just as the jury was permitted to hear Cincinnati's expert evidence that a virus can be wiped away and thus cannot meet the requisite physicality requirement under the policy, the jury should have been allowed to see contrary documentary evidence from Cincinnati itself.

*Oral Surgeons*—the only case cited by Cincinnati—is inapposite. In *Oral Surgeons*, the plaintiff did not allege that the virus was present. The issue in that case was not whether the virus caused physical damage, but whether the government orders constituted a physical loss. Thus, that decision does not speak to the issue at hand.

13

As for Cincinnati's hearsay argument, that argument is entirely meritless. Cincinnati waived that objection by not raising it at the time Plaintiff's evidence was proffered. But even if it had, the evidence consisted of an email written by Tim Schmittou, the Commercial Property Product Director at Cincinnati, from his Cincinnati email account to others within Cincinnati. (Doc. 257-3 at 8). It is, therefore, admissible as a statement of an opposing party. Fed. R. Evid. 801(d)(ii).

## III. THE JURY FOREPERSON SHOULD HAVE BEEN STRUCK FROM THE JURY.

Cincinnati's attempt to excuse the presence of the jury foreperson, who "admit[ed] she would 'probably be biased" based on her accounting experiences, is especially meritless. (Doc. 266 at 57). *First*, Cincinnati unbelievably defends that a juror should be permitted to rely on her own specialized accounting expertise in a trial where expert testimony on that subject was given under oath. (*Id.* at 58). It argues that her specialized expertise is merely part of her own "observations and experiences" and "common sense." (*Id.*). But the instruction Cincinnati cites presupposes that potentially biased venirepersons have not been placed on the jury, and this juror's specialized accounting knowledge is not her mere "observations" or "common sense." *See People v. Arnold*, 753 N.E.2d 846, 853 (N.Y. 2001) (holding that "a reversible error can materialize from," among other things, " jurors conducting personal specialized assessments not within the common ken of juror experience and knowledge"); *People v. Maragh*, 729 N.E.2d 701, 704–05 (N.Y. 2000) ("Other jurors are likely to defer to the gratuitous injection of expertise and evaluations by fellow professional jurors, over and above their own everyday experiences, judgment and the adduced proofs at trial."). In fact, the juror's reliance on such extra-record information violates this Court's jury instruction requiring that "[t]hose of you who are selected for the jury in this case must decide this case *based only on the evidence received by the court here in the courtroom* and the instructions on the law that I give the jury." Doc. 239 at 1-2 (emphasis added). In essence,

Cincinnati argues—citing no authority in support—that a juror with professional expertise relevant to the case can act as an unsworn expert witness during jury deliberations. By this strained logic, a jury could include witnesses to the event in question, jurors with personal experiences of the parties or witnesses, or jurors with their own "observations" of the facts in question. That is contrary to fundamental principles of trial, which this Court's own instructions required the jury to follow: "If you decide a case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and *you will have done an injustice*." Doc. 239 at 2 (emphasis added). Here, the juror herself admitted that she would be biased by accounting evidence that conflicted with her own experiences. That she became the foreperson only exacerbates the prejudice to the Plaintiff, justifying a new trial.

*Second*, Cincinnati argues that a new trial is unwarranted because Plaintiff could have used a preemptory challenge on the jury foreperson. But if Plaintiff had used a challenge on her, it would have waived its right to challenge the Court's ruling. *See United States v. Sithithongtham*, 192 F.3d. 1119, 1121 (8th Cir. 1999). Again, by Cincinnati's strained logic, a party would *never* be able to seek a new trial or appeal a court's decision not to strike a juror for cause because a party could *always* have used a preemptory challenge. And once again, Cincinnati cites no support for its novel legal theory.

*Finally*, Cincinnati claims that it is "nonsensical" for Plaintiff to claim prejudice because Cincinnati did not call its damages expert at trial and the jury did not reach the issue of damages. Those arguments do not carry water. Cincinnati vigorously cross-examined Plaintiff's expert witness, putting his analysis squarely at issue during trial. Moreover, at Cincinnati's insistence, the *verdict director* required Plaintiff to show damages—that it "suffered [an] actual loss of business income" (Doc. 239 at 33). If Mr. Grudzien's testimony about the fact of Plaintiff's

15

Case 4:20-cv-00437-SRB   Document 270   Filed 01/14/22   Page 15 of 17

business losses was discredited by the jury—according to the foreperson's own accounting expertise—the jury would have returned a verdict of no liability. Consequently, there is ample reason to believe that Plaintiff was prejudiced based on the verdict returned, and Plaintiff is entitled to a new trial.

## IV. PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE EXCLUSIONS.

If the Court awards a new trial, Plaintiff is entitled to judgment as a matter of law on the two exclusions for the reasons already explained. The exclusions required that one of the excluded occurrences cause or contribute to cause physical damage (or loss). The only evidence Cincinnati has offered are the government orders, and they are legally insufficient to meet the physicality requirements. The new trial should not include instructions on these exclusions.

## CONCLUSION

For all these reasons, a new trial is necessary to prevent a miscarriage of justice and allow this important case to be decided according to the correct legal rules.

Dated: January 14, 2022

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

*s/ Patrick J. Stueve*
Patrick J. Stueve, MO #37682
Bradley T. Wilders, MO #60444
Abby E. McClellan, MO Bar # 66069
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:   816-714-7100
Facsimile:    816-714-7101
Email:         stueve@stuevesiegel.com
Email:         wilders@stuevesiegel.com

**MILLER SCHIRGER LLC**
John J. Schirger, MO # 60583

Matthew W. Lytle, MO #59145
Joseph M. Feierabend, MO #62563
4520 Main Street, Suite 1570
Kansas City, MO 64111
Telephone: (816) 561-6500
Facsimile: (816) 561-6501
Email: jschirger@millerschirger.com
Email: mlytle@millerschirger.com
Email: jfeierabend@millerschirger.com

**LANGDON & EMISON LLC**

J. Kent Emison, MO #29721
911 Main Street
PO Box 220
Lexington, Missouri 64067
Telephone: (660) 259-6175
Facsimile: (660) 259-4571
Email: kent@lelaw.com

**SHAFFER LOMBARDO SHURIN, P.C.**
Richard F. Lombardo, MO# 29748
2001 Wyandotte Street
Kansas City, MO 64108
Telephone: 816-931-0500
Facsimile: 816-931-5775
Email: rlombardo@sls-law.com

*Attorneys for Plaintiff*